IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

JOSE RAMON LÓPEZ REGUEIRO

v.

AMERICAN AIRLINES INC. and LATAM
AIRLINES GROUP, S.A.,

    defendants.

_____/

**COMPLAINT FOR DAMAGES**

José Martí International Airport (the "Airport") is Cuba's main domestic and international airport, serving millions of travelers every year, into, out of, and around Cuba. It serves dozens of airlines, which use the airport for cargo as well as passenger operations and operates as the hub for Cuba's two main airlines: Cubana de Aviación ("Cubana") and Aerogaviota. The Airport is a major international airport on par with some of the largest in the world. It was built up by José López Vilaboy, the father of Jose Ramon López Regueiro, who transformed a minor, outdated airport on the brink of demolition by the Cuban government into what the Airport is now. For his efforts, Vilaboy—like so many other Cubans—was left with nothing when Fidel Castro seized power and established a communist government, which stole his property and forced him and his family to flee Cuba.

A large and growing number of Cuban, U.S., and international airlines have used and benefited from the Airport for years—and continue to do so—without ever getting consent from the Vilaboy Family[1] and without paying them a single penny in compensation for trafficking, and benefitting from trafficking, in this stolen property. Regueiro brings this action for damages from that trafficking.

## THE ACTION

1. Jose Ramon López Regueiro sues defendants American Airlines Inc. ("AA") and LATAM Airlines Group, S.A. ("LATAM") under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act"), for unlawful trafficking in his confiscated property in Cuba.

---

[1] The "Vilaboy Family," prior to March 2, 1989, means José López Vilaboy. After March 2, 1989, the date of Vilaboy's passing, the "Vilaboy Family" means Jose Ramon López Regueiro.

## THE PARTIES

2. Jose Ramon López Regueiro is a United States citizen and a natural person who resides in Miami, Florida.

3. Defendant AA is a Delaware corporation with its principal place of business in Fort Worth, Texas.

4. Defendant LATAM is a Chilean corporation with a principal place of business in Las Condes, Chile.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082).

6. This Court has personal jurisdiction over defendants under Fla. Stat. §§ 48.193(1)(a)(1), 48.193(1)(a)(2), 48.193(1)(a)(6)(a), and Fla. Stat. § 48.193(2) because they maintain and carry on continuous and systematic contacts with Florida, regularly transact business within Florida, regularly avail themselves of the benefits of their presence in Florida, committed a tortious act within Florida, and caused injury within Florida by committing acts outside of Florida while engaging in solicitation within Florida.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3).

## THE LIBERTAD ACT

8. In 1996, in response to the communist Cuban government's shootdown and murder of four civilian pilots performing humanitarian work with the Cuban-American group Brothers to the Rescue, Congress passed the LIBERTAD Act to strengthen sanctions against the communist Cuban government and deter the exploitation of wrongfully confiscated property in Cuba belonging to U.S. nationals.

9.  Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba has been confiscated by the communist Cuban government with a right of action against those who traffic, and benefit from trafficking, in that property. 22 U.S.C. §§ 6081-6085.

10. Since the LIBERTAD Act's passage more than twenty years ago, successive Presidents of the United States suspended the right of action provided by Title III. On May 2, 2019, the suspension was not renewed. Regueiro now has the right to sue those who traffic in his stolen property, and those who benefit from that trafficking, under the LIBERTAD Act.

## FACTUAL ALLEGATIONS

### A. The Property

11. In 1932, Pan American Airways ("Pan Am") purchased what was then known as Rancho Boyeros Airport from its original owner, Compañia Nacional Cubana de Aviación Curtiss, S.A. Pan Am operated the airport for nearly two decades, providing both cargo and passenger service. During that time, and with the advent of larger aircraft, the Airport facilities, particularly the runway, became outdated and insufficient. By the early 1950s, given the lack of modernization and mounting pressure to transfer air operations to another location, Pan Am began looking to sell the airport. It reportedly offered the Airport to the Cuban government, which rejected the offer. Pan Am then made the same offer, on the same terms, to Vilaboy.

12. On November 14, 1952, Vilaboy, through his company Compañia de Aeropuertos Internacionales, S.A. ("CAISA") purchased the Airport from Pan Am for $1.5 million in cash and credits against Pan Am landing fees. Shortly after purchasing the Airport, Vilaboy began modernizing it, extending the runway and building a new, modern terminal building. At that time, the Airport was re-named José Martí Airport.

13. In or around May 1959, the communist Cuban government confiscated the Airport and CAISA, stealing the properties from Vilaboy, who was their rightful owner. Vilaboy and his family were forced to flee Cuba to the United States, where they have lived ever since.

14. The value of the Airport exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

15. As of the time of filing this lawsuit, Regueiro is the rightful owner of the Airport, which is stolen property that defendants are trafficking and benefitting from trafficking.

**B.  *Defendants Have Trafficked and Continue to Traffic in the Airport Without Compensating the Vilaboy Family***

16. In the decades since it was confiscated, the Airport has been expanded and modernized to accommodate an ever-increasing volume of flights into and out of the Airport. Ever since the confiscation—and continuing to this day—more than forty airlines and other businesses, including the defendants, have used the Airport to transport cargo and passengers.

17. Many of the flights destined for the Airport with cargo, passengers, or both, depart from Miami International Airport.

18. On information and belief, defendants transport cargo and passengers in violation of applicable Cuban Asset Control Regulations ("CACRs") promulgated by the Office of Foreign Assets Control ("OFAC").

19. Neither the communist Cuban government, nor any of the defendants, have ever paid—and the Vilaboy Family has never received—any compensation whatsoever for the trafficking of the Airport.

20. The Vilaboy Family was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22

U.S.C. § 1643 et seq.) because they were not U.S. citizens at the time the Airport was confiscated.

21. The Airport has not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.).

## CAUSE OF ACTION

### COUNT I
### Private Right of Action Under 22 U.S.C. § 6082(a)(1)
### Against All Defendants

22. Regueiro incorporates by reference paragraphs 1 to 22 as if fully set forth here.

23. This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

24. Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

25. Regueiro's property was confiscated by the communist Cuban government.

26. Defendants have trafficked in or benefitted from ongoing, unlawful trafficking in the Airport, by arriving and departing the Airport and using its facilities for cargo and passenger transport, in violation of Title III of the LIBERTAD Act.

27. Defendants have conducted this trafficking "without the authorization of any United States national who holds a claim to the property" (22 U.S.C. § 6023(13)) in violation of Title III of the LIBERTAD Act.

28. Regueiro, in compliance with 22 U.S.C. §§ 6082 (a)(3)(B) and (a)(3)(D), provided notice to all defendants more than 30 days before joining them as defendants in this lawsuit. Notwithstanding this notice, defendants continue to traffic, and benefit from trafficking, in the Airport.

29. Accordingly, Regueiro is entitled to damages to be determined under 22 U.S.C. §§ 6082(a)(1)(A)(i) and 6082(a)(3)(C), together with attorneys' fees and costs under 22 U.S.C. § 6082(a)(1)(A)(ii).

### PRAYER FOR RELIEF

WHEREFORE, Regueiro demands a judgment against defendants that:

i. Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

ii. Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

iii. Awards treble damages under 22 U.S.C. § 6082(a)(3)(C);

iv. Awards appropriate post-judgment interest; and

v. Awards such other relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Regueiro demands trial by jury on all issues so triable.

Dated: September 24, 2019

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: crodriguez@riveromestre.com

By: /s/ Andrés Rivero
ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN ROLNICK
Florida Bar No. 715085

CARLOS A. RODRIGUEZ
Florida Bar No. 0091616

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By: *[signature]*
MANUEL VAZQUEZ
Florida Bar No. 132826