UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

        Plaintiff,

   v.

AMERICAN AIRLINES, INC., *et al.*,

        Defendants.

_____ /

**DEFENDANT AMERICAN AIRLINES, INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
AND SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

REQUEST FOR HEARING .................................................................................. viii

INTRODUCTION .................................................................................................1

LEGAL STANDARD .............................................................................................2

ARGUMENT.........................................................................................................3

I.     Plaintiff's Claim Is Barred by Threshold Requirements of Standing, Personal Jurisdiction, and Venue.................................................................................3

     A.     Plaintiff Lacks Article III Standing........................................................3

     B.     Plaintiff Does Not Adequately Allege That This Court Has Personal Jurisdiction Over American.................................................................6

     C.     Venue Is Improper In This District.......................................................7

II.     Plaintiff Does Not Satisfy The HBA's Preconditions to Suit. ..........................7

III.     Plaintiff Does Not Adequately Plead the Mens Rea and Trafficking Elements of His Claim. ...............................................................................................14

     A.     Plaintiff Fails To Plead That American Knowingly And Intentionally Used Or Benefitted from Confiscated Property. ........................................14

     B.     Plaintiff's Complaint Does Not Plead The Trafficking Element........................16

          1.     Plaintiff Fails To Allege That American's Travel Services Are Not "Incident To Lawful Travel," And They Plainly Are.............................16

          2.     Lawful Travel Is Not An Affirmative Defense. ....................................17

          3.     It Is Apparent From the Face of the Complaint That the Actions Plaintiff Challenges Were Incident to Lawful Travel. ...........................19

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AFL-CIO v. City of Miami*,
  637 F.3d 1178 (11th Cir. 2011)............................................................................2

*All Bright Sanitation of Colo., Inc. v. U.S. C.I.S.*,
  2012 WL 3962900 (S.D. Fla. Sept. 11, 2012) ......................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................2, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................2, 16

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...........................................................................................20

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  137 S. Ct. 1773 (2017) .........................................................................................6

*Cox v. Louisiana*,
  379 U.S. 559 (1965) ...........................................................................................20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .............................................................................................6

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ...........................................................................................12

*Douglas v. Bayview Loan Servicing, LLC*,
  2012 WL 345364 (S.D. Ala. Jan. 13, 2012) .......................................................8

*Fed. Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021) .........................................................................................11

*Flores-Figueroa v. United States*,
  556 U.S. 646 (2009) ...........................................................................................14

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .........................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Garcia-Bengochea v. Carnival Corp.*,
    407 F. Supp. 3d 1281 (S.D. Fla. 2019)................................................................ 12, 13, 19, 20

*Garcia-Bengochea v. Carnival Corp.*,
    2020 WL 4590825 (S.D. Fla. July 9, 2020).........................................................9, 13

*Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.*,
    2020 WL 6081658 (S.D. Fla. Oct. 15, 2020)..........................................................9

*Glen v. Am. Airlines, Inc.*,
    2020 WL 4464665 (N.D. Tex. Aug. 3, 2020).......................................................14, 15

*Glen v. Am. Airlines, Inc.*,
    No. 19-cv-23994 (S.D. Fla. May 13, 2020), Dkt. 67 ..............................................7

*Glen v. American Airlines, Inc.*,
    7 F.4th 331 (5th Cir. 2021) ......................................................................................5, 9

*Glen v. Club Méditerranée, S.A.*,
    450 F.3d 1251 (11th Cir. 2006)................................................................................4, 11

*Glen v. Club Méditerranée, S.A.*,
    365 F. Supp. 2d 1263 (S.D. Fla. 2005) ...................................................................4

*Glen v. Trip Advisor LLC*,
    2021 WL 1200577 (D. Del. Mar. 30 2021) ............................................................9

*Gonzalez v. Amazon.com, Inc.*,
    2020 WL 1169125 (S.D. Fla. Mar. 11, 2020)................................................. 10, 12, 14, 15

*Gonzalez v. Amazon.com, Inc.*,
    2020 WL 2323032 (S.D. Fla. May 11, 2020) ........................................................9, 10

*Gonzalez v. Amazon.com, Inc.*,
    835 F. App'x 1011 (11th Cir. 2021) (per curiam)..........................................2, 9, 10

*Havana Docks Corp. v. Carnival Corp.*,
    No. 19-cv-21724 (S.D. Fla. Aug. 28, 2019), Dkt. 47.............................................19

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
    484 F. Supp. 3d 1215 (S.D. Fla. 2020)..................................................................5, 20

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Est. of Jose Ramon Lopez Vilaboy*,
  No. 10-494 CP 01 (Fla. Cir. Ct. 2010) ....................................................................8

*Jakobot v. Am. Airlines, Inc.*,
  2011 WL 2457915 (S.D. Fla. June 20, 2011) .........................................................6

*Kadiyala v. Pupke*,
  2019 WL 1491735 (S.D. Fla. Apr. 4, 2019) .................................................... 19, 20

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
  543 U.S. 50 (2004) ................................................................................................18

*LeFrere v. Quezada*,
  582 F.3d 1260 (11th Cir. 2009) .............................................................................19

*Liu v. SEC*,
  140 S. Ct. 1936 (2020) ...........................................................................................5

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) (en banc) ...............................................................5

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ...............................................................................................19

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) ...............................................................................6

*PETA, Inc. v. Mia. Seaquarium*,
  189 F. Supp. 3d 1327 (S.D. Fla. 2016) ..................................................................19

*Raley v. Ohio*,
  360 U.S. 423 (1959) ...............................................................................................20

*Regan v. Wald*,
  468 U.S. 222 (1984) ...............................................................................................18

*Schaffer ex rel. Schaffer v. Weast*,
  546 U.S. 49 (2005) ................................................................................................17

*Sequeira v. Am. Airlines, Inc.*,
  2010 WL 11505678 (S.D. Fla. Apr. 15, 2010) ........................................................6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Shanghai Power Co. v. United States*,
    4 Cl. Ct. 237 (1983).................................................................................................4

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) .............................................................................3

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ..........................................................................................3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .......................................................................................20

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*,
    525 F.3d 1107 (11th Cir. 2008)............................................................... 17, 18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................3, 4

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ...........................................................................5

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ..........................................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014) .......................................................................................6, 7

*Zamber v. Am. Airlines, Inc.*,
    2020 WL 1445479 (S.D. Fla. Feb. 11, 2020) (Martinez, J.)..................................6

**STATUTES**

18 U.S.C. § 2721...................................................................................................18

22 U.S.C. § 1643m(b) ..........................................................................................12

22 U.S.C. § 2370(a) .............................................................................................16

22 U.S.C. § 6022(3) .............................................................................................11

22 U.S.C. § 6022(6) .............................................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

22 U.S.C. § 6023(8)(B) ..........................................................................................................12

22 U.S.C. § 6023(12)(B) ........................................................................................................10

22 U.S.C. § 6023(13) .......................................................................................................14, 17

22 U.S.C. § 6023(13)(A) ..........................................................................................................2

22 U.S.C. § 6023(13)(B) ...................................................................................................16, 19

22 U.S.C. § 6023(13)(B)(iii) ....................................................................................................2

22 U.S.C. § 6023(15)(A) ........................................................................................................10

22 U.S.C. § 6023(15)(B) ........................................................................................................12

22 U.S.C. § 6033(a) ...............................................................................................................10

22 U.S.C. § 6065(b)(2)(D) .....................................................................................................12

22 U.S.C. § 6081(2) ...............................................................................................................11

22 U.S.C. § 6081(5) ...............................................................................................................11

22 U.S.C. § 6081(6)(B) ..........................................................................................................11

22 U.S.C. § 6081(8) ...............................................................................................................11

22 U.S.C. § 6081(10) .............................................................................................................11

22 U.S.C. § 6081(11) .............................................................................................................11

22 U.S.C. § 6082(a) ...............................................................................................................16

22 U.S.C. § 6082(a)(1) .....................................................................................................11. 17

22 U.S.C. § 6082(a)(1)(A)(i)(III) .............................................................................................5

22 U.S.C. § 6082(a)(4)(B) ............................................................................................8, 10, 12

22 U.S.C. § 6091(a)(3) ...........................................................................................................12

28 U.S.C. § 1391(b)(2) .............................................................................................................7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

28 U.S.C. § 1391(b)(3) ................................................................................................... 7

44 U.S.C. § 1507 .......................................................................................................... 20

50 U.S.C. § 4305(b) ..................................................................................................... 16

Fla. Stat. § 733.105(3) ................................................................................................... 8

Fla. Stat. § 733.202 ........................................................................................................ 8

Fla. Stat. § 733.801 ........................................................................................................ 8

Fla. Stat. § 733.811 ........................................................................................................ 8

**OTHER AUTHORITIES**

31 C.F.R. pt. 515 .......................................................................................................... 18

31 C.F.R. § 515.560 ................................................................................................ 16, 18

31 C.F.R. § 515.572(a)(1) ........................................................................................... 20

31 C.F.R. § 515.572(a)(1)–(2) ................................................................................... 18

31 C.F.R. § 515.572(a)(2)(i) ....................................................................................... 20

H.R. Rep. No. 104-468 (1996) .................................................................................... 19

Restatement (Second) of Torts § 158 (1965) ................................................................ 4

Restatement (Second) of Torts §§ 222A, 225 (1965) ................................................... 4

**REQUEST FOR HEARING**

American Airlines requests a hearing on this motion. The motion raises several fundamental questions about the meaning and application of Title III of the Helms-Burton Act, 22 U.S.C. § 6021 *et seq.*, which provides a novel cause of action against persons who "traffic" in property confiscated by the Cuban government. To decide the motion, the Court will need to address several controlling questions of law that must be resolved before the case can move forward, and their resolution will materially advance the ultimate termination of the litigation. A hearing will enable the parties to sharpen the issues, clarify their positions, and address any unanswered questions, all of which will assist this Court in deciding the motion.

Defendant American Airlines, Inc. (American) hereby moves to dismiss Plaintiff's Second Amended Complaint (Complaint or SAC) (Dkt. 122) pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6), for the reasons stated in the following memorandum of law.

## INTRODUCTION

Plaintiff's lawsuit attempts to commandeer Title III of the Helms Burton Act of 1996 (HBA) to hold American liable for offering federally authorized flights to Cuba—an activity the HBA itself endorses. For more than forty years, the United States government has expressly permitted lawful travel and the provision of related carrier services to Cuba, under statutes and regulations administered by the U.S. Department of Treasury's Office of Foreign Assets Control (OFAC). American has relied on this federal authorization to provide lawful carrier services to Cuba. Plaintiff now claims that Title III of the HBA—which was enacted decades *after* OFAC's first Cuba regulations, and expressly exempts services "incident to lawful travel"—empowers him to sue American for using the José Martí International Airport ("Airport") in Cuba.

According to Plaintiff, the Airport originally belonged to his alleged father, José Vilaboy, a Cuban citizen, through a Cuban company called Compañia de Aeropuertos Internacionales, S.A. (CAISA). Plaintiff alleges that the communist Cuban government confiscated the Airport in 1959. Based on these allegations, Plaintiff asserts that American owes him triple the full current value of the Airport for "trafficking" in his alleged confiscated property.

But Plaintiff's Complaint is riddled with defects. At the threshold, Plaintiff lacks Article III standing because his lawsuit does not seek to remedy any concrete injury that is traceable to American. Any injury from the Cuban government's 1959 nationalization is traceable only to Cuba, and American's use of the Airport has caused Plaintiff no harm.

Separately, the Complaint fails to establish personal jurisdiction over American. General personal jurisdiction is lacking because American is not "at home" in Florida, and specific personal jurisdiction is lacking because Plaintiff's claim is tethered to American's use of the Airport in Cuba, not its activities in Miami. Venue is inappropriate here for the same reasons.

Plaintiff also fails to satisfy four of the HBA's preconditions to suit because (1) he did not "acquire[] ownership" of his alleged claim to confiscated property "before March 12, 1996," *Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1012 (11th Cir. 2021) (per curiam); (2) he never alleges that he was a U.S. national at the time he allegedly acquired ownership of his claim, or by March 12, 1996; (3) the Airport was not originally confiscated from a U.S. national; and (4) Plaintiff at best has a claim to shares in CAISA, not a claim to the Airport.

Finally, the Complaint fails to state a claim on the merits. The HBA's definition of "traffics" contains a heightened mens rea requirement, which limits liability to defendants who "knowingly and intentionally" use confiscated property. 22 U.S.C. § 6023(13)(A).[1] The definition also carves out "lawful travel" by excluding "transactions and uses of property incident to lawful travel to Cuba." § 6023(13)(B)(iii). But Plaintiff does not allege facts to demonstrate that American intentionally trafficked in property it knew Cuba had confiscated from a U.S. citizen, or that American provided carrier service to Cuba that was not "incident to lawful travel." For each of these reasons, Plaintiff's Complaint should be dismissed.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim requires factual allegations that establish all "the material elements of a cause of action." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). "Threadbare recitals," "conclusory statements," and mere "legal conclusions" "do not suffice" and are not accepted as true. *Iqbal*, 556 U.S. at 678. The allegations must "raise a right to relief above the speculative level," meaning that they must render the claim not merely "conceivable," but "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

---

[1] Unless indicated, all statutory citations refer to the Helms-Burton Act, 22 U.S.C. §§ 6021–6091 and all emphasis in quotations is added.

**ARGUMENT**

I.    **PLAINTIFF'S CLAIM IS BARRED BY THRESHOLD REQUIREMENTS OF STANDING, PERSONAL JURISDICTION, AND VENUE.**

    A.    **Plaintiff Lacks Article III Standing.**

To plead Article III standing, a plaintiff must allege facts showing that (i) "he suffered an injury in fact that is concrete, particularized, and actual or imminent;" (ii) the injury was "caused by the defendant;" and (iii) the injury would be "redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). An injury is "concrete" if it consists of either physical or monetary harm, or an intangible harm with a "close relationship" to a "historical or common-law analogue." *Id.* at 2204. The "close relationship" test applies even when "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2204–05. That's because Congress "may not simply enact an injury into existence." *Id.* at 2205.

Here, the only concrete injury Plaintiff alleges is the Cuban government's appropriation of the Airport in 1959. SAC ¶¶ 19, 53. Needless to say, American is not responsible for Cuba's appropriation. Any injury from Cuba's conduct is traceable to Cuba, not American, and a plaintiff cannot assert an "injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976).

American's use of the Airport has caused Plaintiff no "real world" harm whatsoever. *TransUnion*, 141 S. Ct. at 2205. To the contrary, Plaintiff was in precisely the same position before and after American's use of the Airport—either way, Cuba appropriated the property in the 1950s; either way, Cuba has not compensated Plaintiff for that appropriation; and either way, Cuba would maintain ownership, possession, and control of the property. The unassailable "real world" fact is that American's use of the Airport had no actual effect on Plaintiff. And "[a] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

Nor does Plaintiff's asserted injury bear a "close relationship" to any traditional common law tort. *TransUnion*, 141 S. Ct. at 2204. The HBA is a first-of-its-kind statute without a shred of historical precedent. Congress has never before tried to authorize suits against private parties for commercial use of real property that was appropriated *decades ago* by a foreign government. This novel theory of "injury to confiscated property" is foreign to the common law.

A key reason the HBA is different from any common law tort is that an HBA plaintiff does not own or possess the underlying property, but merely holds a claim to compensation from the Cuban government. As the Eleventh Circuit has held, "the property interest that former owners of confiscated property now have [is] ownership of a 'claim to such property.'" *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (quoting the HBA). The district court in *Club Méditerranée* said it even more clearly: HBA plaintiffs "may own a *claim* for compensation under U.S. law, but they do not *own* the expropriated land itself." 365 F. Supp. 2d 1263, 1269–71 (S.D. Fla. 2005); *see also Shanghai Power Co. v. United States*, 4 Cl. Ct. 237, 241 (1983) (explaining that after the Chinese government confiscated the assets of a power plant, "plaintiff no longer owned these assets; instead it owned a claim for compensation"). Thus, Plaintiff here does not own or possess the Airport itself; he owns, at most, a claim for compensation from Cuba.

There is no close common law analogue to injury arising from American's use of appropriated property that Plaintiff neither owns nor possesses. Trespass is a mismatch because it requires a *possessory* interest in the land. Restatement (Second) of Torts § 158 (1965) (trespass occurs when one "enter[s] land in the possession of another"). Conversion, too, applies only if the plaintiff has the right to immediate possession of the converted property. *Id.* §§ 222A, 225.

Similarly, unjust enrichment requires that the plaintiff have an ownership interest in the property. *Club Méditerranée*, 450 F.3d at 1254–55 & n.1. Indeed, the Eleventh Circuit has held that people whose property was confiscated by the Cuban Government have no unjust enrichment claim against those who later use the property because they cannot demonstrate the required ownership interest. *Id.* Moreover, the purpose and measure of the HBA remedy is utterly divorced

4

from unjust enrichment. At common law, unjust enrichment is designed and tailored to deprive the defendant of ill-gotten gains. *See, e.g.*, *Liu v. SEC*, 140 S. Ct. 1936, 1942–43 (2020). By contrast, the HBA purports to compensate plaintiffs for the Cuban government's entire appropriation—not merely for a trafficker's commercial gain—by authorizing as damages "the current value of the property, or the value of the property when confiscated plus interest, whichever is greater." § 6082(a)(1)(A)(i)(III). This remedy has nothing to do with American's alleged gains from using the Airport, and everything to do with compensation for Cuba's appropriation.

At bottom, these common law torts are not close analogues to the HBA because their basic elements differ. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931–32 (11th Cir. 2020) (en banc) (statutory claim did not require a confidential relationship, and therefore was not closely analogous to common law breach of confidence); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997–98 (11th Cir. 2020) (statutory claim did not require proof of reliance or actual damages, and therefore was not closely analogous to common law misrepresentation).

Other courts have erred in concluding that HBA plaintiffs had standing. In *Havana Docks*, the court reasoned that the plaintiff was injured by "not receiving the benefit of its interest" in the confiscated property. *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1228 (S.D. Fla. 2020). This is wrong because (1) an HBA plaintiff owns merely a claim for compensation from Cuba, not a right to the benefits of using the confiscated property itself, and (2) a private defendant's use of confiscated property does not alter the reality that Cuba appropriated the property in the 1950s and currently possesses—and will likely continue to possess—the property. The Fifth Circuit missed these same distinctions in *Glen v. American Airlines, Inc.*, 7 F.4th 331 (5th Cir. 2021), where it incorrectly concluded that an HBA claim is analogous to unjust enrichment. A proper application of the Supreme Court's "close relationship" test from *TransUnion* reveals that a plaintiff cannot allege concrete injury merely by asserting that the defendant used property that was previously confiscated by the Cuban government.

5

**B.     Plaintiff Does Not Adequately Allege That This Court Has Personal Jurisdiction Over American.**

The Complaint also fails to adequately plead that this Court has personal jurisdiction over American. First, a federal court may exercise "general" jurisdiction only when the defendant is "at home" in the state in which the court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And a corporate defendant is virtually never "at home" other than in the states of its (1) incorporation and (2) "principal place of business." *Id.* Here, American is incorporated in Delaware, and its principal place of business is in Texas—not Florida. *See* SAC ¶ 3.  This Court thus lacks general jurisdiction over American, as other courts in this District have concluded. *See, e.g.*, *Jakobot v. Am. Airlines, Inc.*, 2011 WL 2457915, at *1 (S.D. Fla. June 20, 2011); *Sequeira v. Am. Airlines, Inc.*, 2010 WL 11505678, at *1 (S.D. Fla. Apr. 15, 2010); *see also Zamber v. Am. Airlines, Inc.*, 2020 WL 1445479, at *2 (S.D. Fla. Feb. 11, 2020) (Martinez, J.) (transferring case to the Northern District of Texas in part because American's "principal place of business" is in Texas).

Second, specific jurisdiction exists only if the defendant purposely availed itself of the law of the forum state *and* the plaintiff's claim "'arise[s] out of or relate[s] to the defendant's contacts' with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)); *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009). "[M]ere injury to a forum resident" is an insufficient connection. *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Here, Plaintiff alleges that specific jurisdiction exists because "this case arises from [American's] business activity in Florida," and because "[m]any of the flights destined for the [José Martí] Airport … depart from" Miami. SAC ¶¶ 7, 40. This is insufficient because Plaintiff's claim arises from the use of real property in Cuba—it has nothing to do with American's business operations in Florida. In other words, there is no "affiliation between the forum and the underlying *controversy*." *Bristol-Myers*, 137 S. Ct. at 1780. By Plaintiff's own telling, the alleged tort in this case—the unlawful trafficking—was directly and solely aimed at the Airport in Cuba, not at the Miami International Airport in Florida. *See, e.g.*, SAC at 2 (Introduction); *id.* ¶ 55. No airline

would reasonably anticipate being haled into Florida court for alleged torts committed entirely in Cuba merely because it has an office in, or its planes departed from, Florida. If it were otherwise, every airline would be subject, in suits brought by non-passengers, to specific jurisdiction in the states where it has an office or from which its planes depart for injuries occurring solely at the destination airport. That is not the law. *See Walden*, 571 U.S. at 288–89 (rejecting argument that petitioner was subject to personal jurisdiction in Nevada for his actions at a Georgia airport "simply because he allegedly directed his conduct at plaintiffs whom he knew" were traveling to Nevada). This Court should dismiss for lack of personal jurisdiction based on "the reality that none of [American's] challenged conduct had anything to do with [Florida] itself." *Id.* at 289.

### C. Venue Is Improper In This District.

For largely the same reasons, venue here is improper. The Complaint asserts that venue is appropriate under 28 U.S.C. §§ 1391(b)(2) ("a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred") and 1391(b)(3) (a "judicial district in which any defendant is subject to the court's personal jurisdiction"). SAC ¶ 9. Neither provision applies. Section 1391(b)(3) is inapplicable because this Court lacks personal jurisdiction over American for the reasons stated above. Section 1391(b)(2) is inapplicable because the event giving rise to Plaintiff's trafficking claim is the use of the Airport in Cuba, not any activities in Miami. Venue is therefore improper in this District, just as Chief Judge Altonaga held in a similar HBA case against American. *See* Order, *Glen v. Am. Airlines, Inc.*, No. 19-cv-23994 (S.D. Fla. May 13, 2020), Dkt. 67 (granting American's motion to transfer HBA case to the Northern District of Texas).

## II. PLAINTIFF DOES NOT SATISFY THE HBA'S PRECONDITIONS TO SUIT.

Even after twice amending his Complaint, Plaintiff still fails to satisfy at least four statutory preconditions. The HBA provides that, "[i]n the case of property confiscated before March 12, 1996 [the HBA's date of enactment], a United States national *may not bring an action under this section* on a claim to the confiscated property unless such national *acquires ownership* of the claim

before March 12, 1996." § 6082(a)(4)(B). This provision applies because Plaintiff alleges that the Cuban government "confiscated the Airport" "[i]n or around May 1959." SAC ¶ 29. But Plaintiff fails to satisfy this provision on multiple grounds.

   *First*, Plaintiff fails to plausibly allege that he "acquire[d] ownership of [his] claim before March 12, 1996." § 6082(a)(4)(B). To support his allegation that he acquired ownership of a claim to CAISA shares in 1989, Plaintiff relies on an order from a Florida state court determining him an heir of Vilaboy. *See* SAC ¶ 34 n.11. But Plaintiff petitioned for and obtained that order in 2010—long after the 1996 cutoff. *See* Petition for Determination of Heirs and Order on Petition, *In re Est. of Jose Ramon Lopez Vilaboy*, No. 10-494 CP 01 (Fla. Cir. Ct. Feb 12 & Nov. 20, 2010) (attached as Exs. A, B).[2] The order shows that Plaintiff had not been determined an heir before 2010, so he could not possibly have acquired ownership of Vilaboy's alleged property before then.

   Plaintiff primarily relies on a legal conclusion—that "ownership of CAISA and the Airport passed" to him "as a matter of law under Florida Statute § 732.108(2)(c)" "[w]hen Vilaboy died intestate" in 1989. SAC ¶ 34. But that assertion is incorrect, both under Florida law and for purposes of the HBA. Under Florida law, intestate inheritance does not occur until the assets of the estate are distributed through probate, which begins with a petition for administration. Fla. Stat. §§ 733.202 (petition for administration); 733.801 (timing of distribution); 733.811 (distribution conveys title). That process is distinct from a petition to determine beneficiaries. Fla. Stat. § 733.105(3) ("A separate civil action to determine beneficiaries may be brought when an estate has not been administered."). That is why the order determining Plaintiff an heir noted that distribution of any assets would occur through "future probate proceedings." Ex. B, Order on Petition at 1; *see also* Report of Guardian ad Litem, *In re Vilaboy*, No. 10-494 CP 01 (Fla. Cir. Ct. Nov. 16, 2010) (adopted by the Court in Order on Petition) ("the assets of the within estate should

---

   [2] The Court "may take judicial notice of matters of public record," including "state probate records," "without converting the motion to dismiss to a motion for summary judgment." *Douglas v. Bayview Loan Servicing, LLC*, 2012 WL 345364, at *3 (S.D. Ala. Jan. 13, 2012).

be divided in equal shares") (attached as Ex. C). Moreover, the statute Plaintiff cites (SAC ¶ 34) simply specifies how to determine beneficiaries; it says nothing about identifying or distributing the assets of an estate. Crucially, Plaintiff does not allege that he ever filed a petition for administration or that the assets of the estate were identified, administered, or distributed. Nor is there any public record of such a proceeding. Thus, no court or administrator has ever ascertained whether the estate included a claim to CAISA shares, or whether that claim should be distributed to Plaintiff or Vilaboy's spouse (who was entitled to half of the estate). Unless and until that happens, Plaintiff cannot have "acquired ownership" as a matter of federal law under the HBA.[3]

Plaintiff's failure to plausibly allege that he acquired ownership before March 1996 is fatal. Multiple courts, including the Eleventh Circuit and the Fifth Circuit, have dismissed HBA suits on this ground. *Gonzalez*, 835 F. App'x at 1012; *Glen*, 7 F.4th at 337; *Glen v. Trip Advisor LLC*, 2021 WL 1200577, at *7 (D. Del. Mar. 30 2021); *Garcia-Bengochea v. Carnival Corp.*, 2020 WL 4590825, at *4 (S.D. Fla. July 9, 2020); *Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.*, 2020 WL 6081658, at *3 (S.D. Fla. Oct. 15, 2020).

Dismissing Plaintiff's lawsuit serves the purpose of Section 6082(a)(4)(B). Congress designed this provision, in part, to "eliminate any incentive that might otherwise exist to transfer claims to confiscated property to U.S. nationals in order to take advantage of the remedy created by [the Act]." *Gonzalez v. Amazon.com, Inc.*, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020), *aff'd*, 835 F. App'x 1011. Here, Plaintiff affirmatively set out to transfer the alleged claim from Vilaboy by having himself declared an heir, more than a decade after passage of the HBA, and more than two decades after Vilaboy's death. The Court should reject this transparent attempt to evade the time bar of 6082(a)(4)(B) for the purpose of cashing-in on the HBA.

---

[3] Plaintiff's allegation that he has had "physical possession of CAISA's shares since the late 1950s" is irrelevant, as Plaintiff does not contend that he acquired ownership of a claim in the late 1950s. SAC ¶¶ 34–35. *See also All Bright Sanitation of Colo., Inc. v. U.S. C.I.S.*, 2012 WL 3962900, at *7 (S.D. Fla. Sept. 11, 2012) ("possession is not the same as ownership").

**Second**, even if Plaintiff had adequately pled that he acquired ownership of a claim before March 12, 1996, he does not allege that he was a U.S. national when he did so, or at any other time before March 12, 1996. This requires dismissal because "the Helms-Burton Act only applies to claim owners who are already United States citizens at the time the Act was passed." *Id.* Specifically, the HBA does not permit "a United States national" to bring a suit "unless *such national* acquires ownership of the claim before March 12, 1996." § 6082(a)(4)(B). And, as relevant here, the HBA defines "United States national" to mean "any United States citizen." § 6023(15)(A). The HBA therefore requires a Section 6082(a)(4)(B) plaintiff to have been a U.S. citizen when he acquired his claim, or at least before March 12, 1996.

This requirement was no slip of the congressional pen. Congress embedded nearly identical requirements elsewhere: In defining "property," Congress included residential property if "as of March 12, 1996 … the claim to the property is held by a United States national." § 6023(12)(B). Similarly, Congress prohibited financing of transactions "involving any confiscated property the claim to which is owned by a United States national as of March 12, 1996." § 6033(a).

Plaintiff makes no attempt to meet this requirement. He alleges that he "is a U.S. national" as of today, but says nothing about when he or Vilaboy became a U.S. national. SAC ¶ 2. This requires dismissal. In fact, Judge Scola dismissed the complaint in *Gonzalez* on precisely these grounds, holding that "a United States citizen must already own the claim to the confiscated property on March 12, 1996," and that Congress "intended … this requirement [to] prevent foreigners from relocating to the United States for the purpose of using [the HBA]." *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) ("*Gonzalez I*") (cleaned up). And Gonzalez failed to allege "when [he] inherited the claim from his grandfather, when [he] became a United States citizen," and if and when his "grandfather became a citizen." *Id.* Judge Scola later reiterated this rule in an order that was affirmed by the Eleventh Circuit: "[T]he Helms-Burton Act only applies to claim owners who are already United States citizens at the time the Act was passed on March 12, 1996." *Gonzalez*, 2020 WL 2323032, at *2, *aff'd*, 835 F. App'x 1011.

10

**Third**, Plaintiff has not alleged that the Airport was confiscated from a U.S. national. In fact, he admits that the Vilaboy Family "were not U.S. citizens when the Airport was confiscated," SAC ¶ 37, and that Vilaboy was a "Cuban[]," SAC at 2 (Introduction). This is fatal because, as Congress repeatedly stated, the HBA covers only property confiscated from "United States nationals." *See* § 6022(3) ("theft of property from United States nationals"); § 6022(6) ("to protect United States nationals against confiscatory takings"); § 6081(2) ("[t]he wrongful confiscation or taking of property belonging to United States nationals"); § 6081(5) ("property and assets some of which were confiscated from United States nationals"); § 6081(6)(B) ("to protect the claims of United States nationals"); § 6081(10) ("The United States Government has an obligation to *its citizens* to provide protection against wrongful confiscations"); § 6081(11) ("United States nationals who were the victims of these confiscations should be endowed with a judicial remedy"). Consistent with these provisions, the Eleventh Circuit explained in *Club Méditerranée* that because the property at issue there "was owned by Cuban nationals at the time of its expropriation," it "thus may not be the proper subject of a trafficking claim under [Title III]." 450 F.3d at 1255 n.3.

More to the point, the HBA cause of action is expressly limited to a plaintiff "who owns the claim" to confiscated property. § 6082(a)(1). This is key because the Cuban government's "domestic" appropriation of property in 1959 from a Cuban national (Vilaboy) indisputably did not violate international law, and therefore did not give rise to ownership of any private claim to the property. *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709–11 (2021) (explaining that the "domestic takings rule" is "beyond debate"). Under the deeply rooted domestic takings rule, a Cuban national such as Vilaboy never "owns [a] claim" for purposes of Section 6082(a)(1).[4]

Finally, even if the HBA cause of action is incorrectly interpreted to cover property confiscated from someone who only later became an American citizen, Plaintiff has not alleged

---

[4] The HBA expressly discusses the interest of protecting U.S. citizens' property from foreign expropriation. § 6081(2), (8), (10). It does not mention providing any remedies for domestic takings, and a remedy for purely domestic takings cannot be squared with customary international law, Supreme Court precedent, *Philipp*, 141 S. Ct. at 709–10, or the text of the HBA.

(as noted above) that his father ever became a U.S. national. *See Gonzalez I*, 2020 WL 1169125, at *2 (dismissing first complaint for failing to allege facts, including "if [plaintiff's] grandfather was a United States citizen, and, if so, when [his] grandfather became a citizen").

**Fourth,** Plaintiff has not established that he has a direct claim to "the confiscated property" in which American allegedly "traffics"—i.e., *the Airport*. § 6082(a)(4)(B). Plaintiff alleges that CAISA owned the Airport, and that his father owned CAISA shares. *See* SAC ¶¶ 28, 43. But under basic principles of corporate law, "[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (citing 1 W. Fletcher, Cyc. Corp. § 31 (rev. ed. 1999)). This means that (at most) Plaintiff acquired a claim to ownership of his father's CAISA shares, not the Airport. In turn, CAISA owns a claim to the Airport, and the only potential plaintiff here is CAISA itself.

This straightforward reading is supported by ample evidence that Congress drafted the HBA with corporate formalities in mind. For example, Congress defined "United States national"—the potential holder of a Title III right of action—to include any "legal entity which is organized under [domestic law], and which has its principal place of business in the United States." § 6023(15)(B). Congress defined "foreign national" to mean "any corporation, trust, partnership, or other juridical entity" not organized under domestic law. § 6023(8)(B). In Section 6023(1), Congress even expressly incorporated by reference 28 U.S.C. § 1603(b), a provision that contains "indicia that Congress had corporate formalities in mind." *Dole Food Co.*, 538 U.S. at 474; *see also* 22 U.S.C. § 1643m(b) (referring to "shares of capital stock"); § 6091(a)(3) ("a corporate officer, principal, or shareholder with a controlling interest of an entity"); § 6065(b)(2)(D) ("entities which are 50 percent or more beneficially owned by United States citizens").

Judge King's contrary holding in *Garcia-Bengochea v. Carnival Corp.*—that "there is no indication in [the HBA's] text that Congress was legislating with corporate formalities in mind"

—is unpersuasive. 407 F. Supp. 3d 1281, 1289 (S.D. Fla. 2019).[5] Judge King did not address the corporate-formalities provisions discussed above. Judge King also suggested that limiting the HBA based on corporate formalities would "require the Court to delete the word 'claim' from the phrase 'owns the claim to such property,' and effectively rewrite Helms-Burton to cover only those plaintiffs who 'own such property.'" *Id.* at 1290 Respectfully, that is incorrect. The word "claim" does equal work when corporate formalities are recognized; such recognition simply affects which underlying property an owner can claim. Here, for example, taking Plaintiff's allegations as true, CAISA owns the claim to the Airport, and Plaintiff (at most) owns a claim to CAISA shares. The concept of a claim is the same in either instance.

Judge King further found it "implausible" that Congress would have denied shareholders the ability to bring Title III claims that a nationalized company itself could not bring, because that would mean that "*no one*" could bring such claims. *Id.* But the HBA was not designed to ensure that every conceivable trafficking claim could be asserted. Numerous provisions prove this point, including the prohibition on claims brought by foreign nationals, § 6082(a)(1), the prohibition on transferring claims, § 6085(c)(1)(A), the presidential suspension authority, § 6085(b)–(c), and the two-year statute of repose, § 6084, to name a few. Further, as explained above, the HBA's corporate-formalities provisions establish that Congress intended to preserve corporate formalities in Title III. Moreover, according to Plaintiff's Complaint, Vilaboy decided to create CAISA as a Cuban corporation and purchase the Airport in CAISA's name, rather than purchasing the Airport in his own name or incorporating CAISA elsewhere. Having taken advantage of the corporate form to limit his personal liability, and having chosen to incorporate under Cuban law, it is eminently reasonable that Congress required Vilaboy (and his alleged heirs) to accept the consequences.

---

[5] Judge King later dismissed *Garcia-Bengochea* because the plaintiff acquired his claim by inheritance after March 1996. 2020 WL 4590825, at *4.

III.   **PLAINTIFF DOES NOT ADEQUATELY PLEAD THE MENS REA AND TRAFFICKING ELEMENTS OF HIS CLAIM.**

Plaintiff also fails to state a claim on the merits. First, he does not adequately allege facts to demonstrate that American "knowingly and intentionally" used or benefitted from confiscated property. Second, he fails to plausibly allege that American's use of the Airport was not "incident to lawful travel," and his underlying theory of Title III of the HBA is irreconcilable with federal regulations authorizing lawful travel and carrier service to Cuba.

   A.   **Plaintiff Fails To Plead That American Knowingly And Intentionally Used Or Benefitted From Confiscated Property.**

Plaintiff fails to plead that American "*knowingly and intentionally* … engage[d] in a commercial activity using or otherwise benefiting from confiscated property." § 6023(13). To adequately plead this mental state, a plaintiff must allege the defendant (1) "knew the property was confiscated by the Cuban government," (2) knew the property "was owned by a United States Citizen," *Gonzalez I*, 2020 WL 1169125, at *2, and (3) "intend[ed] that such property be the subject of their commercial behavior," *Glen v. Am. Airlines, Inc.*, 2020 WL 4464665, at *6 (N.D. Tex. Aug. 3, 2020), vacated on other grounds, 7 F.4th 331. Both *Glen* and *Gonzalez I* dismissed HBA complaints for failure to allege one or more of these elements. This Court should do the same.

These mens rea elements follow directly from the statute's text. The relevant provision combines "confiscated" and "property" into a single phrase—"confiscated property"—and places "confiscated" before "property," closer to "knowingly and intentionally." § 6023(13). In this context, "knowingly and intentionally" cannot fairly be read to modify "property" without also modifying "confiscated." *Glen*, 2020 WL 4464665, at *5; *see Flores-Figueroa v. United States*, 556 U.S. 646, 651 (2009) ("If a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy and that the toy belongs to his sibling.").

Further, Congress's use of "knowingly and intentionally" reflects that Congress wanted to ensure that liability would not be imposed unless the defendant engaged in some form of culpable

conduct. It thus makes sense for Congress to have distinguished between (nonculpable) persons who use property they do not know is confiscated, and (culpable) persons who intentionally use property they know the Cuban government confiscated from a U.S. citizen. It would make little sense, in contrast, "to conclude that Congress intended [to] distinguish between someone who knowingly and intentionally sold or purchased confiscated property, regardless of whether he knew it had been confiscated, and someone who made such a sale or purchase without knowing that he had sold or purchased anything." *Glen*, 2020 WL 4464665, at *5; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (using similar reasoning to conclude that "knowingly" applied to the contents of a mailed package, not just the act of mailing it).

The Complaint fails to satisfy these mens rea requirements for two reasons. ***First***, it impermissibly excises "intentionally" from the statute by failing to allege *any* facts demonstrating the required proof of intentional conduct. *See* SAC ¶ 43 (referring only to what defendants allegedly "have known"). Plaintiff's "[t]hreadbare" and "conclusory statement[]" is insufficient. *See Iqbal*, 556 U.S. at 678. "Congress chose to include the intent requirement, and the court should not ignore it." *Glen*, 2020 WL 4464665, at *6. This alone is sufficient to dismiss the claim. *Id.* ("plaintiff has not alleged facts to show that defendant acted 'intentionally'").

***Second***, the Complaint speculates that American knew "Vilaboy, through CAISA, was the Airport's owner and that the Cuban government confiscated the Airport in 1959" because this was "widely publicized."  SAC ¶ 43. This conclusory assertion is insufficient to establish the required "knowing[] and intentional[]" element of the HBA. Moreover, Plaintiff does not allege that American knew that the Cuban government had confiscated the Airport *from a U.S. citizen*. *Gonzalez I*, 2020 WL 1169125, at *2 (requiring knowledge that confiscated property was owned by a U.S. citizen). In fact, he admits the Airport was not confiscated from a U.S. citizen. SAC ¶ 37.

B.      **Plaintiff Does Not Plead The Trafficking Element.**

1.      **Plaintiff Fails To Allege That American's Travel Services Are Not "Incident To Lawful Travel," And They Plainly Are.**

Title III creates a cause of action against a defendant who "[1] traffics [2] in property [3] which was confiscated by the Cuban Government." § 6082(a). To plead the "traffic[king]" element, a plaintiff must allege facts to plausibly demonstrate that a defendant's use of confiscated property fits within Congress's definition of "traffics." That definition excludes "uses of property incident to lawful travel to Cuba, to the extent that such … uses of property are necessary to the conduct of such travel." § 6023(13)(B). But Plaintiff's Complaint fails to adequately allege that American's flights to Cuba were not "incident to lawful travel to Cuba." *See Twombly*, 550 U.S. at 555 (plaintiff must plausibly allege each "element[] of a cause of action").

Plaintiff alleges that American "used the Airport to transport cargo and passengers" through its flights to Cuba. SAC ¶ 39. He then offers a conclusory allegation that "[d]efendants transport cargo and passengers in violation of applicable Cuban Asset Control Regulations ('CACRs')." SAC ¶ 41. But a plaintiff's must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff provides *no* factual allegations about the putative circumstances under which American allegedly transported passengers and cargo in violation of OFAC regulations, or which regulations were allegedly violated. His allegations are thus patently insufficient under *Iqbal* and *Twombly*.

Plaintiff's failure to plead these facts is particularly conspicuous because American's use of the Airport plainly is "incident to lawful travel to Cuba" and "necessary to the conduct of such travel." § 6023(13)(B). For more than 40 years, the United States government has permitted lawful travel to Cuba under the CACR. OFAC promulgated the CACR under statutory authority to establish the scope of lawful trade with Cuba. *See* 22 U.S.C. § 2370(a); 50 U.S.C. § 4305(b).

Two regulatory provisions are most relevant here. First, a personal-travel provision authorizes persons to travel to Cuba for certain enumerated purposes. 31 C.F.R. § 515.560. Second, a carrier-services provision authorizes persons to "provide carrier services to, from, or within Cuba

16

in connection with travel or transportation, directly or indirectly, between the United States and Cuba of persons, baggage, or cargo." *Id.* § 515.572(a)(2)(i). Countless travelers and numerous travel providers have relied on these regulations, and American's provision of "carrier services to[ and] from … Cuba" falls squarely within the regulations' plain terms. *Id.* Yet under Plaintiff's misguided reading of the HBA, if one passenger flew into the Airport and was for any reason not compliant with any OFAC regulation, then American (and the passenger) would be potentially liable for the full value of the Airport. No one can attribute such an absurd outcome to Congress.

### 2. Lawful Travel Is Not An Affirmative Defense.

Plaintiff cannot salvage his lawsuit by arguing that lawful travel is an affirmative defense. The default rule is that plaintiffs must plead and prove "the essential aspects of their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005). Here, two key features of the HBA compel the conclusion that Plaintiff must plead facts showing the absence of lawful travel as part of his affirmative case, because doing so is an "essential aspect" of his HBA claim.

*First*, "traffics" is a material element of the HBA cause of action: a plaintiff must plead and prove that the defendant "traffics in property which was confiscated by the Cuban government." § 6082(a)(1). The cause of action itself says nothing about exclusions from the scope of "traffics." It is only elsewhere, in the separate definitions section, that Congress defined "traffics" to include certain conduct and exclude other conduct like "lawful travel." § 6023(13). This shows that Congress required plaintiffs to plead that the defendant's conduct fits within the defined meaning of "traffics" as a whole, as set forth in the separate definitional provision.

The Eleventh Circuit has held that where an element is a "straightforward" part of an offense, the burden of pleading and proving that element rests with the plaintiff, even if doing so requires the plaintiff to negate applicable statutory carve-outs. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). In *Thomas*, the court analyzed the Driver Privacy Protection Act (DPPA), which sets forth three elements of a cause of action for misusing personal information contained in state motor vehicle records. *See id.*

One element is that the defendant's alleged conduct was "not permitted" by a separate provision of the statute that generally prohibits disclosure of such information, but enumerates fourteen exceptions. *Id*.; *see also* 18 U.S.C. § 2721. The court concluded that the plaintiff bore the affirmative burden of proving that a defendant's conduct was "not permitted" by this separate provision, because that showing was a "straightforward" part of the statutory offense. *Thomas*, 525 F.3d at 1111. So too here: the "traffics" element is a straightforward part of a Title III claim that must be pleaded and proved by the plaintiff, even if it refers to a separate section that lists prohibited conduct and carves out some permitted activities.

***Second***, Title III must be interpreted in light of, and reconciled with, the broader statutory framework governing trade with Cuba, through which Congress authorized travel to Cuba. Shifting the burden to defendants to plead lawful travel would upend this longstanding framework.

OFAC has regulated Cuban trade and travel under the CACR for decades pursuant to congressional authority delegated by statute. *Regan v. Wald*, 468 U.S. 222, 226 & n.2 (1984); *see* 31 C.F.R. pt. 515. The current regulations authorize travel to Cuba for 12 enumerated purposes, as well as carrier services and travel services in connection with such travel. 31 C.F.R. §§ 515.560, 515.572(a)(1)–(2). These regulations establish the lawfulness of providing "travel services" in connection with travel between the United States and Cuba.

It would have been senseless for Congress to authorize both travel to Cuba and the provision of related travel services, but at the same time permit plaintiffs to sue for damages based on that very same conduct. Similarly, it would have made no sense for Congress to allow HBA plaintiffs to drag defendants into court, subject them to onerous discovery, and force them to prove that they were providing lawful travel services, while at the same time authorizing the President to permit lawful travel and related services, and allowing the public and travel service providers to rely on regulatory designations of lawfulness. Indeed, if Congress had truly intended to shift the burden of proof to travel service providers in this way, one would have expected a clear statement to this effect in the HBA. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 (2004).

In interpreting a statute, courts should "harmoniz[e]" it with related statutes. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 665 (2007); *PETA, Inc. v. Mia. Seaquarium*, 189 F. Supp. 3d 1327, 1351 (S.D. Fla. 2016). The way to harmonize the HBA with the preexisting statutory scheme is to recognize that Congress intended to preserve lawful travel to Cuba and carrier services related to such travel, and therefore consciously elected to "remove any liability" for "lawful travel" by carving it out from the definition of "traffics" in the HBA. H.R. Rep. No. 104-468, at 44 (1996). That interpretation rightly places on plaintiffs the burden to plead specific facts, and ultimately to prove, that a defendant's activity did not entail lawful travel services.[6]

### 3.    It Is Apparent From The Face Of The Complaint That The Actions Plaintiff Challenges Were Incident To Lawful Travel.

Regardless, even if lawful travel were an affirmative defense, a "claim that is facially subject to an affirmative defense … may be dismissed under Rule 12(b)(6)" if the defense is apparent from the facts alleged, coupled with the governing law. *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009); *see, e.g.*, *Kadiyala v. Pupke*, 2019 WL 1491735, at *2 (S.D. Fla. Apr. 4, 2019) (dismissing claim on motion to dismiss based on statute of limitations defense).

Plaintiff's claim is facially subject to the "lawful travel" provision. Plaintiff's claim is that when American flies to Cuba, it uses "Cuba's main domestic and international airport." SAC at 2 (Introduction). But, as a matter of law, American's use of the Airport as alleged was incident and necessary to lawful travel to Cuba.  § 6023(13)(B). American's flights were clearly incident to lawful travel because OFAC regulations—published in the Federal Register—authorized U.S.

---

[6] Two courts have mistakenly concluded that the HBA's lawful-travel provision is an affirmative defense. *See Garcia-Bengochea*, 407 F. Supp. 3d 1281; *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724 (S.D. Fla. Aug. 28, 2019), Dkt. 47. But neither court addressed the textual arguments presented here, nor did they discuss the statutory context within which the HBA was enacted—let alone confront the fact that holding lawful travel to be an affirmative defense would undermine other parts of the statutory framework governing interactions with Cuba.

companies to provide travel and carrier services to Cuba. 31 C.F.R. § 515.572(a)(1), (a)(2)(i). And landing at an airport is indisputably a use of property that is necessary to conduct air travel.

Nor is there any factual question that must be answered. All that matters is that OFAC authorized carrier service to Cuba.[7] As a matter of law, that general license makes American's use of the Airport "incident to lawful travel" for purposes of the HBA. Any other reading would raise serious constitutional concerns. Due process, for example, precludes imposing sanctions on companies who reasonably rely on the government's assurances that their activity is permissible. *Raley v. Ohio*, 360 U.S. 423, 438 (1959); *Cox v. Louisiana*, 379 U.S. 559, 571 (1965). Due process also precludes liability that is vastly disproportionate to any harm caused by the defendant's conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572, 574 (1996) (this applies "whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages").

This Court can avoid these constitutional issues altogether by dismissing the Complaint now. And the Court can do so because lawful travel is apparent from the face of the complaint. Indeed, this is no different than a statute-of-limitations defense, which courts routinely address on motions to dismiss. *E.g.*, *Kadiyala*, 2019 WL 1491735, at *2.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice or, in the alternative, dismissed for lack of jurisdiction and venue.

---

[7] *Garcia-Bengochea* incorrectly rejected this argument on grounds that the OFAC regulation is "outside the four corners of the Complaint." 407 F. Supp. 3d at 1288. Regulations are public laws and, like any statute or reported case, are subject to mandatory judicial notice. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed."). Moreover, the conclusion in *Havana Docks*, Dkt. 47 at 8, that lawful travel was an "issue of fact in dispute" is inapplicable here because Plaintiff has failed to plead—nor could he plead—facts to dispute that American's use of the Airport is incident to lawful travel.

Date: October 12, 2021

Respectfully submitted,

*/s/ Ricardo H. Puente*

Ricardo H. Puente (Florida Bar No. 121533)
Email:  rpuente@jonesday.com
Christopher R.J. Pace (Florida Bar No. 721166)
Email:  crjpace@jonesday.com
**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, Florida  33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

*Attorneys for Defendant American Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 12, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.


*/s/ Ricardo H. Puente*
Ricardo H. Puente