**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

      plaintiff,

v.

AMERICAN AIRLINES INC. and
LATAM AIRLINES GROUP, S.A.,

      defendants.

_____/

**PLAINTIFF'S OPPOSITION TO**
**<u>AMERICAN AIRLINES' MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 2

ARGUMENT ........................................................................................................................... 2

   I.    The Complaint Adequately Alleged Standing, Personal Jurisdiction, and Venue ...... 2

       A.  The Complaint Adequately Alleged a Concrete Harm Caused by the Defendant's
           Trafficking in the Airport ................................................................................... 3

       B.  The Complaint Adequately Alleged a Prima Facie Case of Personal Jurisdiction
           over Defendant, Which Stands Unrebutted ......................................................... 4

       C.  Venue is Proper in this District ............................................................................ 7

   II.    Plaintiff Possesses and Adequately Alleged a Legally Sufficient Title III Claim ..... 7

   III.    Plaintiff Adequately Alleged the Trafficking Elements of His Claim ..................... 11

       A.  Plaintiff Adequately Alleged That Defendant's Trafficking of the Airport Was
           "Knowing and Intentional" ............................................................................... 12

       B.  Plaintiff Was Not Required to Allege That Defendant's Trafficking Was Not
           Incident to Lawful Travel, and This Exception is an Affirmative Defense, as
           Courts of this District Have Held ...................................................................... 13

       C.  Even If the Incident to Lawful Travel Exception Were Not an Affirmative
           Defense (It Is), it Would be Inapplicable Because Defendant is Not Engaging in
           Transactions and Uses of the Airport That Are Incident to Lawful Travel ........ 15

   CONCLUSION ................................................................................................................. 20

## **TABLE OF AUTHORITIES**

### **CASES**

*Adams v. Jumpstart Wireless Corp.*,
    294 F.R.D. 668 (S.D. Fla. 2013) ................................................................................... 13

*Amsterdam Syndicate of U.S. v. Fuller*,
    154 F.2d 342 (8th Cir. 1946) ...................................................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 2

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996) ................................................................................................... 19

*Boigris v. EWC P&T, LLC*,
    2019 WL 5457072 (S.D. Fla. 2019) ........................................................................... 13

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
    902 F.2d 829 (11th Cir. 1990) ................................................................................ 4, 6

*Caiazzo v. Am. Royal Arts Corp.*,
    73 So. 3d 245 (Fla. 4th DCA 2011) ............................................................................ 5

*Crowell v. Morgan, Stanley, Dean Witter Servs. Co., Inc.*,
    87 F. Supp. 2d 1287 (S.D. Fla. 2000) .......................................................................... 2

*Cunningham v. Yellowstone Capital LLC*,
    2016 WL 11163899 (S.D. Fla. 2016) ......................................................................... 14

*Dusek v. JPMorgan Chase & Co.*,
    832 F.3d 1243 (11th Cir. 2016) ................................................................................... 2

*Empire World Towers, LLC v. CDR Creances S.A.S.*,
    89 So. 3d 1034 (Fla. 3d DCA 2012) ............................................................................ 9

*Erikson v. Pardus*,
    551 U.S. 89 (2007) ....................................................................................................... 2

*Follman v. Vill. Squire, Inc.*,
    542 F. Supp. 2d 816 (N.D. Ill. 2007) ......................................................................... 17

*Friends of Everglades v. S. Fla. Water Mgmt. Dist.*,
    570 F.3d 1210 (11th Cir. 2009) ................................. 9

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948) .................................................. 14

*Garcia-Bengochea v. Carnival Corp.*,
    407 F. Supp. 3d 1281 (S.D. Fla. 2019) ................ passim

*Glen v. Am. Airlines, Inc.*,
    7 F.4th 331 (5th Cir. 2021) ................................... 3

*Glen v. Am. Airlines, Inc.*,
    No. 19-cv-23994 (S.D. Fla. 2020) ........................... 7

*Gonzalez v. Amazon.com, Inc.*,
    2020 WL 1169125 (S.D. Fla. 2020) .................... 10, 13

*Gonzalez v. Amazon.com, Inc.*,
    835 F. App'x. 1011 (11th Cir. 2021) ...................... 10

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982) .............................................. 20

*Harris v. Mexican Spec. Foods, Inc.*,
    564 F.3d 1301 (11th Cir. 2009) ............................. 20

*Havana Docks Corp. v. Carnival Corp.*,
    2020 WL 5517590 (S.D. Fla. 2020) ................. 3, 13, 17

*Havana Docks Corp. v. MSC Cruises SA Co.*,
    484 F. Supp. 3d 1177 (2020) ................... 17, 18, 19, 20

*Havana Docks Corp. v. Norwegian Cruise Lines Holdings, Ltd.*,
    484 F. Supp. 3d 1215 (S.D. Fla. 2020) ................... 3, 4

*In re Donovan*,
    2016 WL 11708149 (M.D. Fla. 2016) ....................... 8

*In re Estate of Jose Ramon Lopez Vilaboy*,
    No. 10-0494-CP-02 (Fla. 11th Cir. Ct. Nov. 30, 2010) ................... 9

*In re Mooney's Estate*,
    395 So. 2d 608 (Fla. 5th DCA 1981) ....................... 8

*Jakobot v. Am. Airlines, Inc.*,
    2011 WL 2457915 (S.D. Fla. 2011) ............................................................. 5

*Jewell-La Salle Realty Co. v. Buck*,
    283 U.S. 202 (1931) ............................................................................. 20

*Koch v. Royal Wine Merchs, Ltd.*,
    847 F. Supp. 2d 1370 (S.D. Fla. 2012) ....................................................... 6

*La Grasta v. First Union Sec., Inc.*,
    358 F.3d 840 (11th Cir. 2004) ................................................................. 14

*Losada v. Norwegian (Bah.) Ltd.*,
    296 F.R.D. 688 (S.D. Fla. 2013) .............................................................. 13

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1399 (11th Cir. 2013) ................................................................ 7

*Manfred v. Bennet Law, PLLC*,
    2012 WL 6102071 (S.D. Fla. 2012) .......................................................... 14

*Meacham v. Knolls Atomic Power Lab.*,
    554 U.S. 84 (2008) .............................................................................. 14

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020). ................................................................. 4

*New Lenox Indus., Inc. v. Fenton*,
    510 F. Supp. 2d 893 (M.D. Fla. 2007) ........................................................ 6

*Padilla v. Porsche Cars N. Am., Inc.*,
    391 F. Supp. 3d 1108 (S.D. Fla. 2019) ....................................................... 14

*Pasco v. Protus IP Solutions, Inc.*,
    826 F. Supp. 2d 825 (S.D. Fla. 2011) ........................................................ 19

*R.I. Hosp. Tr. Co. v. Doughton*,
    270 U.S. 69 (1926) .............................................................................. 11

*Sequeira v. Am. Airlines, Inc.*,
    2010 WL 11505678 (S.D. Fla. 2010) .......................................................... 5

*Sony BMG Music Ent. v. Tenenbaum*,
    719 F.3d 67 (1st Cir. 2013) ..................................................................... 19

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) .................................................................................. 3, 4

*St. Louis, I.M. & S. Ry. Co. v. Williams,*
    251 U.S. 63 (1919) ........................................................................................... 19

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ......................................................................................... 19

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,*
    525 F.3d 1107 (11th Cir. 2008) ....................................................................... 14

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...................................................................................... 3

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ...................................................................................... 4

*U.S. v. Carlton,*
    512 U.S. 26 (1994) ........................................................................................... 18

*Venetian Salami Co. v. Parthenais,*
    554 So. 2d 499 (Fla. 1989) ................................................................................ 5

*VP Props. & Devs. LLLP v. Seneca Specialty Ins. Co.,*
    645 F. App'x. 912 (11th Cir. 2016) ................................................................. 13

*Williams Elec. Co. v. Honeywell, Inc.,*
    854 F.2d 389 (11th Cir. 1988) .......................................................................... 6

*Wright v. King,*
    2007 WL 80844 (M.D. Fla. 2007) .................................................................... 2

*Zamber v. Am. Airlines, Inc.,*
    2020 WL 1445479 (S.D. Fla. 2020) .................................................................. 5

## STATUTES

22 U.S.C. § 6021 ..................................................................................................... 1
22 U.S.C. § 6023(12) ............................................................................................. 11
22 U.S.C. § 6023(13)(A) .................................................................................. 12, 14
22 U.S.C. § 6023(13)(B) ....................................................................................... 14
22 U.S.C. § 6023(13)(B)(iii) ................................................................................. 14
22 U.S.C. § 6081(11) ............................................................................................. 19
22 U.S.C. § 6081(8) ................................................................................................. 3
22 U.S.C. § 6082(a)(1)(A) .................................................................................... 11
22 U.S.C. § 6082(a)(4)(B) .................................................................................. 8, 9

22 U.S.C. § 6082(a)(5)(A) ........................................................................................ 10
22 U.S.C. § 6082(a)(6) ............................................................................................. 11
22 U.S.C. § 6083(c)(1) ............................................................................................. 10
28 U.S.C. § 1391(b)(1) ............................................................................................... 7
28 U.S.C. § 1391(b)(2) ............................................................................................... 7
Fla. Stat. § 48.193(1)(a)(1) ........................................................................................ 5
Fla. Stat. § 48.193(1)(a)(2) .................................................................................... 6, 7
Fla. Stat. § 48.193(2) .................................................................................................. 5
Fla. Stat. § 732.101(2) ............................................................................................... 8

## RULES & REGULATIONS

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2, 16
31 C.F.R. § 515.101 ................................................................................................. 17
31 C.F.R. § 515.101(b) ............................................................................................ 18
31 C.F.R. § 515.533 ................................................................................................. 15
31 C.F.R. § 515.560(a) ............................................................................................ 17
31 C.F.R. § 515.560(f) ............................................................................................. 16
31 C.F.R. § 515.572 ................................................................................................. 15
31 C.F.R. § 515.572(a)(1) ....................................................................................... 16
31 C.F.R. § 515.572(b) ............................................................................................ 17
31 C.F.R. § 515.572(b)(1) ....................................................................................... 16

## OTHER AUTHORITIES

"President's Statement on Action on Title III of the Cuban Liberty and Democratic Solidarity
    (Libertad) Act of 1995," 32 Weekly Comp. Pres. Doc. 1265 (July 16, 1996) (G.P.O.
    authenticated version available at www.govinfo.gov/content/pkg/WCPD-1996-07-
    22/pdf/WCPD-1996-07-22-Pg1265.pdf) .......................................................... 13

*American Airlines Becomes 1st US Carrier to Begin Cuba Cargo Service*, AM. AIRLINES CARGO,
    https://www.aacargo.com/about/american-becomes-first- carrier-to-begin-cuba-cargo-
    service.html (last accessed Dec. 10, 2019) ..................................................... 15

*Definition of Incident*, LEXICO, https://www.lexico.com/en/definition/incident (last visited Oct.
    28, 2021) .......................................................................................................... 15

TRANSLEGAL, https://www.translegal.com/legal-english-dictionary/incident-to (last visited Oct.
    28, 2021) .......................................................................................................... 15

*Travel*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-
    webster.com/dictionary/travel (last visited October 28, 2021) ......................... 15

*Traveler*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-
    webster.com/dictionary/traveler (last visited October 28, 2021) ...................... 16

**INTRODUCTION**

In its Motion to Dismiss (ECF 123) (the "Motion" or "MTD"), defendant American Airlines, Inc. ("AA"), demands dismissal of the Second Amended Complaint for Damages (ECF 122) ("Compl."), *inter alia*, on the theory that plaintiff lacks so-called "Article III standing" to bring his claim, arguing that plaintiff's injury is traceable only to the Cuban government. This is a rank mischaracterization of Title III of the Helms-Burton Act, 22 U.S.C. § 6021, *et. seq.* ("Title III" of "the Act"), not to mention Article III of the Constitution. The express language of Title III and the complaint make it clear that plaintiff's injury in this case is not the Cuban government's confiscation of the José Martí International Airport (the "Airport") in Havana, Cuba, but defendant's continued use of the Airport for commercial air traffic without plaintiff's permission and without paying him any compensation whatsoever.

In addition to an ill-conceived "Article III standing" argument, defendant makes the mystifying argument that the complaint fails to state a prima facie case for personal jurisdiction, despite its allegations and proof that this case *arises from* defendant's substantial and not isolated daily business activity in Florida, which includes conducting business in Florida through offices and facilities in Miami where hundreds of employees operate cargo and passenger flights to and from the Airport, and running interactive websites aimed at and accessible by Floridians to solicit and sell reservations for its cargo and passenger flights to and from the Airport. Defendant cannot rebut, and made no attempt to rebut, the complaint's jurisdictional allegations. Because they are legally sufficient and stand unrebutted, personal jurisdiction exists, period, full stop.

Defendant also argues: (1) that plaintiff did not acquire his claim before March 12, 1996—despite the fact that he inherited it in 1989, as the complaint alleges and demonstrates; (2) that plaintiff did not allege that he was a U.S. national when he acquired his claim or when the Airport was confiscated—neither of which are required by the Act; and that (3) plaintiff's claim is somehow about his shares in CAISA, not the Airport (which was stolen from CAISA)— despite the Act's plain language and courts of this District's contrary decisions.

Defendant also argues that no alleged facts demonstrate that its trafficking was knowing and intentional, hoping to blink away its actual knowledge that it was trafficking in stolen property when Title III was passed in 1996, not to mention the presidential signing statement's observation that defendant's knowing and intentional trafficking would be "established irreversibly during the suspension period" that followed. Defendant also hopes the Court will

1

ignore plaintiff's 30-day pre-filing notice under the Act, which expressly notified defendant that plaintiff intended to sue unless it stopped trafficking the Airport. Defendant did not stop.

Finally, defendant argues that its trafficking is "incident to lawful travel," despite the plain meaning of the statutory language and the holding of every court to address this issue that this is a fact-bound, affirmative defense that a defendant must plead and prove, which is incapable of resolution on a motion to dismiss. As more fully demonstrated below, plaintiff's complaint is legally sufficient, personal jurisdiction exists, and the Motion should be denied.

## LEGAL STANDARD

Defendant's Rule 12(b)(6) motion to dismiss should be denied because the complaint alleges "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This the complaint has done.

Further, in deciding this motion, the Court "should accept all factual allegations in [the] complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)). Finally, no factual issues may be resolved on this motion to dismiss, which may determine only questions of law. *E.g.*, *Wright v. King*, 2007 WL 80844, at *1 (M.D. Fla. 2007). "In ruling on a motion to dismiss, the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Crowell v. Morgan, Stanley, Dean Witter Servs. Co., Inc.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000). Applying these rules to this motion requires that it be denied, as we demonstrate next.

## ARGUMENT

### I.     The Complaint Adequately Alleged Standing, Personal Jurisdiction, and Venue

Defendant demands that this case be dismissed on the baseless theories (1) that plaintiff purportedly lacks so-called "Article III standing," (2) that "Miami's hometown airline"[1] somehow is not subject to personal jurisdiction in Florida, and that (3) venue here is somehow

---

[1] *See* Compl. ¶ 10.

improper, because an unrelated Title III case against AA was transferred to Texas, where AA *and the plaintiff in that case* both reside. None of these arguments have any merit.

### A. The Complaint Adequately Alleged a Concrete Harm Caused by the Defendant's Trafficking in the Airport

To plead Article III standing, a plaintiff must allege facts showing that (1) "he suffered an injury in fact that is concrete, particularized, and actual or imminent," (2) the injury was "caused by the defendant," and (3) the injury would be "redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The complaint adequately alleged standing.

*First*, defendant grossly mischaracterizes plaintiff's Title III claim, arguing that "the only concrete injury Plaintiff alleges is the Cuban government's appropriation of the Airport in 1959." MTD at 3. This is absurd. The complaint expressly alleges a concrete, pocketbook injury from defendant's use of the Airport without plaintiff's permission and without compensating him. *E.g.*, Compl. ¶ 48 ("The defendants have never paid—and the Vilaboy Family has never received—any compensation or indemnification whatsoever for defendants' trafficking of the Airport.").

The Supreme Court holds that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 141 S. Ct. at 2200 (2021) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016)). The complaint expressly alleged harm from defendant's trafficking that resembles unjust enrichment. Compl. ¶¶ 24, 49. Recent decisions have noted Title III's "close relationship" to the "historical common-law analogue" of unjust enrichment. *Havana Docks Corp. v. Carnival Corp.*, 2020 WL 5517590, at *7 (S.D. Fla. 2020); *Havana Docks Corp. v. Norwegian Cruise Lines Holdings, Ltd.*, 484 F. Supp. 3d 1215 (S.D. Fla. 2020); *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 334 (5th Cir. 2021).

Defendant urges the Court to ignore these recent Title III decisions, arguing that all those courts were wrong, and cites irrelevant decisions involving other causes of action. Defendant also fails to note that Congress expressly analogized Title III to unjust enrichment in the Act itself. *See* 22 U.S.C. § 6081(8). Maybe Congress was wrong, too. According to defendant, the courts have erred in finding unjust enrichment a reasonably analogous common-law antecedent, because "their basic elements differ." MTD at 5. The improper endpoint to this illogical argument would be a nonexistent, unconstitutional limit on congressional power to create new

causes of action. Further, other common-law antecedents also exist, including, *inter alia*, tortious interference and trafficking in stolen property.

The Eleventh Circuit's decision in *Muransky v. Godiva Chocolatier, Inc.* should have ended this reductionist assault on congressional power. *See* 979 F.3d 917, 926 (11th Cir. 2020). In a case where a statutory claim did not require actual damages, the court held that "[t]he fit between a traditionally understood harm and a more recent statutory cause of action need not be perfect." *Id.* That said, in this case, which indisputably involves actual damages, the fit is very nearly perfect, as other courts of this District and Congress itself have recognized. In sum, the complaint adequately alleged "the kind of injury that 'has traditionally been regarded as providing a basis for a lawsuit.'" *Id.* (citing *Spokeo*, 136 S. Ct. at 1549).

*Second*, defendant argues that plaintiff's injury is traceable to Cuba. MTD at 3. However, traceability requires a plaintiff only to allege an injury that is "connect[ed] with the conduct about which he complains." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018). The complaint adequately alleged a monetary injury traceable to defendant's regular flights between Miami and the Airport, which are separate from the Cuban Government's confiscation of the Airport. Compl. ¶ 49 ("López Regueiro has been injured by defendants' trafficking in the Airport without his permission, and without paying any compensation to him. Defendants have been unjustly enriched from their trafficking in the Airport."). As another court in this District found in a similar case, there is a direct "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Havana Docks*, 484 F. Supp. 3d at 1230. The complaint adequately alleged that defendant's trafficking caused plaintiff's injury.

*Third*, defendant wholly fails to address the self-evident fact that a favorable judicial decision awarding plaintiff damages is intended to, and obviously will, redress defendant's failure to compensate plaintiff for trafficking in the Airport. As such, plaintiff's injury unquestionably can be "redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. In sum, defendant's "Title III standing" argument is meritless and should be rejected.

## B.    *The Complaint Adequately Alleged a Prima Facie Case of Personal Jurisdiction over Defendant, Which Stands Unrebutted*

The complaint's legally sufficient allegations of long-arm jurisdiction and minimum contacts shifted the burden to defendant to factually rebut them. *E.g.*, *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990) (applying *Venetian Salami Co.*

*v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989)). Defendant could not—and didn't attempt to—rebut the complaint's jurisdictional allegations. Because those allegations were legally sufficient, jurisdiction exists, and there was no need to make a further record. In an abundance of caution, however plaintiff submits the supporting declaration of Ana. C. Malavé, Esq., as **Exhibit A**.

*First*, although the complaint's jurisdictional allegations stand unrebutted, defendant argues that this Court lacks general jurisdiction over AA "as other courts in this District have concluded," citing cases that had ***nothing to do with personal jurisdiction***. MTD at 6. It would be nice if defendant stopped misrepresenting what courts "have concluded." The cited cases addressed subject-matter jurisdiction, removal and venue. *Cf. id.* (citing *Jakobot v. Am. Airlines, Inc.*, 2011 WL 2457915, at *1 (S.D. Fla. 2011) (after airline removed case from Broward Circuit Court, plaintiff was granted remand because diversity was lacking); *Sequeira v. Am. Airlines, Inc.*, 2010 WL 11505678, at *1 (S.D. Fla. 2010) (after airline removed case from Miami-Dade Circuit Court, plaintiff was granted leave to amend to add non-diverse defendant, and case was remanded); *Zamber v. Am. Airlines, Inc.*, 2020 WL 1445479, at *2 (S.D. Fla. 2020) (reversing magistrate's order denying transfer to Northern District of Texas based on contractual forum-selection clause). None of these decisions addressed personal jurisdiction.

The complaint adequately alleged that defendant's voluminous, ongoing, and daily business activities in Florida subject it to general jurisdiction under Fla. Stat. § 48.193(2), because of AA's "continuous and systematic" business activity here. Compl. ¶¶ 10-17. Ex. **A** at ¶¶ 3-5. "Substantial and not isolated" is Florida's equivalent terminology. *E.g.*, *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011) ("[C]ontinuous systematic business contacts [] confer general jurisdiction where a nonresident defendant's activities are extensive and pervasive, in that a significant portion of the defendant's business operations or revenue derived from established commercial relationships in the state.") (internal quotation marks omitted). The complaint's unrebutted allegations demonstrate that defendant, which loudly proclaims that it is "Miami's hometown airline" is essentially "at home" in Florida. *See* Compl. at ¶ 10, n.2; Ex. **A** at ¶¶ 3-5.

*Second*, defendant argues that "doing business" specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1) is lacking, on the notion that plaintiff's claim arises from the use of real property in Cuba and not defendant's business operations in Florida, which load and fly planes from here to there. *Cf.* MTD at 6. This is a "say anything" mischaracterization. For defendant to use the

Airport to land passengers and cargo, it must first load passengers and cargo *somewhere else*. That somewhere else is Miami, and the complaint expressly alleged that defendant traffics the Airport from Florida by regularly sending traffic to the Airport from Miami International Airport ("MIA") and vice versa. Compl. ¶¶ 6-8, 11, 13-15, 32, 40; Ex. **A** at ¶¶ 5-8. The complaint further alleged that these regular flights are part of defendant's massive Florida operations, which also feature sales to, and marketing efforts aimed at, Floridians in Florida. Compl. ¶¶ 6-8, 11, 17, 32; Ex. **A** at ¶¶ 6-8. In sum, defendant "carries on a business" in Florida from which this action arises, and defendant knowingly avails itself of this forum in order to traffic the Airport.

Thus, Plaintiff's trafficking claim "relates to" and "arises out of" defendant's business operations in Florida that transport cargo and passengers between MIA and the Airport. In *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013), a New York defendant's Florida contacts included advertising, selling, and distributing counterfeit goods in Florida, and accepting payment from Florida customers. The Eleventh Circuit found "a direct causal relationship" linking the defendant, Florida, and the plaintiff's trademark claims that "easily satisfied" the relatedness requirement for tortious-act jurisdiction under Fla. Stat. § 48.193(1)(a)(2). *Id.* at 1355, 1356. In this case, plaintiff's Title III claims arise out of defendant's Florida contacts, particularly its use of MIA as the starting and ending point for ***all flights between the U.S. and the Airport***. Thus, there is a "direct causal relationship" between defendant's use of MIA as the origin or destination for *all flights to and from* the Airport and defendant's trafficking the Airport, which "easily satisfies" the relatedness requirement for specific jurisdiction. *See id.* at 1356.[2]

---

[2] Defendant ignores the complaint's legally sufficient allegations of "tortious act" long-arm jurisdiction. Compl. ¶¶ 7, 8, 15, 32, 40. "[A] person, whether or not a citizen or resident of this state, who personally or through an agent" "commit[s] a tortious act within this state" "submits himself or herself . . . to the jurisdiction of the courts of this state . . . ." Fla. Stat. § 48.193(1)(a)(2). The complaint alleges a statutory tort committed in Florida when defendant sent traffic to the Airport from Miami and received traffic from the Airport in Miami. *E.g.*, *Koch v. Royal Wine Merchs., Ltd.*, 847 F. Supp. 2d 1370 (S.D. Fla. 2012) (Statutory tort under FDUTPA invokes tortious-act jurisdiction.). Defendant "committed a substantial aspect of the alleged tort in Florida" when it loaded, unloaded, sent, and received planes carrying cargo and passengers between MIA and the Airport, and its activities at MIA were "essential to the success of the tort" of trafficking the Airport. *Cable/Home Commc'n Corp. v. Network Prod.*, 902 F.2d 829, 857 (11th Cir. 1990) (sale of "pirate" satellite television chips) (citing *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (antitrust)); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 903 (M.D. Fla. 2007) (theft of trade secrets). Further, "a nonresident defendant commits 'a tortious act

Because the complaint adequately alleged personal jurisdiction under Florida's long-arm statute, the burden shifted to defendant to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice *See id*. at 1355, which defendant did not, and could not, demonstrate. Personal jurisdiction over defendant exists.

### C.   *Venue is Proper in this District*

Defendant demands a finding that venue is not proper in this District, "just as Chief Judge Altonaga held in a similar HBA case against American." MTD at 7. Nonsense. The only similarity between this case and *Glen v. Am. Airlines, Inc.*, No. 19-cv-23994 (S.D. Fla. 2020) (ECF 67) is the identity of the defendant. *Glen* involved two Texas residents arguing over internet sales of hotel reservations in Havana, and a highly attenuated connection to Miami. In sharp contrast, this case is brought by a Florida plaintiff against "Miami's [self-proclaimed] Hometown Airline" arising from flights between Miami and the Airport. It alleges far more than internet sales, and the elephant in the room is AA's massive flight operation in Miami, the hub for its regular flights to and from the Airport. Put simply, this case arises from trafficking in its most literal sense, and venue here is proper under 28 U.S.C. § 1391(b)(1) because defendant is subject to personal jurisdiction here, and under § 1391(b)(2) because plaintiff's claim arises from defendant's operation of flights between this District and the Airport.

## II.   **Plaintiff Possesses and Adequately Alleged a Legally Sufficient Title III Claim**

Defendant argues that plaintiff fails to satisfy four "statutory preconditions," on the notion that he failed to allege (1) ownership of his claim before March 12, 1996; (2) that he was a U.S. national when he acquired ownership of his claim; (3) that his father was a U.S. national when the Airport was confiscated; and on the notion that (4) his ownership of the Airport was "indirect," because he owns all shares of the Cuban corporation that owned the Airport. MTD at

---

within Florida when he commits an act outside the state that causes injury within Florida." *Mosseri*, 736 F.3d at 1353 (11th Cir. 2013) (trademark infringement based on sale of counterfeit goods in Florida through a website accessible in Florida). However, this case is about as simple as it gets because it alleges a statutory tort arising from defendant's sending of cargo and passengers from Miami to the Airport and vice versa. The complaint adequately alleged defendant's massive Florida operations, which go far beyond hosting websites to solicit and book traffic to and from the Airport, and include the physical act of sending all AA flights between the Airport and Miami, where thousands of employees serve and service them. This is a trafficking claim arising from air traffic. It is a paradigm of trafficking under Title III, and the Court has tortious-act jurisdiction over defendant under Fla. Stat. § 48.193(1)(a)(2).

7-13. These theories are without merit, because: (1) the complaint expressly alleged that López Regueiro acquired his claim before March 12, 1996; (2) and (3) Title III does not require a plaintiff to have been a U.S. national at any time before filing a complaint; and (4) as another court of this District has held, it is irrelevant that López Regueiro's shareholder ownership of the Airport can be characterized as "indirect," because claims under Title III may arise from direct or indirect property ownership. *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1290 (S.D. Fla. 2019). Plaintiff adequately alleged ownership of the Airport based on his ownership of all shares of stock in CAISA (the owner of record when the Airport was stolen).

*First*, the Act states that a U.S. national[3] may bring an action for trafficking property confiscated before March 12, 1996, if he acquired ownership of the claim before that date. 22 U.S.C. § 6082(a)(4)(B). Plaintiff adequately alleged two methods by which he acquired ownership of the claim before March 12, 1996: (1) he inherited the Airport through intestate succession on March 2, 1989, upon the passing of his father, José Ramón López Vilaboy, Compl. ¶ 34; and (2) he has possessed since the 1950s the bearer shares of CAISA, the Cuban corporation from whom the Airport was confiscated. *Id.* ¶ 35.

Under Florida law, plaintiff's right to inherit from his natural father vested when his father died, and his inheritance rights were governed by statutes then in effect. *In re Mooney's Estate*, 395 So. 2d 608, 609 (Fla. 5th DCA 1981). Section 732.101(2), Fla. Stat., was in effect when Vilaboy died in 1989 (and still is). It provides that "[t]he decedent's death is the event that vests the heir's right to the decedent's intestate property." Thus, regardless of any later events, plaintiff's inheritance rights vested when his father died in 1989. *E.g.*, *In re Donovan*, 2016 WL 11708149, at *2 (M.D. Fla. 2016) (debtor was his mother's heir, who was his grandmother's heir, and he had a right to his grandmother's property, even though the property was still held in his grandmother's name and a probate proceeding distributing assets to debtor had yet to occur).

---

[3] Unlike a plaintiff's acquisition of a Title III claim, which the Act says must have occurred before March 1, 1996 (which we call the "Record Date"), the Act says nothing about when a plaintiff must have become a U.S. Citizen (which it calls a "U.S. National"), only that a plaintiff must be a citizen when a claim is brought. 22 U.S.C. § 6082(a)(4)(B). Because 23 years of presidential suspension of Title III barred the courthouse doors to all claimants, the Record Date was equitably tolled until May 2, 2019, when that suspension ended. Compl. ¶ 38, n.12. Plaintiff acquired his claim long before the Record date and became a U.S. Citizen before filing this action. *Id.* ¶ 34, 35. If the Court were to read into the Act any requirement of citizenship prior to the date of filing a Title III action, that, too, would have been equitably tolled until May 2, 2019.

Defendant distorts the meaning and importance of a probate proceeding that plaintiff brought in 2010 to confirm his status as Vilaboy's heir, citing *In re Estate of Jose Ramon Lopez Vilaboy*, No. 10-0494-CP-02, slip op. (Fla. 11th Cir. Ct. Nov. 30, 2010). *See* MTD at 8 and Ex. **B** thereto. As a matter of law, plaintiff's rights as his father's heir vested on March 2, 1989, when Vilaboy died. Years later, plaintiff brought the probate action to find out if there were other heirs. Even if it his rights hadn't vested in 1989, and this had been an action to "distribute" assets, it wouldn't have been untimely, because it occurred during the suspension period, which equitably tolled the record date. But no such action was needed, and this was not an action to distribute assets, which defendant concedes "is distinct from a petition to determine beneficiaries." *Id.* at 8. Moreover, defendant's argument that plaintiff owned and owns nothing because the assets weren't distributed has no merit. Title III expressly makes contingent or future property interests actionable, and, at the very least, plaintiff owned a contingent property right *on the day his father died in 1989*.

In any event, plaintiff has had physical possession of CAISA's bearer shares since the late 1950s, which gave him ownership of CAISA at that time. Compl. ¶ 35. *See, e.g., Empire World Towers, LLC v. CDR Creances S.A.S.*, 89 So. 3d 1034, n.2 (Fla. 3d DCA 2012) (Bearer share ownership is based on physical possession of shares.). At the pleading stage, plaintiff needed only allege his possession of the shares and ownership of CAISA. *Garcia-Bengochea*, 407 F. Supp. 3d at 1288. Plaintiff did both, and more. He adequately alleged that he acquired his claim to the Airport by possessing the CAISA bearer shares and owning the company since the 1950s, and also by inheritance that vested when his father died in 1989. Compl. ¶¶ 34, 35.

*Second*, defendant argues that this case should be dismissed because plaintiff did not allege that he was a "U.S. National" when he acquired ownership of his claim. As noted above, nothing in Title III requires this. It requires only that plaintiffs be U.S. nationals when they file a complaint. It states that "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Nowhere in Title III is there any requirement for a plaintiff to have been a U.S. national at any time prior to filing, let alone before March 12, 1996.

Defendant invites the Court to erroneously read into the Act words that are not there, and violate the canons of construction that prohibit adding or subtracting words from a statute. *E.g., Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009). The

fact that plaintiff became a U.S. national in 2015 is irrelevant, because he was a U.S. national when he commenced this action, as the complaint adequately alleges. Compl. ¶ 2. Further, even if Title III said what it doesn't say, the March 12, 1996 Record Date was equitably tolled by 23 years of presidential suspension until May 2, 2019, years after plaintiff became a U.S. Citizen.

Defendant's reliance on a district court order in *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125 (S.D. Fla. 2020) is misplaced. Although that district court agreed with defendant's misreading of Title III, the Eleventh Circuit did not. In a *per curiam* affirmance, the Eleventh Circuit did not reach (and said nothing about) this supposed issue. *See Gonzalez v. Amazon.com, Inc.*, 835 F. App'x. 1011 (11th Cir. 2021). That court was unconcerned with when the plaintiff or his assignor (his mother) became citizens, and suggested that the plaintiff should have alleged equitable tolling of the Record Date *as to when the claim was acquired*. *See id.* at 1012, n.1. As noted above, if and to the extent the Record Date has any relevance on this motion, either to when plaintiff acquired his claim or became a U.S. national, the complaint expressly alleged equitable tolling from 23 years of presidential suspension. Compl. ¶ 38, n.12.

*Third*, defendant argues that only persons who were U.S. nationals when the Castro regime stole their property may sue under Title III. *See* MTD at 11-12. Apart from the fact that few such persons are still living, Congress passed Title III so that persons who *were not* U.S. nationals when their property was stolen could sue traffickers such as defendant. Persons who were U.S. nationals when their property was confiscated could have filed claims with the Foreign Claims Settlement Commission ("FCSC"), and may not sue under Title III if they failed to do so.

The Act confirms this, at 22 U.S.C. § 6082(a)(5)(A), stating that "[i]n the case of a United States national who was eligible to file a claim with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 but did not so file the claim, that United States national may not bring an action on that claim under this section." If, as defendant argues, only persons who were U.S. nationals at the time of confiscation were allowed to bring claims under Title III, then Title III would cover only certified claims and bar all others. That is plainly not the case. In fact, 22 U.S.C. § 6083(c)(1) expressly provides that "Cuban nationals who *became* United States citizens *after* their property was confiscated" are not required to certify their claims. *Id.* (emphasis added).

*Fourth*, defendant argues that at most "Plaintiff acquired a claim to ownership of his father's CAISA shares, not the Airport. In turn, CAISA owns a claim to the Airport, and the only

potential plaintiff here is CAISA itself." MTD at 12. This argument already has been rejected by another court of this District and should be rejected here. *See Garcia-Bengochea*, 407 F. Supp. 3d at 1288 (Ownership of stock in a corporation supports a Title III claim for trafficking property that was owned by the corporation.). Title III does not require López Regueiro (or his father) to have individually owned the Airport. It states that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national ***who owns the claim to such property*** for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A) (emphasis added). Further, Title III defines "property" as "any property . . . whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12). After analyzing and applying these provisions, the *Garcia-Bengochea* court correctly rejected this argument.

Plaintiff's claim is not based on current "legal" ownership of the Airport. In fact, Title III expressly negates the "Act of State" doctrine to prevent defendants from carrying on about "legal" title to property stolen by the Castro regime. 22 U.S.C. § 6082(a)(6). In any event, the confiscation of the Airport and CAISA's other assets did not cut off plaintiff's claim to CAISA's assets, including the Airport. *E.g.*, *R.I. Hosp. Tr. Co. v. Doughton*¸ 270 U.S. 69, 81 (1926) ("In the dissolution of the corporation, [the shareholder] may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the laws of its creation."). Because plaintiff owns a claim to his father's and CAISA's assets (including the Airport), he has a right to bring this claim under Title III. Defendant's argument is no different than Carnival's argument in the *Garcia-Bengochea* case, and it should be rejected here, as it was there.

## III.    Plaintiff Adequately Alleged the Trafficking Elements of His Claim

Defendant argues that operating cargo and passenger flights between Miami and the Airport was not "knowing[] and intentional[]" and was "incident to lawful travel." *See* MTD at 14-20. Defendant's theories are wrong for at least three reasons. First, Title III claims do not require bad intent, merely that trafficking not occur accidentally or unintentionally. Second, the "incident to lawful travel" exception is an affirmative defense raising factual issues that a defendant bears the burden of pleading and proving, as district courts have found in other Title III cases. Third, defendant's Motion fails to (and could not) demonstrate that its trafficking is

"necessary to the conduct of [lawful] travel" as a matter of law, because it is inapplicable to defendant's cargo operations. Plaintiff addresses each argument in turn.

### A. *Plaintiff Adequately Alleged That Defendant's Trafficking of the Airport Was "Knowing and Intentional"*

Defendant argues that the complaint failed to adequately allege that defendant "knowingly and intentionally . . . engage[d] in a commercial activity using or otherwise benefiting from confiscated property." MTD at 14. Despite defendant's fondest wishes, Title III claims do not require bad intent or any "mens rea element." *Id.* This is a strict liability cause of action, a statutory tort with limited statutory defenses. It merely requires that trafficking not occur accidentally or unintentionally, i.e., that the trafficker acted volitionally or "on purpose." The complaint adequately alleged that defendant did (and does) just that.[4]

*First*, the complaint repeatedly alleged that defendant has intentionally trafficked the Airport (and still does). *E.g.*, Compl. at 2, ¶¶ 1, 7(c), 8, 25, 36, 39-49. Moreover, the complaint contains a dedicated section that describes in detail how this defendant intentionally crafted a Cuba-operations plan to service this "profitable market[]" and engage in commercial activity by which it has used, and benefitted from trafficking, the Airport. *Id.* ¶¶ 10-17. Despite defendant's parade of adjectives, these allegations are hardly "conclusory" or "threadbare" (*cf.* MTD at 15), and are supported by copious citations to defendant's own public statements.

*Second*, "knowing and intentional" is part of the definition of "trafficking." *See* 22 U.S.C. § 6023(13)(A). Thus, when the complaint alleged that defendant has trafficked the Airport, it necessarily alleged trafficking that was "knowing and intentional." It also separately, expressly alleged that defendant's trafficking was knowing and intentional. Compl*. ¶¶ 47, 57.

*Third*, the complaint alleged that plaintiff gave defendant written notice under Title III on July 22, 2019, that it would be sued in 30 days if it continued trafficking. Compl. ¶ 45. The complaint also alleges that defendant continued to traffic after receiving this notice (*id.* ¶¶ 46, 57), which alone would dispose of defendant's "intent" argument, even if Title III required more than merely volitional conduct (it doesn't).

---

[4] Much like defendant's purported "standing" argument, which pretends that Title III concerns the Castro regime's theft of property and not defendant's trafficking of property, this argument pretends that a Title III claim requires bad intent. In actual fact, Title III requires only knowledge that the trafficked property was confiscated by the Castro regime, which defendant knew when the Act was passed. Defendant had 23 years of presidential suspension in which to complain to Congress and seek amendment or repeal of the Act. It did nothing other than traffic the Airport.

*Fourth*, as noted above, defendant was on express notice since 1996 that it faced "the prospect of lawsuits and significant liability" for trafficking that would be "established irreversibly during the suspension period" of Title III. *See* Compl. ¶¶ 23, 24, 44, n.10 (citing "President's Statement on Action on Title III of the Cuban Liberty and Democratic Solidarity (Libertad) Act of 1995," 32 Weekly Comp. Pres. Doc. 1265 (July 16, 1996) (G.P.O. authenticated version available at www.govinfo.gov/content/pkg/WCPD-1996-07-22/pdf/WCPD-1996-07-22-Pg1265.pdf)). President Clinton's signing statement demonstrated that defendant's trafficking is and has been knowing and intentional as a matter of law.

Finally, defendant continues to rely on (and distort) the lower-court order in *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. 2020), citing it for propositions that the Eleventh Circuit never reached, much less endorsed. Here, however, defendant outdoes itself, relying on that order for decisions it didn't even make. Nowhere did that order (let alone Title III) require alleging that a trafficker *knew* it was trafficking property *stolen from a U.S. citizen* (MTD at 15). Even that order required only that a complaint "sufficiently allege that the Defendants knowingly and intentionally trafficked in the property." *See Gonzalez*, 2020 WL 1169125 at *2. As demonstrated above, the complaint adequately alleged that defendant's conduct was knowing and intentional (both before and after defendant received notice it was about to be sued).

**B.** **Plaintiff Was Not Required to Allege That Defendant's Trafficking Was <u>Not</u> Incident to Lawful Travel, and This Exception is an Affirmative Defense, as Courts of this District Have Held**

Defendant argues that plaintiff failed to allege a negative—that the "incident to lawful travel exception" (the "Exception") does *not* apply. MTD at 16. This argument is based on a faulty premise—that the elements of this Title III claim include the *inapplicability* of this Exception. Two courts of this District have rejected this theory, holding that the Exception is an affirmative defense which a defendant must plead and prove. *Garcia-Bengochea*, 407 F. Supp. 3d at 1287; *Havana Docks Corp.*, 2020 WL 5517590 at *5.

"An affirmative defense 'admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters.'" *Boigris v. EWC P&T, LLC*, 2019 WL 5457072, at *2 (S.D. Fla. 2019) (quoting *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013)); *accord Losada v. Norwegian (Bah.) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (same); *VP Props. & Devs. LLLP v. Seneca Specialty Ins. Co.*, 645 F.

App'x. 912, 916 (11th Cir. 2016) (same). In other words, "[p]laintiffs are not required to negate an affirmative defense in their complaint." *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotation marks omitted)).

The burden of pleading and proving an affirmative defense rests with the "one who claims its benefits"—the defendant. *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008). Accordingly, a plaintiff is never required to allege the non-existence of an affirmative defense. *Cunningham v. Yellowstone Capital LLC*, 2016 WL 11163899, at *2 (S.D. Fla. 2016); *accord Manfred v. Bennet Law, PLLC*, 2012 WL 6102071, at *2 (S.D. Fla. 2012) (In a Telephone Consumer Protection Act ("TCPA") case, "prior express consent is an affirmative defense, not an element of the claim[,]" and a "[p]laintiff need not plead that he did not give his prior express consent."). Further, "[t]he touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008). Where a statute "exempt[s] otherwise illegal conduct by reference to a further item of proof . . . the burden of persuasion falls on the 'one who claims its benefits.'" *Meacham*, 554 U.S. at 93 (quoting *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948)).

In Title III, Congress listed the prohibited acts in its definition of "trafficking." 22 U.S.C. § 6023(13)(A). Congress then set forth exceptions for a discrete and limited class of lawful conduct, which, but for the exceptions, would be prohibited by Section 6023(13)(A). The relevant Exception here is contained in Section 6023(13)(B)(iii), and pertains to "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." As Judge King held, "[b]y using the phrase 'except as provided in subparagraph (B)' immediately before describing the conduct that constitutes trafficking, Congress expressed a clear intent to make the travel provision an *exception* to unlawful trafficking." *Garcia-Bengochea*, 407 F. Supp. 3d at 1287.

Section 6023(13)(B) "exempt[s] otherwise illegal conduct by reference to a further item of proof" (i.e., provides an affirmative defense), and "the burden of persuasion falls on the one who claims its benefits." *Meacham*, 554 U.S. at 93. Title III's "incident to lawful travel" exception is an affirmative defense that plaintiff was not required to negate, and defendant's contrary theories are wholly without merit.

14

**C.** **_Even If the Incident to Lawful Travel Exception Were Not an Affirmative Defense (It Is), it Would be Inapplicable Because Defendant is Not Engaging in Transactions and Uses of the Airport That Are Incident to Lawful Travel_**

Finally, defendant argues that this case should be dismissed because its operation of cargo and passenger flights to and from the Airport is "incident and necessary to lawful travel to Cuba." MTD at 19. Defendant's theory is wrong for at least two reasons. First, the operation of commercial cargo flights[5] or the carriage of cargo on passenger flights has absolutely nothing to do with "travel." Thus, the Exception never could apply to cargo flights or the carriage of cargo on passenger flights. Second, the general license that defendant claims authorizes its passenger flights, does not give it blanket authorization to provide such services.

_First_, defendant's carriage of cargo to and from the Airport vitiates its assertion of the Exception because carriage of cargo is neither travel nor incident to travel, much less lawful travel. Defendant argues that the Exception immunizes it, ignoring its operation of cargo flights and carriage of cargo on passenger flights to and from the Airport. MTD at 19-20. As a matter of law and logic, people travel, not cargo, and the transport of cargo never could be incident to (i.e., necessitated by) any kind of travel.[6] Thus, the Exception cannot shield defendant from liability as a matter of law, irrespective of the merits of its arguments as to passengers.

Although Title III does not define the term "travel," the ordinary dictionary definition of travel,[7] along with the regulations on which defendant relies, 31 C.F.R. §§ 515.533 and 515.572,

---

[5] On June 1, 2018, defendant announced that it had become the first US carrier to begin cargo services to Cuba. _American Airlines Becomes 1st US Carrier to Begin Cuba Cargo Service_, AM. AIRLINES CARGO, https://www.aacargo.com/about/american-becomes-first-carrier-to-begin-cuba-cargo-service.html (last accessed Dec. 10, 2019). That press release has since been scrubbed from defendant's website. _See_ Ex. **A** at ¶ 9 and Ex. G thereto; Compl. ¶¶ 15-17, n.6.

[6] "Incident to" means "closely related to; resulting from; likely to happen because of," TRANSLEGAL, https://www.translegal.com/legal-english-dictionary/incident-to (last visited Oct. 28, 2021), or "[l]iable to happen because of; resulting from," _Definition of Incident_, LEXICO, https://www.lexico.com/en/definition/incident (last visited Oct. 28, 2021). To illustrate, we note that office holders necessarily enjoy the emoluments of office, and those in lawful possession of real property necessarily possess a right to quiet enjoyment. These are situations where B is incident to A because possessing A necessarily means that one possesses B. To leave no doubt, Congress expressly added "necessary to" to the "incident to" language.

[7] Travel is "the act of traveling" or "a journey especially to a distant or unfamiliar place," _Travel_, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/travel (last visited October 28, 2021), and a "traveler" is "one who travels: such as one that goes on a

make clear that "travel" relates to the transport of passengers—people—and not cargo. *See* 31 C.F.R. § 515.572(b)(1) ("Persons subject to U.S. jurisdiction providing services . . . must retain for at least five years from the date of the transaction a certification from each customer indicating the section of this part that authorizes the *person to travel* . . . . In the case of a *customer travelling* under a specific license, the specific license number or a copy of the license must be maintained on file . . . .") (emphasis added).

In sum, defendant's carriage of cargo to and from the Airport, whether on a cargo or passenger flight, is not "travel" or "incident to lawful travel." Thus, defendant may not invoke the Exception at all, and its attempt to do so (even as an affirmative defense) should be rejected.

*Second*, even if the defendant were authorized to operate passenger flights into and out of the Airport under the Exception, it would remain a question of fact whether defendant complied with all imposed OFAC requirements, which would render this issue incapable of resolution on a motion to dismiss. Although defendant claims that its trafficking is "facially subject" to the Exception, and as such, this matter "may be dismissed under Rule 12(b)(6)" (MTD at 19), the defendant patently ignores the allegations in the complaint that contradict its claim and create a question of fact as to whether it acted in violation of OFAC regulations. Compl. ¶ 41 ("Defendants transport cargo and passengers in violation of applicable Cuban Asset Control Regulations ('CACRs') promulgated by the Office of Foreign Assets Control ('OFAC').").

In section III(B), above, plaintiff demonstrated (as two other courts of this District have held) that even if the Exception conceivably might be raised, it is a fact-bound, affirmative defense that defendant must plead and prove, and it may not be raised at this stage of the proceedings.

Defendant nonetheless argues that because OFAC granted it a license to provide travel services, all of its trafficking in the Airport has been "incident to lawful travel" and this case should be dismissed. Nonsense. While it is true that OFAC issued defendant a license to provide travel services under 31 C.F.R. § 515.572(a)(1), that license does not provide blanket authorization to do so without restrictions and conditions. Further, defendant violates this license every time it flies tourists to and from the Airport, which is expressly prohibited by the regulations that authorize its license. *See* 31 C.F.R. § 515.560(f) ("Nothing in this section

---

trip or journey." *Traveler*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/traveler (last visited October 28, 2021). These definitions make clear that a person travels, not an object such as cargo.

authorizes transactions in connection with tourist travel to Cuba."). Virtually all of defendant's trafficking involves "tourist travel," which (like its carriage of cargo) vitiates its attempt to invoke the Exception as a matter of law.

Travel to Cuba by persons subject to U.S. jurisdiction is only permitted for twelve very specific purposes. 31 C.F.R. § 515.560(a). Persons providing travel services authorized by OFAC in Section 515.572 are required to keep detailed records of any and all such transactions. 31 C.F.R. § 515.572(b). Even if the Exception's affirmative defense were available despite defendant's carriage of cargo and transport of tourists, defendant still would have to plead and prove that its license was not barred by federal law, and that it complied with each and every requirement, condition, and limitation of that license as to each and every passenger on each and every flight to and from the Airport.[8] Because this is a fact-intensive inquiry, it will remain incapable of resolution until defendant pleads the affirmative defense of the Exception in its answer and discovery is taken. *See Garcia-Bengochea*, 407 F. Supp. 3d at 1288; *Havana Docks Corp.*, 2020 WL 5517590 at *8. On this basis alone, defendant's Motion should be denied.

Finally, defendant makes two purported "due process" arguments, asserting first that it reasonably relied on government assurances that its activities were permissible, apparently because it received an OFAC license, and second, that its liability under Title III would be unconstitutionally disproportionate to the harm it caused. Both of these theories amount to "as applied" challenges to Title III that could not support dismissal on this motion, because the first would require defendant to make a factual record after the Motion is denied and discovery is had, and the second will remain unripe until damages are awarded. *E.g.*, *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1203 (2020) ("[A]ny as-applied excessiveness challenge would require this Court to make numerous assumptions about factual issues that are still premature and in dispute."); *Follman v. Vill. Squire, Inc.*, 542 F. Supp. 816, 820 (N.D. Ill. 2007) ("On a motion to dismiss we are concerned only with the sufficiency of the complaint and

---

[8] For this additional reason, defendant's conclusory assertions that the Complaint is "facially subject to the 'lawful travel' provision" and "[a]ll that matters is that OFAC authorized carrier service to Cuba" are ill-founded. *Cf.* MTD at 19. Even if: (1) defendant's carriage of cargo did not bar the Exception as a matter of law; (2) its license were not prohibited by 31 C.F.R. § 515.101; and (3) its thousands of tourist-related transactions did not vitiate that license, the question whether defendant complied with all the conditions of its license still would require discovery after denial of the Motion.

defendant's argument goes beyond the complaint, asking us to consider its interpretation of the statute." Proportionality challenge to statutory damages under FACTA, 15 U.S.C.A. § 1681n, was premature on motion to dismiss.). Because we reasonably expect defendant to attempt to induce error with a reply focused on these unripe (and baseless) theories, we briefly respond here.

As to defendant's purported "government assurances" argument, the complaint alleges that defendant has been flying charter flights to and from the Airport since 1991. Compl. ¶ 14 Defendant had to have done so pursuant to an OFAC license, which had strict limitations and prohibitions (including a prohibition on tourist travel, which defendant violated (and violates) with every flight from Miami to the Airport). *See* 31 C.F.R. § 515.101(b) ("No license or authorization contained in or issued pursuant to this part shall be deemed to authorize any transaction prohibited by any law . . . ."). Even if defendant could put on evidence (at a later stage of this case) of some "government assurances" other than a license prohibiting what it actually does, the passage of Title III in 1996 would have ended any such "assurances." *E.g.*, *Havana Docks*, 484 F. Supp. 3d at 1201) ("[T]he government's encouragement to travel to Cuba and to increase commercial relations with Cuba does not in any way absolve MSC of its obligations to also comply with federal law—namely, by not trafficking in confiscated property without the consent of a Title III claimant. Thus, MSC has failed to meet its burden to demonstrate that the application of Title III to its conduct in Cuba constitutes a due process violation."). It is well settled that "[a]n entirely prospective change in the law may disturb the relied-upon expectations of individuals, but such a change would not be deemed therefore to be violative of due process." *U.S. v. Carlton*, 512 U.S. 26, 33-34 (1994).

It is unclear whether defendant's vague assertion of "disproportionality" purports to make a "facial" or "as applied" due process challenge to Title III. *See, e.g.*, *Havana Docks*, 484 F. Supp. 3d at 1203 (rejecting facial challenge and deferring any "as applied" challenge until later proceedings). We do not assume that defendant is making a facial challenge to Title III damages, which would require it to prove that those damages *always* are unconstitutionally excessive, a burden it never could carry. *Id.* (denying motion to dismiss on this basis, stating that "it is well settled that [the] mere possibility of a constitutional application is enough to defeat a facial challenge to the statute.") (internal citations omitted). Thus, there could be no merit to any facial challenge to Title III damages, as Judge Bloom held in *Havana Docks*.

As for its unripe, as-applied challenge, defendant relies on inapposite cases involving punitive damages awarded by juries in accident cases, which courts likened to an arbitrary penalty imposed with no guideposts or predictability, citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996). In contrast, this case involves a specified range of statutory damages recoverable for a statutory tort. *E.g.*, *Sony BMG Music Ent. v. Tenenbaum*, 719 F.3d 67, 69-71 (1st Cir. 2013) (affirming purportedly excessive damages award for consumer's download of music in violation of Copyright Act) (applying *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919)). The consumer in *Tenenbaum* was subjected to a judgment for $675,000, or $22,500 for each of 30 unlawful downloads, while the train passengers in *Williams* won judgments of $75 plus costs for the railroad's overcharges of 66 cents per ticket. After those damages were awarded, the as-applied challenges became ripe, and both were rejected, almost a century apart.

Title III, like the Copyright Act in *Tenenbaum* and the train-fare overcharge statute in *Williams*, does not merely address private wrongs. It was passed "to address 'public wrongs' [which] are not required to be "confined or proportional to the plaintiff's loss or damages" and may not be assailed as a due process violation, because "the legislature may adjust its amount to the public wrong rather than the private injury." *Tenenbaum*, 719 F.3d at 70-72 (quoting *Williams*, 251 U.S. at 66-67). Title III and its statutory damages were intended by Congress to address a public wrong, trafficking in property stolen from U.S. nationals by the Cuban regime. *See* 22 U.S.C. § 6081(11). Under *Tenebaum* and *Williams*, those statutory damages need not be "proportional" to some purported "value" of a defendant's trafficking. Moreover, Title III gives traffickers such as defendant ***fair notice and clear guidance*** as to the range of recoverable damages, which was dispositively ***missing*** in *Campbell, Gore*, and every other proportionality challenge to a punitive damage award. *Tenenbaum*, 719 F.3d at 70-71; *accord Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 834 (S.D. Fla. 2011) (quoting *Williams*, 251 U.S. at 66).

Thus, even assuming that defendant's "disproportionality" argument is an as-applied challenge, it will not become ripe until damages have been awarded, as in *Tenebaum* and *Williams*. *See Havana Docks*, 484 F. Supp. 3d at 1203 ("[I]t is apparent that any as-applied excessiveness challenge would require this Court to make numerous assumptions about factual issues that are still premature and in dispute . . . . As such, [defendant's] as-applied excessiveness challenge . . . is not ripe for review at this stage"). Such challenges "are typically reviewed 'after

a jury has delivered a damages award,' because a court's review otherwise requires a number of assumptions regarding the resolution of directly disputed issues." *Id.*; *accord Harris v. Mexican Spec. Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009).

At bottom, and as noted above, defendant had 23 years of presidential suspension to go to Congress and seek amendment or repeal of Title III. It did nothing but continue trafficking, and the "remedy" it seeks lies with Congress. *E.g.*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 578 (1982) ("The remedy for any dissatisfaction with the results in particular cases [under 46 U.S.C. § 596] lies with Congress and not with this Court. Congress may amend the statute; we may not."); *Amsterdam Syndicate of U.S. v. Fuller*, 154 F.2d 342, 343 (8th Cir. 1946) ("[I]f in fact the awards compelled by the [Copyright] statute are 'unjust' and unreasonable, 'the remedy lies with Congress,' and not with the courts.") (quoting *Jewell-La Salle Realty Co. v. Buck*, 283 U.S. 202, 208 (1931)). In sum, defendant's "due process" challenge to Title III should be rejected.

## **<u>CONCLUSION</u>**

For all the good and sufficient reasons set forth above, the Court should deny defendant's Motion to Dismiss and enter an order exercising personal jurisdiction over defendant.

Dated: October 28, 2021

Respectfully submitted,

**RIVERO MESTRE LLP**
*Attorneys for Plaintiff*
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:        /s/ Andrés Rivero
ANDRÉS RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK

Florida Bar No. 715085
ANA C. MALAVE
Florida Bar No. 83839
SYLMARIE TRUJILLO
Florida Bar No. 112768

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By:  _____/s/ Manuel Vazquez_____
MANUEL VAZQUEZ
Florida Bar No. 132826

## CERTIFICATE OF SERVICE

I certify that on October 28, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By:  _____/s/ Andrés Rivero_____
ANDRÉS RIVERO