UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

    Plaintiff,

v.

AMERICAN AIRLINES, INC., *et al.*,

    Defendants.

_____ /

**DEFENDANT AMERICAN AIRLINES, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

I.   Plaintiff Lacks Article III Standing................................................................................ 1

II.  Plaintiff Does Not Adequately Allege Personal Jurisdiction............................................ 3

III. Venue Is Improper In This District................................................................................ 4

IV.  Plaintiff Does Not Satisfy THE HBA's Preconditions To Suit ........................................ 5

V.   Plaintiff Fails To Plead The Mens Rea Requirement ...................................................... 7

VI.  The Lawful-Travel Provision Compels Dismissal............................................................ 8

   A.   "Travel" Encompasses Both Passenger and Cargo Travel .................................... 8

   B.   OFAC's Regulatory Authorization For Travel And Carrier Service To Cuba Means That American's Use of The Airport Was Incident To Lawful Travel ..................................................................................................................... 9

CONCLUSION................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Atl. Container Serv., Inc. v. Coleman*,
904 F.2d 611 (11th Cir. 1990) ...................................................................................................9

*Blanco de Fernandez v. Seaboard Marine, Ltd.*,
2021 WL 4902506 (S.D. Fla. Oct. 21, 2001)............................................................................5

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
137 S. Ct. 1773 (2017)..............................................................................................................3

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................................3

*Fraser v. Smith*,
594 F.3d 842 (11th Cir. 2010) ..................................................................................................3

*Garcia-Bengochea v. Carnival Corp.*,
407 F. Supp. 3d 1281 (S.D. Fla. 2019) .....................................................................................5

*Glen v. Am. Airlines, Inc.*,
2020 WL 4464665 (N.D. Tex. Aug. 3, 2020).......................................................................7, 8

*Glen v. Club Méditerranée S.A.*,
365 F. Supp. 2d 1263 (S.D. Fla. 2005) .................................................................................1, 4

*Glen v. Club Méditerranée, S.A.*,
450 F.3d 1251 (11th Cir. 2006) ................................................................................................1

*Gonzalez v. Amazon.com, Inc.*,
2020 WL 1169125 (S.D. Fla. Mar. 11, 2020).......................................................................6, 7

*Gonzalez v. Amazon.com, Inc.*,
835 F. App'x 1011 (11th Cir. 2021) .........................................................................................6

*Hubbard v. Kelley*,
752 F. Supp. 2d 311 (W.D.N.Y. 2009).....................................................................................4

*I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd.*,
464 F. App'x 788 (11th Cir. 2012) ...........................................................................................9

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ................................................................................................4

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) (*en banc*) ................................................................................2

*Nat'l Ass'n of Mfrs. v. DOD*,
    138 S. Ct. 617 (2018) ............................................................................................................10

*Rhode Island Hospital Trust Co. v. Doughton*,
    270 U.S. 69 (1926) ..................................................................................................................5

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976) ..................................................................................................................2

*Steed v. Head*,
    219 F.3d 1298 (11th Cir. 2000) ..............................................................................................6

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*,
    253 F.3d 1332 (11th Cir. 2001) ..............................................................................................9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .......................................................................................................1, 2

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ................................................................................................2

*United States v. Ransfer*,
    749 F.3d 914 (11th Cir. 2014) ................................................................................................8

*United States v. TDC Mgmt. Corp.*,
    827 F.3d 1127 (D.C. Cir. 2016) ..............................................................................................5

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................................3

**STATUTES**

6 U.S.C. § 563 ................................................................................................................................9

22 U.S.C. § 6023(13) ..................................................................................................................7, 8

22 U.S.C. § 6082(a)(1)(A)(i)(III) ....................................................................................................2

22 U.S.C. § 6082(a)(4)(B) ...................................................................................................5, 6, 7

**OTHER AUTHORITIES**

31 C.F.R. § 515.572(a)(1) ..................................................................................................................8

31 C.F.R. § 515.572(a)(2)(i) ..........................................................................................................8, 9

Black's Law Dictionary (11th ed. 2019) ..........................................................................................10

Merriam-Webster Dictionary Online, "Travel" ................................................................................8

Plaintiff's Opposition confirms this Court should dismiss the Second Amended Complaint ("SAC") on jurisdictional grounds. The Helms-Burton Act's ("HBA") preconditions to suit provide just as straightforward a path to dismissal. The mens rea and lawful-travel provisions provide still more independent bases. Lawful travel in particular involves a pure legal question of statutory interpretation that is presented on the face of the complaint. This Court has numerous off-ramps at its disposal. Dismissal is in order.

I.   **PLAINTIFF LACKS ARTICLE III STANDING**

Plaintiff offers no response to American's key point on standing—that he does not own or possess the Airport itself, but merely holds (at most) a "claim for compensation" against the Cuban government. Dkt. 123 ("Mot.") at 4 (quoting *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263, 1269–71 (S.D. Fla. 2005)). With this point unrefuted, Plaintiff's standing argument fails as to all three elements: injury, traceability, and redressability.

*Injury.* Plaintiff first says he suffered a "pocketbook injury" from American's use of the Airport "without compensating him." Dkt. 126 ("Opp.") at 3. But Plaintiff was never entitled to compensation for American's use of the Airport because he does not own any rights to use or possess the Airport itself, only a claim to compensation against Cuba. And, even if American used the Airport, American did not use or injure Plaintiff's claim for compensation. Stated differently, if American had never used the Airport, Plaintiff would be in precisely the same position as he is now, with ownership of an alleged claim *against the Cuban government*.

For the same reasons, Plaintiff's alleged injury lacks a "close relationship" to unjust enrichment. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). To satisfy the "close relationship" test, an injury must at least meet the elements that are "essential to liability" for the common-law analog. *Id.* at 2209. And for unjust enrichment, the plaintiff's ownership interest in the underlying property is essential to liability. *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1254–55 & n.1 (11th Cir. 2006). Here, Plaintiff at most owns a claim against the Cuban government. That is different than owning the property itself. Mot. 4. As the Eleventh Circuit held in *Glen*, there is no such thing as common-law unjust enrichment based on the plaintiff's ownership of a claim to compensation against a foreign government. 450 F.3d at 1254–55 & n.1.

Plaintiff insists that the "fit" "need not be perfect" between common-law unjust enrichment and his injury. Opp. 4. But Plaintiff's HBA claim is fundamentally different than common-law unjust enrichment. Not only is he is missing the ownership element essential to liability, but the

1

basic purpose of unjust enrichment differs from an HBA claim.  Unjust enrichment is designed and tailored to deprive the defendant of its specific ill-gotten gains, whereas the HBA is designed to compensate plaintiffs for the entire amount of Cuba's appropriation.  Mot. 4–5.  In circumstances where the common-law claim differs, the Supreme Court and the Eleventh Circuit have held that plaintiffs lacked standing even where Congress conferred a statutory cause of action.  *TransUnion*, 141 S. Ct. at 2209 (no standing because publication element was "essential to liability" for the common-law analog of defamation); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931–32 (11th Cir. 2020) (*en banc*) (rejecting standing); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997–98 (11th Cir. 2020) (same).[1]  This Court should follow those cases.

*Traceability*.  Plaintiff gets traceability wrong as well.  Even assuming all his factual allegations are true, the only real-world injury Plaintiff has suffered is Cuba's appropriation of the Airport and Cuba's failure to pay compensation for it.  American's use of the Airport did not cause Cuba to appropriate the Airport without compensation, and it did not cause any monetary harm to Plaintiff because the only underlying property interest Plaintiff holds is a claim to compensation from Cuba.  That property interest remains wholly intact, unused, and uninjured.

Plaintiff relies on a sentence in *Havana Docks*, which says there is a "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property."  Opp. 4.  *Havana Docks* has things backwards.  The "causal link" must run from American's conduct to Plaintiff's real-world injury, not "from the Cuban Government's expropriation" to "a subsequent trafficker's unjust enrichment." *Id.*  In other words, the question is whether American's use of the Airport caused Plaintiff any injury, not whether Cuba's appropriation in 1959 is causally linked to American's use in 2018.  *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976) (standing requires "injury that fairly can be traced to the challenged action of the defendant").

*Redressability*.  Plaintiff is incorrect that a damages award will "redress defendant's failure to compensate plaintiff for trafficking in the Airport."  Opp. 4.  The HBA's damages award is indisputably designed to compensate plaintiffs for *Cuba's conduct*, not American's occasional use of the Airport, by awarding the full "value of the property when confiscated plus interest."  22 U.S.C. § 6082(a)(1)(A)(i)(III).  Plaintiff cannot sue American to redress injury caused by Cuba.

---

[1] In a single sentence, Plaintiff asserts without authority or reasoning that "other common-law antecedents also exist."  Opp. 4.  This naked assertion is insufficient to raise the issue.

2

## II.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE PERSONAL JURISDICTION

Plaintiff's personal jurisdiction argument is nonresponsive. He focuses entirely on Florida state law, repeatedly citing Florida statutes and legal standards. Opp. 5–6. As American's motion explained, it challenges jurisdiction under the Due Process Clause of the United States Constitution, not Florida law. Mot. 5–6. Plaintiff fails to address or even cite the legal standards under federal law, and he has therefore failed to carry his burden. *Fraser v. Smith*, 594 F.3d 842, 848 (11th Cir. 2010) ("plaintiff bears the burden of proving personal jurisdiction"). Moreover, even if the Court wants to read between the lines of Plaintiff's state-law arguments, Plaintiff has failed to allege or submit facts sufficient to establish either general or specific personal jurisdiction.

*General jurisdiction.* Plaintiff does not dispute that American is incorporated in Delaware and has its principal place of business in Texas. *See* Ex. A (Ray Decl.) (stating that American's principal place of business and corporate control center is Texas); *see also* Mot. 6 (citing three cases stating that American's principal place of business is in Texas). Nor does he dispute that a corporate defendant is virtually never "at home" for purposes of general jurisdiction other than in the states of its incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 & n.19 (2014). Here, just as in *Daimler*, the Complaint's allegations attempting to show substantial business activities in Miami are "plainly" inadequate to show that American is at home in Florida. *Id.* at 139 n.19. Plaintiff relies primarily on American's "hometown airline" slogan. Opp. 5; SAC ¶ 10. But advertising slogans do not establish jurisdiction. American is no more at home in Florida than a nationwide grocery chain is at home everywhere it calls itself "your hometown grocer." Plaintiff comes nowhere close to meeting *Daimler*'s "at home" requirement.

*Specific jurisdiction.* Next, this Court lacks specific personal jurisdiction over American for a simple reason: Plaintiff's claim "aris[es] out of" American's use of the Airport in Cuba, not American's use of the Airport in Miami. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017); *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff's claim is that American owes compensation for using the Airport in Cuba, but that claim would be exactly the same whether American flew there from anywhere in the world.

Here again, Plaintiff gets the law wrong by incorrectly asserting that American is challenging "specific jurisdiction under Fla. [law]." Opp. 5. He gets the analysis wrong, too, insisting (at 5–6) that his claim arises out of American's business in Florida because the flights to Cuba originated in Miami. Under the correct view, when a person travels from one state to another,

3

and then commits a tort in the second state, the fact that the person began the trip in the forum state is insufficient to establish personal jurisdiction. For example, if a trucker who lives in Georgia drives from Florida to Alabama and then crashes there, Florida courts would lack specific jurisdiction for a damages suit against the trucker arising from the crash in Alabama. Likewise, if an airplane flies from Miami to New York and then causes injury to the air terminal property there, Florida would lack personal jurisdiction over a suit against the airline arising from the property damage in New York. *See, e.g.*, *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 317 (W.D.N.Y. 2009) (no jurisdiction over Alabama driver who crashed in Ontario, merely because he "may have passed through New York State to gain entry to Ontario prior to the accident"). The same principle applies here. For a claim alleging injury to property in Cuba, Florida courts do not have jurisdiction over American merely because its flights departed from Miami.

At minimum, Plaintiff has cited no case refuting this argument or supporting his theory that Florida courts have jurisdiction over defendants who commit torts anywhere in the world, so long as they traveled through Florida at some point before committing the tort. In the one case he cites, Florida courts had jurisdiction over a New York defendant in a trademark infringement case because the defendant had sold the infringing goods in Florida. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). That says nothing about jurisdiction over a defendant who commits a tort in a different state or foreign country after traveling through Florida. Plaintiff has failed to meet his burden to establish jurisdiction under federal law.

### III. VENUE IS IMPROPER IN THIS DISTRICT

Rather than dismissing the case on personal jurisdiction grounds, the Court could alternatively transfer the case to the Northern District of Texas, as Judge Altonaga did in a related HBA case. *See* Order, *Glen v. Am. Airlines, Inc.*, No. 19-cv-23994 (S.D. Fla. May 13, 2020), Dkt. 67. Plaintiff says this case is unlike *Glen*, but his reasons come up short. Opp. 7. After all, Glen made the same arguments about American's "Hometown Airline" slogan and its "massive" flight operations in Miami. Pl.'s Opp. 7–8, *Glen*, No. 19-cv-23994 (S.D. Fla. April 20, 2020), Dkt. 56. It also makes no difference that Glen involved use of real property in Cuba through internet reservations, and this case involves use of real property by landing at the Airport in Cuba. In both cases, the locus of the relevant activity is not in Florida. In both cases, the proper venue is Texas.

4

### IV. PLAINTIFF DOES NOT SATISFY THE HBA'S PRECONDITIONS TO SUIT

Separately, Plaintiff has not overcome four preconditions to suit. **First,** under settled corporate law principles, Plaintiff holds (at most) a right of action based on alleged trafficking in *CAISA shares*, not *the Airport*. Mot. 12–13. Plaintiff has no response, other than to say "[t]his argument already has been rejected by another court of this District." Opp. 11 (citing *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281 (S.D. Fla. 2019)). But Plaintiff does not even try to address American's arguments demonstrating why *Garcia-Bengochea* was mistaken. Mot. 12–13. Moreover, citing *Rhode Island Hospital Trust Co. v. Doughton*, 270 U.S. 69 (1926), Plaintiff argues that as a CAISA shareholder, he has a claim to CAISA's main asset, the Airport. Opp. 11. *Doughton* in fact holds that a shareholder is "not the owner of the corporation's property." 270 U.S. at 81; *see also United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1131 (D.C. Cir. 2016) ("As a shareholder, Monts has no interest in any specific corporate asset").[2]

**Second,** Plaintiff did not "acquire[] ownership of [his] claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Plaintiff argues that his alleged inheritance vested on the date of his father's death in 1989. Opp. 8. This fails for two reasons: To start, Plaintiff was not legally an heir until 2010, when a Florida court ruled on his paternity petition, so no property rights could have transferred to him in 1989. Mot. 8–9. Further, even now, Plaintiff's probate documents show that the estate must still be divided between himself and the other alleged heir (Vilaboy's wife) in future probate proceedings. *Id.* Until those probate proceedings occur, the CAISA shares (at best) remain in Vilaboy's estate—and as "an asset of [his] Estate[], the claim to the Confiscated Property no longer belonged to [Vilaboy] or anyone else individually." *See Blanco de Fernandez v. Seaboard Marine, Ltd.*, 2021 WL 4902506, at *4–5 (S. D. Fla. Oct. 21, 2001). They have not been allocated/transferred to Plaintiff, to the other heir, or divided between the alleged heirs.

Plaintiff argues in the alternative that he acquired ownership of CAISA in "the late 1950s," because he has purportedly had "physical possession of CAISA's bearer shares" since then. Opp. 9. But Plaintiff expressly alleged in the Complaint that Vilaboy owned CAISA until he died in 1989, notwithstanding Lopez being "in physical possession of CAISA's shares" since the 1950s. SAC ¶¶ 34–35; *see also id.* ¶ 43 ("Vilaboy, through CAISA, owned the Airport prior to its

---

[2] Plaintiff argues he would have some type of residual claim to CAISA's assets minus liabilities if it were liquidated, but he alleges CAISA was confiscated, not liquidated.

5

confiscation"). Plaintiff has thus admitted that he did not own CAISA even if he possessed its shares (apparently on behalf of Vilaboy, which makes sense since Plaintiff was a minor child in the 1950s). Vilaboy cannot use his opposition to rewrite or disavow his Complaint (which he has already been allowed to amend twice).

*Third*, Plaintiff *agrees* that the HBA covers only property confiscated from persons who "became United States nationals" at some time, either before or "after their property was confiscated." Opp. 10. This concession dooms his case. That is because his Complaint pleads that the Vilaboy Family "were not U.S. citizens when the Airport was confiscated," SAC ¶ 37, and that Vilaboy himself—from whom the Airport was allegedly confiscated—was a "Cuban[]," *id.* at 2 (Introduction). Though pressed by American on this point, Mot. 11–12, Plaintiff has never claimed that Vilaboy became a United States citizen. Dismissal on this ground is thus in order. *See Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) ("*Gonzalez I*") (dismissing complaint for failing to allege certain facts, including "if [plaintiff's] grandfather was a United States citizen, and, if so, when [his] grandfather became a citizen").

*Finally*, Plaintiff *admits* that he was not a United States national as of March 12, 1996. Opp. 9-10. That bars him from bringing this lawsuit. Mot. 10. Plaintiff accuses American of "read[ing] into the [HBA] words that are not there," *id.* at 9, but the words (and context) could not be more clear: A United States national may not bring suit "unless *such national* acquires ownership of the claim *before March 12, 1996*." § 6082(a)(4)(B) (emphases added). As Judge Scola recognized, the plain text requires that "a United States citizen … already own the claim to the confiscated property on March 12, 1996." *Gonzalez I*, 2020 WL 1169125, at *2. Plaintiff dismisses *Gonzalez I* on the ground that the Eleventh Circuit "did not reach" this question in *Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011 (11th Cir. 2021), Opp. 10—but that is because *Gonzalez I* was never appealed. The Eleventh Circuit decision Plaintiff cites arose from Judge Scola's *second* order regarding an amended complaint, which did not present the United States national question. Accordingly, Plaintiff's claim is a non-starter.

Plaintiff argues that all this is beside the point because the date of March 12, 1996, was "equitably toll[ed] from 23 years of presidential suspension"—and he became a citizen within that period. Opp. 8 n.3, 10. But equitable tolling is unavailing because March 12, 1996, is not a "limitations period" for filing suit. *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). The date is only a method for determining the HBA's "[a]pplicability" to various types of claims. 22 U.S.C.

6

§ 6082(a)(4). Plaintiff cites no authority for applying equitable tolling to this type of provision. Moreover, Congress expressly provided for indefinite presidential suspension of the cause of action with no mention of tolling, and it would be improper (as Plaintiff suggests) to rewrite the statute and treat HBA claims as if Congress had never contemplated presidential suspensions.

## V. PLAINTIFF FAILS TO PLEAD THE MENS REA REQUIREMENT

Plaintiff declines to engage in statutory interpretation of the HBA's mens rea element, let alone address American's argument that the phrase "knowingly and intentionally … engage[d] in a commercial activity using or otherwise benefiting from confiscated property," 22 U.S.C. § 6023(13), means a defendant must (1) know "the property was confiscated by the Cuban government," (2) know the property "was owned by a United States citizen," *Gonzalez I*, 2020 WL 1169125, at *2, and (3) "intend that such property be the subject of their commercial behavior," *Glen v. Am. Airlines, Inc.*, 2020 WL 4464665, at *6 (N.D. Tex. Aug. 3, 2020), *vacated on other grounds* 7 F.4th 331 (5th Cir. 2021). Instead, Plaintiff bizarrely claims that the HBA creates "a strict liability cause of action." Opp. 12. The HBA's *text*—"knowingly and intentionally"—refutes this. Two courts have expressly recognized that in dismissing complaints "for failure to plead facts to show that defendant acted with the required knowledge and intent." *Glen*, 2020 WL 4464665, at *5; *Gonzalez I*, 2020 WL 1169125, at *2.

The only question, therefore, is whether the Complaint adequately alleges mens rea. It does not. Recognizing that he cannot show American knows the Airport was owned by a United States citizen (because the Airport was not confiscated from a United States citizen or Cuban national who later naturalized), Plaintiff attacks Judge Scola's holding on that score in *Gonzalez I*. In arguing that "the Eleventh Circuit never reached, much less endorsed," that holding, Plaintiff again misses that the Eleventh Circuit's decision *did not arise from Gonzalez I*. Opp. 13. And in arguing that *Gonzalez I* did not hold that a trafficker must have known "it was trafficking property *stolen from a U.S. citizen*," *id.*, Plaintiff ignores Judge Scola's square holding that the plaintiff failed to adequately plead mens rea because his allegations did not "demonstrate that the Defendants knew the property was confiscated by the Cuban government *nor that it was owned by a United States citizen*," 2020 WL 1169125, at *2 (emphasis added).

Plaintiff's cursory argument that he has implicitly alleged American knowingly and intentionally violated the HBA does not suffice. Opp. 12. Nor does it suffice that American allegedly "continued trafficking" after notice that he would sue. *Id.* Plaintiff's perfunctory and

7

self-serving letter does not claim the Airport was confiscated from a U.S. national and offers nothing to show how Plaintiff was the rightful owner of the Airport. *See* Ex. B. The letter also does not establish that American knew the property was confiscated from a U.S. national and knew it fit within the HBA. And Plaintiff attempts to prove far too much with his argument that a defendant need only know that "the trafficked property was confiscated by the Castro regime, which defendant[s] knew when the Act was passed." Opp. 12 n.4. *See Glen*, 2020 WL 4464665, at *6 ("[I]f the Act's language put all potential defendants on notice that all real property in Cuba was confiscated, Congress would have had no reason to include 'knowingly' in § 6023(13)(A).").

## VI. THE LAWFUL-TRAVEL PROVISION COMPELS DISMISSAL

Plaintiff incorrectly insists (at 13–14) that lawful travel is an affirmative defense, and that he has no obligation to allege that American's use of the Airport is not "incident to lawful travel to Cuba" under 22 U.S.C. § 6023(13)(B)(iii). Lawful travel is not an affirmative defense for the reasons stated in American's motion (at 17–18).

But more importantly, even if it were a defense, the Complaint must be dismissed because the lawful-travel provision bars Plaintiff's claim on its face. Mot. 19. At all relevant times, OFAC regulations authorized air carriers, including American, to provide carrier service to Cuba for passengers and cargo. 31 C.F.R. § 515.572(a)(1), (a)(2)(i). Plaintiff does not dispute this. American's use of the Airport was therefore incident to lawful travel as a matter of law.

In response, Plaintiff asks this Court to misinterpret the lawful-travel provision in two ways. First, he argues that "travel" should not include transportation of cargo. Second, he argues that American's flights were not "lawful" even though OFAC regulations authorized carrier service and travel to Cuba. These arguments are meritless.

### A. "Travel" Encompasses Both Passenger and Cargo Travel

Plaintiff claims that "travel" in section 6023(13)(B) means only "transport of passengers … and not cargo." Opp. 16. This is wrong for at least three reasons. *First*, transportation of both cargo and passengers fits within the ordinary meaning of "travel." Plaintiff's own dictionary defines "travel" to mean, among other things, "to move or undergo transmission from one place to another," as in "goods traveling by plane." Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/travel (last visited Nov. 3, 2021). The Eleventh Circuit has likewise recognized that cargo can "travel." *E.g.*, *United States v. Ransfer*, 749 F.3d 914, 936 (11th Cir. 2014) (businesses "regularly purchased goods that traveled in interstate

8

commerce"); *I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd.*, 464 F. App'x 788, 790 (11th Cir. 2012) ("the truck carrying the cargo traveling to the Paraguay border was hijacked"); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336 (11th Cir. 2001) ("the goods traveled in interstate commerce"); *Atl. Container Serv., Inc. v. Coleman*, 904 F.2d 611, 612 (11th Cir. 1990) (referring to the "transport" of "goods traveling from sea to land and back again"). And Congress did not limit the HBA's text to "lawful *passenger* travel," as it could have done. *See, e.g.*, 6 U.S.C. § 563 ("domestic and international passenger travel").

*Second*, the relevant OFAC regulation confirms that "lawful travel" includes lawful transportation of cargo. The provision authorizing carrier service to Cuba expressly provides that:

> Persons subject to U.S. jurisdiction are authorized to provide carrier services to, from, or within Cuba in connection with *travel* or transportation, directly or indirectly, between the United States and Cuba of persons, baggage, or *cargo* authorized pursuant to this part.

31 C.F.R. § 515.572(a)(2)(i) (emphases added). The lawful-travel provision should be understood, consistent with the regulations, to cover the "travel" of "persons," "baggage," and "cargo."

*Third*, reading "lawful travel" to include only lawful transportation of persons would lead to absurd results. It would mean, for example, that carriers could lawfully transport passengers to Cuba, but would face massive liability if they allowed passengers to bring their luggage along. *Cf.* Opp. 15 (suggesting that "carriage of cargo on passenger flights" is not covered by the lawful travel exemption). Such a reading would also upend the statutory and regulatory regime governing trade with Cuba, subjecting carriers to liability for providing services expressly authorized by the federal government.

### B. OFAC's Regulatory Authorization For Travel And Carrier Service To Cuba Means That American's Use of The Airport Was Incident To Lawful Travel

Plaintiff next argues that American's use of the Airport cannot be "incident to lawful travel" unless there is perfect compliance with "each and every" OFAC regulation "as to each and every passenger on each and every flight." Opp. 17. According to Plaintiff, if a single passenger traveled to Cuba for an impermissible purpose, such as tourism, then the entire flight is no longer incident to "lawful" travel. *Id.* And, under Plaintiff's reading, this issue of lawfulness is a question of fact that cannot be determined on a motion to dismiss. *Id.* at 16–17. This is incorrect.

Under the plain language of Title III, American's use of the Airport for passenger travel is "incident to lawful travel" so long as some passengers are traveling lawfully, even if others are (allegedly) intentionally or inadvertently traveling to Cuba for impermissible purposes. "Incident"

9

means "[d]ependent on, subordinate to, arising out of, or otherwise connected with." Black's Law Dictionary (11th ed. 2019). A use of property is therefore "incident to lawful travel" when it is "connected with" lawful travel. And when some passengers are traveling lawfully, use of an airport is connected with that lawful travel, and is by definition incident to lawful travel.

Plaintiff's reading of Title III would revise the "lawful travel" exclusion to read "not incident to any unlawful travel." In addition to improperly "rewrit[ing] the statute that Congress has enacted," *Nat'l Ass'n of Mfrs. v. DOD*, 138 S. Ct. 617, 629 (2018), this reading would again lead to absurd results. On Plaintiff's view, if a single passenger falsified his or her reasons for travel to Cuba, the flight would no longer be incident to lawful travel, and American would be liable for triple the full value of the Airport. This kind of hair-trigger liability would mean that no prudent carrier would continue to offer travel services to Cuba, effectively defeating Congress's purpose in enacting the lawful travel exclusion in the first place. Plaintiff's reading would also raise serious constitutional concerns by potentially imposing vastly disproportionate liability on air carriers who have reasonably relied on OFAC regulations authorizing carrier service to Cuba. There is no indication in the HBA or its legislative history that Congress intended these results.

Under the correct reading of "incident to lawful travel," American is entitled to dismissal. Plaintiff concedes that OFAC regulations authorized carrier service for passengers and cargo to Cuba. And he concedes that at least some passengers travel lawfully. Indeed, the only relevant allegation in the Complaint is a conclusory assertion—devoid of any factual support—that American "transport[s] cargo and passengers in violation of applicable [regulations]." SAC ¶ 41. This bare legal conclusion does not satisfy *Twombly*. Plaintiff goes further in his brief, absurdly asserting that "[v]irtually all of [American's] trafficking involves 'tourist travel.'" Opp. 17. This is not only false, but an improper factual allegation that Plaintiff did not dare include in his Complaint, consistent with Rule 11. At bottom, the Complaint lacks plausible factual allegations that American or any of its passengers ever violated any OFAC regulation. And, more importantly, even taking the allegation in the Complaint at face value, American's use of the Airport was "incident to lawful travel" as a matter of law because some passengers were traveling lawfully. This purely legal issue is ripe for decision and compels dismissal.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice or, in the alternative, dismissed for lack of jurisdiction and venue.

Date: November 4, 2021    Respectfully submitted,

/s/ Ricardo H. Puente
Ricardo H. Puente (Florida Bar No. 121533)
Email:  rpuente@jonesday.com
Christopher R.J. Pace (Florida Bar No. 721166)
Email:  crjpace@jonesday.com
**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, Florida  33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

*Attorneys for Defendant American Airlines, Inc.*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 4, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

                                                    */s/ Ricardo H. Puente*
                                                    Ricardo H. Puente