**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

    Plaintiff,

v.

AMERICAN AIRLINES, INC., *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

    **THIS CAUSE** comes before the Court on Defendant, American Airlines, Inc.'s Motion to Dismiss the Second Amended Complaint and Supporting Memorandum of Law (ECF No. 123). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Jose E. Martinez to take all necessary and proper action as required by law (ECF No. 128). Plaintiff José Ramón López Regueiro filed a Response (ECF No. 126), to which Defendant filed a Reply (ECF No. 127). Having reviewed the Motion, Response, Reply, the record, the applicable case law, and considering the arguments advanced by counsel at the February 25, 2022 hearing, the undersigned hereby **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.

**I.    BACKGROUND**

    Plaintiff's suit relates to his claim to the José Marti International Airport (the "Airport") in Cuba, which Plaintiff claims was illegally confiscated by the Cuban government in May of 1959. Plaintiff alleges that his father, José Ramón López Vilaboy ("Decedent"), purchased the Airport in 1955 through Decedent's company, Compañia de Aeropuertos Internacionales, S.A.

1

("CAISA"). Plaintiff alleges that his father modernized the Airport, extending the runway and erecting a modern terminal. When the Cuban Government confiscated the Airport in 1959, Decedent was not a U.S. citizen and was thus not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949.

Decedent died intestate in Florida in 1989. Plaintiff alleges that at his father's passing, ownership of the Airport passed to him. He alleges that he "owns a majority interest in CAISA and the Airport" (ECF No 122 at ¶ 33). He further alleges that he has been in physical possession of CAISA's shares since the late 1950s.

Plaintiff's Second Amended Complaint asserts a single claim of unlawful trafficking under the Cuban Liberty and Democratic Solidarity Act (the "Libertad Act" or "Helms-Burton Act") (ECF No. 122). Plaintiff's unlawful trafficking claim is premised on Defendants American and Latam Airlines Group, S.A. ("Latam")[1] knowingly and intentionally benefitting from the Airport by soliciting, selling, and operating, for their economic benefit, cargo and passenger services to and from the airport. Plaintiff alleges that despite years of flying passengers from Miami International Airport in Miami, Florida, to the Airport in Havana Cuba, Defendant American has never sought consent from the Vilaboy Family—defined as, before March 2, 1989, his father; and after his passing, Plaintiff himself—and without paying the Vilaboy Family compensation.

Plaintiff alleges that since 2016, Defendant's flights to the Airport originate from Miami International Airport. Plaintiff further alleges that in 2018, Defendant American launched cargo services to Cuba, via the Airport.

---

[1] This matter was administratively closed in April 2020 resulting from COVID-19 related restrictions and while the matter was closed, Defendant Latam initiated bankruptcy proceedings. Because those proceeding remained ongoing when the case was re-opened, this matter remains closed as to Latam and is proceeding on the claims against American only at this time (ECF No. 113).

Defendant American moves for dismissal on jurisdictional and merits-based grounds. Defendant argues that this Court lacks subject matter jurisdiction over the dispute because Plaintiff has no standing to bring these claims against Defendant. Defendant further challenges the Court's personal jurisdiction over it, and argues that venue is improper here. On the merits, Defendant contends that Plaintiff fails to meet the preconditions to suit, specifically, that the property was confiscated from a United States National, or that Plaintiff acquired the claim as a United States national; or that Plaintiff individually acquired the claim before 1996—or at all. Finally, Defendant contends that the Complaint is deficient for failure to allege that its use of the Airport was not attendant to lawful travel, or that Defendant's trafficking of the Airport constituted knowing and intentional acts.

While I recommend that this Court has both subject matter and personal jurisdiction over the dispute and Defendant, I recommend dismissal for Plaintiff's failure to allege that the property was confiscated from a United States national. Because it is without dispute that the property was confiscated from a Cuban national, I recommend that dismissal be with prejudice. I do not recommend that the Court reach the question of when or if Plaintiff acquired the claim, a factual dispute not appropriate for disposition on a motion to dismiss. Similarly, Defendant's affirmative defense of lawful travel, on which it has the burden of proof, should not be resolved on this motion to dismiss. However, should the Court find Plaintiff's claim may proceed, I do not recommend dismissal for failure to plead facts supporting the required *mens rea*, as Plaintiff's allegation of pre-suit notice is sufficient to support the requisite scienter.

## II.     LEGAL STANDARD

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most

favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

### A. Standing, Personal Jurisdiction, Venue

#### a. Standing

Under the Constitution, "[t]he judicial Power of the United States" extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-22. In order to establish Article III standing to bring a suit, a plaintiff has the burden to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendant contends that Plaintiff has suffered no concrete injury resulting from its use of the confiscated airport, which Defendant notes Plaintiff does not own; at most, Plaintiff owns a claim for compensation for the confiscation of the airport. But that injury cannot be redressed by Defendant and, Defendant argues, is traceable only to the conduct of the Cuban government. Contrasting this Helms-Burton claim to trespass and unjust enrichment, Defendant argues that

there is no close common law analog and thus no cognizable injury for Plaintiff to assert. In so arguing, Defendant concedes that the courts that have reached this question have rejected similar challenges. *See, e.g., Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1227–29 (S.D. Fla. 2020) (J. Bloom); *see also Glen v. American Airlines*, 7 F.4th 331, 334 (5th Cir. 2021); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 328 (D. Del. 2021) (rejecting standing challenge to Helms-Burton claim on motion to dismiss).

The Honorable Beth Bloom recently reaffirmed her holding in the *Havana Docks* cases, following exhaustive analysis and consideration of intervening cases, that "Title III claims satisfy the four elements of injury-in-fact: legally protected interest, concreteness, particularization, and imminence." *Havana Docks Corp. v. Carnival Corp.*, 19-CV-21724, 2022 WL 831160, at *79 (S.D. Fla. Mar. 21, 2022). As Judge Bloom reasoned, under the Act, "trafficking in confiscated property is an invasion of a legally protected interest, the remedy for the violation of that right is compensation from third parties for trafficking." *Id.* Plaintiff's alleged injury is concrete "because it is not receiving the benefit of its interest in the [Airport] and [American's] subsequent trafficking in the confiscated property has undermined [Plaintiff's] right to compensation for that expropriation." *Id.* Plaintiff's injuries here are "particularized because, rather than presenting a generalized harm, [Plaintiff's] injury is entirely personalized to its interest" in its claim to the Airport. *Id.* Finally, imminence is established because Plaintiff's injury is "actual and not conjectural." *Id.* The undersigned finds no reason to depart from Judge Bloom's reasoning. Accordingly, I recommend that Defendant's Motion be denied with respect to its standing challenge.

### b. Personal Jurisdiction

Defendant moves to dismiss on the basis that the Complaint does not adequately plead that the Court has personal jurisdiction over Defendant. Defendant is incorporated in Delaware and its principal place of business is in Texas; it thus contends it is not "at home" in Florida. As to specific jurisdiction, Defendant argues that there is no affiliation between the forum and the underlying controversy, because the claim arises from the use of real property in Cuba and has nothing to do with Defendant's Florida operations.

In response, Plaintiff asserts that Defendant's continuous and systematic business activity in Florida subjects it to general jurisdiction. Moreover, Plaintiff argues that for Defendant to use the Airport to land passengers and cargo, it must first load passengers and cargo in Miami, Florida——carrying on a business in Florida from which this action arises.

In its Reply, American clarifies that its personal jurisdiction challenge is predicated solely on Constitutional standards and it is not contesting that Florida's long-arm statute is satisfied. (ECF No. 127 at 3).

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

A court must conduct a two-part analysis to determine whether it has personal jurisdiction over a defendant. *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must

determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). A federal court is required to construe the state long-arm statute as would the state's supreme court. *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). Pursuant to Fla. Stat. § 48.193(2), "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "Substantial and not isolated activity" is construed by Florida courts as "involving contacts with Florida that are continuous and systematic." *Westerburger v. Bareno*, No. 16-CV-62154, 2016 WL 10587715, at *3 (S.D. Fla. Dec. 13, 2016) (internal citations omitted).

Second, if the state long-arm statute is satisfied, the court must also determine whether its exercise of jurisdiction over the defendant would exceed constitutional bounds. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1220 (11th Cir. 2009) (internal citations and quotations omitted). "A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

The first step is easily satisfied and indeed conceded by Defendant (ECF No. 127 at 3) (American "challenges jurisdiction under the Due Process Clause of the United States

7

Constitution, not Florida Law."). The Court will similarly limit its analysis to whether exercise of personal jurisdiction over Defendant would exceeds constitutional bounds.

Defendant urges this Court to find that it lacks general jurisdiction over American, "as other courts in this District have concluded." ECF No. 123 at 6, citing *Jakobot v. Am. Airlines, Inc.*, 2011 WL 2457915, at *1 (S.D. Fla. June 20, 2011); *Sequeira v. Am. Airlines, Inc.*, 2010 WL 11505678, at *1 (S.D. Fla. Apr. 15, 2010); and *Zamber v. Am. Airlines, Inc.*, 2020 WL 1445479, at *2 (S.D. Fla. Feb. 11, 2020). Defendant's reliance on the three cases cited for this proposition is problematic. Beginning with *Jakobot*, the court there addressed a motion to remand—a question of subject matter, not personal, jurisdiction—and found diversity lacking: the only question for the court there to decide was whether Plaintiff (not American) was domiciled in Florida or in Texas. *Jakobot v. Am. Airlines, Inc.*, 10-61576-CIV, 2011 WL 2457915, at *4 (S.D. Fla. June 20, 2011) (remanding to state court where subject matter jurisdiction was lacking). In *Sequeira*, the court again remanded the matter to state court over American's objection and allowed plaintiff's joinder of a defendant who would destroy diversity. *Sequeira v. Am. Airlines, Inc.*, 09-22109-CIV, 2010 WL 11505678, at *3 (S.D. Fla. Apr. 15, 2010). Finally, American offers *Zamber v. Am. Airlines, Inc.*, 16-23901-CV, 2020 WL 1445479, at *2 (S.D. Fla. Feb. 11, 2020), with the further explanation that this Court transferred that suit to the Northern District of Texas "in part because American's 'principal place of business' is in Texas" (ECF No. 123 at 6). In revising a Report and Recommendation on American's Motion to Transfer that case, this Court made absolutely no conclusion that it lacked general jurisdiction over American, but rather enforced a forum selection clause between the parties. Notably, before deciding the motion to transfer, this Court had denied American's earlier motion to dismiss, which did challenge the Court's *subject matter* jurisdiction,

but made no challenge to the Court's exercise of personal jurisdiction.[2] Not one of the three opinions even addresses personal jurisdiction, much less concludes that it was lacking with respect to American.

Defendant operates a commercial airline that regularly transports hundreds of passengers to and from Miami International Airport. The Amended Complaint alleges that Defendant has more than 13,000 employees in Miami alone, supporting payroll of over $1.8 billion annually, making it the third-largest private employer in Miami-Dade County (ECF No. 122 at ¶ 11). Defendant has an office in Miami-Dade County, Florida, and conducts business pursuant to a license issued by the Department of Transportation. Plaintiff alleges that Defendant is the most prominent airline at Miami International Airport, accounting for almost three-quarters of its total air traffic. These allegations, which are unrebutted, are sufficient for this court to find that Defendant has such minimum contacts with Florida to be considered "at home." *See, e.g.*, *Barriere v. Juluca*, 12-23510-CIV, 2014 WL 652831, at *8 (S.D. Fla. Feb. 19, 2014).

Unlike *Daimler*, Defendant's conduct in this case in fact has a connection to the state: Plaintiff alleges that at least five flights daily to the Airport originate from Miami International Airport and another five flights daily return from the Airport to Miami International Airport. Since 2018, Plaintiff alleges, Defendant has additionally offered cargo service to the Airport, that service again originating from Miami International Airport. While the trafficking alleged occurred in Cuba, the well plead allegations demonstrate a nexus to the forum that distinguishes the present case from *Daimler*. In sum, the facts alleged are sufficient for this Court to exercise personal jurisdiction over Defendant, and I recommend that Defendant's Motion be denied on this ground.

---

[2] Case No. 16-cv-23901 at ECF Nos. 65, 79.

### c. Venue

Defendant contends that for the same reasons that the Court lacks personal jurisdiction, venue is also improper. Defendant alleges that Plaintiff's trafficking claim is based on its use of the Airport in Cuba, not Florida. Defendant urges this Court to find venue for these claims is improper, "just as Chief Judge Altonaga held in a similar HBA case against American." (ECF No. 123 at 7) (citing *Glen v. Am. Airlines, Inc.*, No. 19-cv-23994 (S.D. Fla. May 13, 2020)). Defendant's reliance on *Glen* is again troubling. Chief Judge Altonaga did *not* hold in that case that venue in this District was "improper;" rather, she granted American's motion to transfer venue after balancing the competing factors of efficiency, convenience, and plaintiff's choice of forum. Defendant has demonstrated no reason that venue is improper in this District and its Motion on this ground should be denied.

Plaintiff's claim of proper venue within this District is based on 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3). Those statutes state that a civil action may be brought in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §§ 1391(b)(2) and 1391(b)(3).

Here, a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant offers and operates regular flights to the Airport from Miami, regular flights from the Airport to Miami, and openly advertises as much, properly giving rise to Plaintiff's claim. Despite Defendant's assertion that "[s]ection 1391(b)(2) is inapplicable because the event giving

rise to Plaintiff's trafficking claim is the use of the Airport in Cuba, not any activities in Miami (ECF No. 123, at 7)," Defendant's utilization of Miami as a departure point is integral to its later use of the Airport as an arrival point. Moreover, flights arriving in Miami from the Airport would not occur if Defendant did not first utilize the Airport as a departure point, which further illustrates the interconnectedness of the two airports for this particular flight plan. As a substantial part of the events or omissions giving rise to the claim did occur in the Southern District of Florida, the requirements of 28 U.S.C. § 1391(b)(2) have been satisfied.

### B. Helms-Burton Act

Defendant argues that Plaintiff has failed to satisfy the Helms-Burton Act's preconditions to suit. Specifically, Defendant contends that Plaintiff has not plausibly alleged that he acquired ownership of his claim before March 12, 1996, that Plaintiff was a U.S. national when he acquired ownership of his claim, that the Airport was confiscated from a U.S. national, and that Plaintiff has a direct claim to the confiscated property in which Defendant allegedly traffics. Plaintiff responds that he did acquire his claim prior to March 12, 1996 and that Title III of the Helms-Burton Act does not require a plaintiff to have been a U.S. national at any time before filing a complaint. Plaintiff also argues that it is irrelevant that his shareholder ownership of the Airport can be characterized as "indirect," because claims under Title III may arise from direct or indirect property ownership and cites *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1290 (S.D. Fla. 2019) as support.

### 1. The Airport was Not Confiscated from a United States National

Defendant contends that the Amended Complaint fails to allege that the property at issue was confiscated from a United States national; rather, the Airport belonged to a Cuban company, which in turn was owned by a Cuban National, Plaintiff's father. Plaintiff admits that his family

11

members "were not U.S. citizens when the Airport was confiscated" (ECF No. 122 at ¶ 37). Defendant argues that this is fatal to the claim, as the Act applies only to property confiscated from United States nationals. Plaintiff disputes that the Act is so limited and argues that no such limitation exists in the statutory language.

We begin, as we must, with the language of the statute itself. It is the stated purpose of the Libertad Act to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6). The Act is further intended to provide for continued national security "in the face of threats from the Cuban government of terrorism, theft of property from United States nationals by the Castro government." *Id.* at 6022(3). Title III creates a cause of action against a person who "traffics in property which was confiscated by the Cuban Government on or after January 1, 1959," who shall be liable to "to any United States national who owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A). Absent from this subsection defining liability for trafficking is any explicit condition that the confiscation have deprived a United States national of the property at issue.

However, it is immediately preceded in the statute by a series of findings relevant to the enactment of Title III, most significantly that "[t]he wrongful confiscation or taking of property belonging to United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development." *Id.* at § 6081(2). The Act further finds that the Cuban Government "is offering foreign investors the opportunity" to exploit property, "some of which were confiscated from United States nationals." *Id.* at § 6081(5). And critically, it is "[t]his trafficking" in confiscated property, that provides financial benefit to the current Cuban Government and "thus undermines the foreign policy of the United States … to protect the claims

of United States nationals who had property wrongfully confiscated by the Cuban Government." *Id.* at § 8061(6)(B). "To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of <u>these confiscations</u> should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.* at § 6081(11). Collectively, these findings enumerated in the Act support the creation of a private cause of action, to discourage exploitation of "<u>this property</u>," defined in the preceding phrase as that "belonging to United States nationals;" and creating a judicial remedy for United States nationals "who were the victims of <u>these confiscations</u>," that is, as immediately defined above, property confiscated from United States nationals." The plain language of the statute affords no broader construction.

The few courts to have considered this question have interpreted the Act as giving rise to a claim for property confiscated from United States nationals, only. The Eleventh Circuit considered the language and concluded that the claim is so limited. *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006). Though the claim at issue in *Glen* was not based on the Act, which was suspended when the Glen family brought the suit, the court considered whether a claim would have been actionable and concluded that it would not: the property at issue "was owned by Cuban nationals at the time of its expropriation and thus may not be the proper subject of a trafficking claim under the statute." *Id.* at 1255 n.3.

Defendant urges this Court to reject Plaintiff's attempt to recognize a private cause of action arising from the purely domestic taking of property from a Cuban national by the Cuban government under principles of international law. "[U]nder the international law of property a foreign sovereign's taking of its own nationals' property remains a domestic affair. This 'domestic takings rule' assumes that what a country does to property belonging to its own citizens within its

13

own borders is not the subject of international law." *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021) (citations omitted).

Plaintiff's opposition does not distinguish *Glen* or address Defendant's argument based on international law. Rather, Plaintiff contends that Congress passed the Act in order to give a remedy to persons who were not United States nationals when their property was taken. Plaintiff supports this contention by noting that United States nationals had an existing remedy—to file a claim with the Foreign Claims Settlement Commission. Anyone eligible to file such a claim—i.e., persons who were United States nationals at the time their property was confiscated—may not bring a claim under the Act if they failed to bring such a claim with the Commission. 22 U.S.C. § 6082(a)(5)(A). Yet, Plaintiff argues, the Act is limited to those who did bring a claim with the Commission, but rather, affords Cuban Nationals a right of action without requiring that they first bring a claim with the Commission. Plaintiff relies on the following provision for this argument:

> Nothing in this chapter or in section 514 of the International Claims Settlement Act of 1949 [22 U.S.C. 1643l], as added by subsection (b), shall be construed—
>
> (1) <u>to require or otherwise authorize the claims of Cuban nationals who became United States citizens after their property was confiscated to be included in the claims certified</u> to the Secretary of State by the Foreign Claims Settlement Commission for purposes of future negotiation and espousal of claims with a friendly government in Cuba when diplomatic relations are restored….

22 U.S.C. § 6083(c)(11) ("Rule of construction"). A restriction on the construction of the statute that notes it does not require or authorize certain claims does not recognize the existence of a cause of action by Cuban Nationals from whom the Cuban Government confiscated property. Consistent with the Eleventh Circuit's interpretation of the Act in *Glen*, it is my recommendation that Plaintiff's claim be dismissed for failure to meet this precondition to suit, that is, that the property allegedly trafficking having been confiscated from a United States National.

  **2. Plaintiff Was Not a United States National When He Acquired the Claim**

Defendant disputes that Plaintiff ever acquired a claim to the confiscated property because it was at most an asset of CAISA, not of his father, so the only thing Plaintiff could have inherited was his father's shares in CAISA. For purposes of this next argument though, Defendant contends that assuming Plaintiff did acquire the claim to the confiscated Airport upon his father's passing (which again, Defendant disputes, more on that below), Plaintiff's failure to allege that he was a United States national when he acquired the claim is fatal. Plaintiff argues that the statute does not require citizenship at the time the claim was acquired or anytime before the claim is asserted in this suit. I disagree and recommend dismissal on this additional basis.

Under the Helms-Burton Act, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action . . . unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). The Helms-Burton Act defines a "United States national" as "any United States citizen" or "any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States." 22 U.S.C. § 6023(15)(A)–(B). As such, the United States citizen filing suit must already own the interest in the confiscated property on March 12, 1996.

Plaintiff's opposition focuses on the absence of any explicit language in the statute for a requirement that a plaintiff be a United States national at the time he acquired the claim. This is not the first court to address this challenge: Hon. Robert Scola dismissed a Helms-Burton complaint "because [plaintiff] did not allege that a United States citizen owned the claim on March 12, 1996." *Gonzalez v. Amazon.com, Inc.*, 19-23988-CIV, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020). Relying on legislative history, Judge Scola observed Congress' intent to prevent relocation to the United States solely for the purpose of using this remedy and concluded that "the

15

Helms-Burton Act only applies to claim owners who are already United States citizens at the time the Act was passed on March 12, 1996." *Id.* (also citing 22 U.S.C. § 6082(a)(4)(B)).

Plaintiff disputes the value of Judge Scola's dismissal in *Gonzalez*, which was without prejudice, because on appeal the Eleventh Circuit had no occasion to affirm this particular holding; a different deficiency in the complaint led Judge Scola to dismiss with prejudice on the next motion. Recognizing that his opinion is not controlling, it is nonetheless persuasively reasoned. Consistent with *Gonzalez*, it is my recommendation that the Complaint be dismissed for this additional deficiency, specifically, that Plaintiff was not a United States national at the time he allegedly acquired the claim, or prior to the Act's passing in 1996.

3. Plaintiff Has Alleged Ownership of the Claim

Defendant makes two related attacks on Plaintiff's ownership of the claim at issue: first, that he did not acquire the claim before the act was passed, but rather, acquired it no earlier than 2010 when a state court proceeding determined his heritage to Vilaboy; and second, that even assuming his inheritance from Vilaboy, he acquired at most the shares to CAISA, but not its assets, which includes the claim to the Airport. Both arguments depend on the resolution of factual disputes, rendering them inappropriate for this motion to dismiss disposition.

First, Defendant advance Orders issued in the Florida State action to evidence that Plaintiff had not been previously determined an heir of Vilaboy and to support their contention that he accordingly could not have acquired the claim (or anything else from intestate distribution) before he was determined an heir in that proceeding. Defendant's challenge patently relies on facts outside the four-corners of the Complaint, which alleges simply that Plaintiff acquired the claim upon his father's passing intestate in 1989. If this suit proceeds, Defendant will have an opportunity to challenge the factual basis of Plaintiff's claim after discovery.

Second, Defendant relies on principles of corporate law to contest Plaintiff's direct ownership of any claim to the confiscated property because his father owned the Airport through his corporation, CAISA. Plaintiff contests the observance of corporate formalities applicable here, noting that he need only allege *indirect* ownership of the claim.

Plaintiff's father, Decedent, purchased the Airport in 1955 through his company, CAISA, and the right to Decedent's estate passed to his heirs when Decedent died intestate on March 2, 1989. *See* Fla. Stat. § 732.101 ("[a]ny part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs," and that "decedent's death is the event that vests the heirs' right to the decedent's intestate property."). Defendant urges that even if Plaintiff owns the CAISA shares, he does not own its assets. ECF No. 123 at 12 (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ("[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . .")).

In *Dole Food*, the Supreme Court applied corporate principles to the Foreign Sovereign Immunities Act because Congress had indicated that it had "corporate formalities in mind." 538 U.S. at 475. As Defendant acknowledges, at least one other court has concluded that a different approach was taken in drafting the Helms-Burton Act. *See Garcia-Bengochea*, 407 F. Supp. 3d at 1289. For example, "Congress used the broadly understood term 'claim,' combined [w]ith colloquial language such as the 'rightful owners' and 'victims of these confiscations' in the congressional findings, §§ 6081(8), (11). This counsels against using corporate law to confine Helms-Burton." *Id.* More poignantly, the court in *Garcia-Bengochea* declined to decide this dispute as a matter of law on Defendant's motion to dismiss, recognizing that plaintiff's claim of ownership "involves factual determinations that go beyond the four corners of the Complaint." *Id.* at 1288. So too American's challenge invites the Court to decide factual disputes not apparently

17

from the face of the Complaint and accordingly, I recommend denying the Motion on these bases, without prejudice to explore on summary judgment.

### C. Mens Rea and Trafficking Elements[3]

#### a. Knowing and Intentional

Defendant additionally claims that Plaintiff does not adequately allege that Defendant knowingly and intentionally trafficked in the property. In response, Plaintiff contends that his Complaint describes in detail how Defendant intentionally crafted a Cuba-operations plan to service this market and engage in commercial activity by which it has used, and benefitted from trafficking, the Airport. Plaintiff argues that "knowing and intentional" is part of the definition of "trafficking," therefore, when the Complaint alleged that Defendant trafficked the Airport, it necessarily alleged that Defendant's trafficking was knowing and intentional. Plaintiff also highlighted the written notice under Title III he provided Defendant, on July 22, 2019, that it would be sued in 30 days if it continued trafficking. Plaintiff claims that Defendant continued to traffic even after receiving this notice, again proving Defendant's intent. Finally, Plaintiff argues that Defendant was on express notice that it faced liability for trafficking since 1996.

Under the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property." 22 U.S.C. § 6023(13). Plaintiff's Second Amended Complaint alleges that Plaintiff sent Defendant a notice of its claim to the Airport and that Defendant continued to traffic in the Airport thereafter. As Judge Bloom has recently held, "trafficking in confiscated property after

---

[3] Having concluded that Plaintiff's action is barred because he cannot allege that the property was confiscated from a United States national, the Court does not need to address these additional potential bases for reaching the same outcome. *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 333 (D. Del. 2021). Cognizant that this is referred for Report and Recommendation, and that the Court has previously rejected Defendant's request to bifurcate the dismissal arguments, the undersigned considers all bases raised in the Motion.

receiving notice from the plaintiff is enough to establish scienter." *Havana Docks Corp. v. Carnival Corp.*, 2022 WL 831160, at *48 (citing *de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. July 27, 2021)).

### b. Lawful Travel

The LIBERTAD Act excludes from trafficking acts "transactions and uses of property incident to lawful travel to Cuba," § 6023(13)(B)(iii), "lawful travel" does not simply mean travel licensed and encouraged by the Executive Branch. *Havana Docks Corp.*, 2022 WL 831160, at *60. "[L]awful travel" means travel-related activities that strictly complied with the 12 categories for travel promulgated by OFAC and *excludes* tourism. *Id.* at 62. Defendant contends that Plaintiff's failure to allege that Defendant's use of the Airport was not incident to lawful travel warrants dismissal.

The lawful travel exception is an affirmative defense that Defendant bears the burden of proving. *See id.* at 62 (citing *Garcia-Bengochea*, 407 F. Supp. 3d at 1286). Plaintiff's Amended Complaint does not allege facts from which Defendant's affirmative defense may be shown, and accordingly, the Court should not entertain Defendant's argument on its affirmative defense on this Motion to Dismiss.

## IV.   RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Dismiss be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE** and **ORDERED** in chambers at Miami, Florida this 20th day of May, 2022.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE