UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

 Plaintiff,

 v.

AMERICAN AIRLINES, INC., *et al.*,

 Defendants.

                 /

**DEFENDANT AMERICAN AIRLINES, INC.'S
OBJECTIONS TO THE REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## INTRODUCTION

Magistrate Judge Louis correctly recommends dismissing Plaintiff's Second Amended Complaint (Complaint or SAC). *See* ECF No. 174 (R&R) at 1, 19. Plaintiff's action under the Helms-Burton Act (HBA) cannot proceed because the property Plaintiff alleges his father owned—the José Marti International Airport—was not "confiscated from a United States National," as required by the HBA. *Id.* at 14. Plaintiff, moreover, "was not a United States national at the time he allegedly acquired the claim [to the Airport], or prior to the Act's pass[age] in 1996." *Id.* at 16. As Judge Louis rightly concluded, each flaw independently warrants dismissal with prejudice.

American Airlines, Inc. (American) submits these objections, however, because there are three additional and independent bases requiring dismissal of the Complaint.

*First*, under basic principles of corporate law, Plaintiff does not have a claim to the Airport. At most, he has a claim to shares in a Cuban company that owned the Airport. As a result, his lawsuit for trafficking *of the Airport* is not viable under the HBA.

*Second*, the Court lacks general jurisdiction over American because American is not "at home" in Florida. It is a Delaware corporation with its principal place of business in Texas. And specific personal jurisdiction fails because the lawsuit arises from the use of real property in Cuba.

*Third*, Plaintiff lacks Article III standing to sue. He has suffered no injury to any interests in the corporate shares he claims to hold. He has suffered no injury from activities at the Airport because, even if his father had owned the Airport, Cuba's taking on Cuban soil of Cuban property from a Cuban national extinguished all private property interests in the Airport. And the Supreme Court has held that Congress cannot simply legislate injuries into existence, which is what the HBA purports to do if it is interpreted to apply to this Plaintiff. For these additional reasons, the Court should grant American's motion to dismiss the Complaint.

**ARGUMENT**

**I.     PLAINTIFF LACKS A CLAIM TO THE AIRPORT**

To start, an HBA plaintiff must allege that the defendant "traffics in property which was confiscated by the Cuban Government" and that the plaintiff "owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A). Here, Plaintiff has not plausibly alleged that he owns a claim to the confiscated property in which American allegedly traffics—*the Airport*. As Judge Louis recognized, Plaintiff's father "purchased the Airport in 1955 through his company, CAISA." R&R at 17; *see* SAC ¶¶ 28, 43. Under basic principles of corporate law, "[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (citing 1 W. Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 31 (rev. ed. 1999)); *see also* J. Cox & T. Hazen, Treatise on the Law of Corporations § 7:2 (3d ed.). Taking Plaintiff's factual allegation as true, this means CAISA, not Plaintiff's father, owned the Airport—and thus, Plaintiff at best acquired a claim to ownership of his father's CAISA shares, not the Airport. *See* SAC ¶ 35 (claiming that Plaintiff has "physical possession of CAISA's shares"). CAISA, in turn, owns a claim to the Airport, which means the only potential plaintiff here is *CAISA itself*.

Judge Louis declined to reach that conclusion for two mistaken reasons. *First*, Judge Louis believed that, unlike with the Foreign Sovereign Immunities Act (FSIA), Congress did not "draft[] the [HBA]" with corporate formalities in mind. R&R at 17. For support, Judge Louis cited the fact that "Congress used the broadly understood term 'claim,' combined [w]ith colloquial language such as the 'rightful owners' and 'victims of these confiscations' in the congressional findings." *Id.* (quoting *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1289 (S.D. Fla. 2019)). But that language does not speak either way to the corporate-formalities issue. More importantly, Judge Louis did not address the "ample evidence" showing that Congress *did* draft the HBA with

3

formalities in mind. *See* ECF No. 123 (MTD) at 12 (discussing six examples). Among the many relevant examples, Congress incorporated the very FSIA provision that, in the Supreme Court's words, "contains 'indicia that Congress had corporate formalities in mind.'" *See id.* (quoting *Dole Food Co.*, 538 U.S. at 474). Congress also expressly included corporations and other legal entities in its definitions of "person," "foreign national" and "United States national." 22 U.S.C. § 6023(8), (11), (15). In light of that extensive evidence, there can be no doubt that corporate formalities were on Congress's mind when drafting the HBA.

Moreover, given the restrictions Congress imposed to limit potential HBA plaintiffs (such as the U.S. national requirement and the bar on post-1996 transfers), it would make little sense for Congress to enlarge the plaintiff class by allowing each shareholder of a corporation to sue for any claim owned by the corporation. Such a step would also create at least two additional problems: It would marginalize Congress's decision to treat corporations outside the U.S. as foreign nationals ineligible to bring an HBA claim (which could be avoided with just one U.S. shareholder taking over the foreign corporation's claim). *See* 22 U.S.C. §§ 6023(8) (defining foreign national). And it would allow plaintiffs to bypass Congress's election-of-remedies provision (by one shareholder suing for compensation under the HBA and another shareholder suing for compensation under other law). *See id.* § 6082(f)(1) (requiring election of remedies).

*Second*, Judge Louis held that "American's challenge invites the Court to decide factual disputes not apparent[] from the face of the Complaint." R&R at 17–18. Yet Judge Louis did not identify any factual disputes—because none exist. As the citations above illustrate, American's corporate-formalities argument is based solely on legal principles applied to Plaintiff's own allegations that CAISA owned the Airport and Plaintiff's father controlled CAISA. SAC ¶ 28 (alleging purchase of the Airport "through his company"); *id.* ¶ 43 (alleging ownership of the

Airport "through CAISA"); *see also id.* ¶ 35 (alleging "physical possession of CAISA's shares"). These allegations make clear that Plaintiff's lawsuit depends on his alleged ownership of *CAISA shares*, not direct ownership of *the Airport*. And that is insufficient to state a claim as a matter of law under § 6082(a)(1)(A). No factual issues, therefore, prevent the Court from reaching the merits of this issue.

### II. THIS COURT LACKS PERSONAL JURISDICTION OVER AMERICAN

Dismissal is also warranted because this Court lacks general personal jurisdiction over American. As relevant here, a federal court may exercise general jurisdiction over a defendant only when the defendant is "at home" in the state in which the court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In *Daimler*, the Supreme Court made clear that a corporate defendant is virtually never "at home" other than in the states of (1) its incorporation and (2) "principal place of business." *Id.*; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (rejecting general jurisdiction over a company that maintained "over 2,000 miles of railroad track and more than 2,000 employees" in the forum state, and explaining that a "corporation that operates in many places can scarcely be deemed at home in all of them"). Under *Daimler* and *BNSF*, "even 'substantial, continuous, and systematic' business is insufficient to make a company 'at home' in the state." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018).

This is an easy rule to apply here. It is undisputed that American is incorporated in Delaware and its principal place of business is in Texas, and Plaintiff has at most alleged that American conducted substantial business activities in Florida. *See* R&R at 6. Nevertheless, citing a single unpublished district court decision, Judge Louis concluded that the Court has general jurisdiction over American simply because it has a substantial presence in Miami. *Id.* at 9 (citing *Barriere v. Juluca*, 2014 WL 652831, at *8 (S.D. Fla. Feb. 19, 2014)).

Judge Louis's reliance on *Barriere* is misplaced. Numerous courts have recognized that *Barriere* is fundamentally inconsistent with *Daimler* and its progeny. *See, e.g.*, *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1349 (S.D. Fla. 2017) ("[T]his Court disagrees with the ruling in *Barriere*, as it is inconsistent with *Daimler*."); *Waite v. All Acquisition Corp.*, 2016 WL 2346768, at *5 (S.D. Fla. Mar. 10, 2016) (granting reconsideration after initially finding general jurisdiction, because "this Court failed to originally recognize … that *Barriere* was decided without the benefit of the Eleventh Circuit's interpretation of *Daimler*"), *aff'd*, 901 F.3d 1307; *Gonzales v. Seadrill Ams., Inc.*, 2014 WL 2932241, at *3 n.4 (S.D. Tex. June 27, 2014) (*Barriere* is an "outlier … at odds with other courts' application of ... *Daimler* in similar situations"). In the words of one court that declined to follow *Barriere*, "[i]f the maintenance of 2,000 miles of railroad track and employment of more than 2,000 workers in the forum state cannot establish general jurisdiction as the Supreme Court held in *BNSF Railway*, then the business allegedly conducted by [defendant] … in this case cannot either." *Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 916 (N.D. Ill. 2017).

It would be flatly inconsistent with *Daimler* and *BNSF* (which was decided three years after *Barriere*) to hold that American is subject to general jurisdiction in Florida based merely on Plaintiff's allegations of a substantial business activity in Florida. This Court should reject Judge Louis's recommendation on the issue of general jurisdiction.

Judge Louis further asserted that, "[u]nlike [in] *Daimler*, [American's] conduct in this case in fact has a connection to the state." R&R at 9. But tying a defendant's in-state conduct to the facts of a specific case is relevant only to *specific* jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). And if Judge Louis meant that Plaintiff's claim "arise[s] out of or relate[s] to [American's] contacts" with Florida for purposes of specific

jurisdiction, that is incorrect. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (quoting *Bristol-Myers*, 137 S. Ct. at 1780). Plaintiff's claim—by his own telling—arises from the use of real property in Cuba. *See* MTD at 6–7. The alleged tort in this case (the unlawful trafficking) was directly and solely aimed at the Airport in Cuba, not at the Miami International Airport in Florida. *See id.* And no airline would reasonably anticipate being haled into Florida court for alleged torts committed in Cuba merely because its planes departed from Florida. Otherwise, every airline would be subject to specific jurisdiction in every state from which its planes depart, even in suits brought by non-passengers for injuries occurring solely at the destination airport. *See Walden v. Fiore*, 571 U.S. 277, 288–89 (2014) (rejecting argument that petitioner was subject to personal jurisdiction in Nevada for his actions at a Georgia airport "simply because he allegedly directed his conduct at plaintiffs whom he knew" were traveling to Nevada). Indeed, under the theory Judge Louis accepted, a person driving from New York City to Miami and who was in a car accident in Fort Lauderdale would be subject to specific jurisdiction not only in Florida, but in New York and possibly New Jersey, Virginia, and the Carolinas. That cannot be right. For these reasons, the Court lacks specific jurisdiction over American as well.

### III.  PLAINTIFF LACKS ARTICLE III STANDING

Finally, dismissal is in order because Plaintiff lacks standing to sue. To plead Article III standing, a plaintiff must allege facts showing that (i) "he suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) the injury was "caused by the defendant"; and (iii) the injury would be "redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Here, Judge Louis found that Plaintiff is suffering a concrete injury "because [he] is not receiving the benefit of [his] interest in the [Airport,] and [American's] subsequent trafficking in the [Airport] has undermined [Plaintiff's] right to compensation for that expropriation." R&R at 5 (quoting *Havana Docks Corp. v. Carnival Corp.*, 2022 WL 831160, at *79 (S.D. Fla. Mar. 21,

2022)). Judge Louis also concluded that this alleged harm was "actual … not conjectural," and "entirely personalized" to Plaintiff. *Id.* (quoting *Havana Docks Corp.*, 2022 WL 831160, at *79). Respectfully, these findings are flawed for at least three reasons.

*First*, contrary to Judge Louis's reasoning, Plaintiff has no property interest in the Airport, and he is therefore suffering no injury from alleged trafficking in the Airport. As explained above, Plaintiff (at most) owns shares in CAISA, not the Airport. *See supra* Section I. There is no allegation that American has ever held or injured *the shares*. To the contrary, Plaintiff claims to have had "physical possession of CAISA's shares since the late 1950s." R&R at 2. Nor is there any allegation that American somehow trafficked in Plaintiff's claim to compensation for the loss of the CAISA shares, which is the precise property right Plaintiff alleges he owns. *See Shanghai Power Co. v. United States*, 4 Cl. Ct. 237, 241 (1983), *aff'd*, 765 F.2d 159 (explaining that a person whose property has been confiscated by a foreign government owns "a claim for compensation," as distinguished from ownership of the confiscated "assets" themselves). Plaintiff's alleged property interest in the CAISA shares, or (more precisely) a claim to compensation for the CAISA shares, is thus entirely unimpaired by American. Those interests would remain exactly the same whether American flew a single plane to the Airport or not. There is simply no cognizable Article III injury here, let alone one "caused by [American]." *TransUnion*, 141 S. Ct. at 2203.

*Second*, even if Plaintiff or his father had directly owned the Airport, all private interest in the Airport and the CAISA shares was extinguished in 1959 when Cuba appropriated that property from Plaintiff's father, who was a Cuban national. Plaintiff can point to no source of law—U.S. law or international law—that bestowed upon Plaintiff or his Cuban father ownership of a claim to compensation or other property interest in the Airport or the CAISA shares after the property was appropriated in 1959.

8

There certainly was no U.S. law in 1959 that prohibited Cuba's appropriation of Cuban property from a Cuban national in Cuba. And the HBA does not solve Plaintiff's problem. Not only was it enacted decades after the fact (1996), but even then it does not purport to create claims to confiscated property where none existed before. It instead merely provides a trafficking cause of action—a remedy—for a plaintiff who *already* "owns the claim to [confiscated] property." *See* § 6082(a)(1)(A).

Nor does any principle of international law give Plaintiff any claim to compensation or other property interest in the Airport or CAISA shares. Indeed, under the "domestic takings rule," "what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021). This means that Cuba's alleged appropriation of the Airport in Cuba from Plaintiff's father—who "admit[tedly]" was a Cuban national, R&R at 11–12—was valid and effective insofar as international law is concerned. That is one reason why property "owned by Cuban nationals at the time of its expropriation … may not be the proper subject of a trafficking claim" under the HBA. *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 n.3 (11th Cir. 2006). The upshot is that Plaintiff lacks any cognizable property interest in the Airport or the CAISA shares. And he cannot have suffered any Article III injury from trafficking in a non-existent property interest.

*Third*, the only possible injury-in-fact flows from Cuba's appropriation of the Airport in 1959, not American's use of the Airport in 2016, which has no real-world effect on Plaintiff. Plaintiff would "be[] no better off [if] [American] refrained from [landing planes at the Airport]." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). This is a textbook example of no Article III injury caused by the Defendant.

To be sure, the Supreme Court has recognized that Congress may, by statute, "grant[] a person a statutory right and purport[] to authorize that person to sue to vindicate that right." *TransUnion*, 141 S. Ct. at 2204–05. But Congress "may not simply enact an injury into existence." *Id.* at 2205. Instead, the injury must bear a "close relationship" to a "historical or common-law analogue." *Id.* at 2204. And that is the flaw here: There is no historical precedent for the HBA's novel attempt to authorize suits against private parties for commercial use of real property appropriated decades ago by a foreign government. There are no common-law analogues because all potentially similar causes of action require ownership or possessory interests in the underlying property—which Plaintiff undisputedly lacks: trespass and conversion depend on a plaintiff's possessory interest, and unjust enrichment depends on a plaintiff's ownership interest.[1] *See* MTD at 4–5; *Glen*, 450 F.3d at 1254 & n.1 (trespass and conversion claims as to Cuban property are predicated on continued ownership of that property). Because it lacks a "close relationship" to historical and common-law analogues, therefore, the HBA cannot manufacture Article III standing for Plaintiff.

## CONCLUSION

The Court should grant American's motion to dismiss the Complaint both for the reasons stated in Judge Louis's Report and for the foregoing alternative reasons.

---

[1] *Havana Docks* never undertook the "close relationship" analysis that the Supreme Court requires. *See* 2022 WL 831160, at *80. And although the Fifth Circuit acknowledged the issue in *Glen v. American Airlines, Inc.*, 7 F.4th 331 (5th Cir. 2021), the court believed that the HBA's cause of action for trafficking "bears a close relationship to unjust enrichment, which has indisputable common-law roots." *Id.* at 334. That conclusion ignores that unjust enrichment depends on a plaintiff's ownership of the property, which is absent in this case. And it ignores that the purpose and measure of the HBA remedy is entirely divorced from the purpose and measure of unjust enrichment damages. Unjust enrichment strips a defendant of ill-gotten gains (like profit from flights); the HBA, by contrast, claims to deliver to a plaintiff not ill-gotten gains, but the greatest calculable value of the property itself. *See* MTD at 4–5. This is nothing like unjust enrichment.

Date: June 3, 2022                                   Respectfully submitted,

                                                  */s/ Ricardo H. Puente*
Ricardo H. Puente (Florida Bar No. 121533)
Email:  rpuente@jonesday.com
**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, Florida  33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

Christopher R. J. Pace (Florida Bar No. 72116)
Email: CRJPace@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl St.
Dallas, TX 75201
Telephone: (214) 453-6565

*Attorneys for Defendant American Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 3, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Ricardo H. Puente*
Ricardo H. Puente