**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-23965-CIV-MARTINEZ-LOUIS

JOSÉ RAMÓN LÓPEZ REGUEIRO,

      plaintiff,

v.

AMERICAN AIRLINES INC. et al.,

      defendants.

_____/


**PLAINTIFF JOSÉ RAMÓN LÓPEZ REGUEIRO'S OBJECTION TO
THE REPORT AND RECOMMENDATION REGARDING AMERICAN AIRLINES, INC.'S
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.    TITLE III PROVIDES A CAUSE OF ACTION FOR CUBAN NATIONALS WHO LATER
BECAME UNITED STATES CITIZENS .............................................................................3

   A. Certified v. Non-Certified Claims ...................................................................................3

   B. The R&R's Reliance on *Glen* is Misplaced and Does Not Support Dismissal .............8

   C. Title III's "Findings" Section Does Not Support Dismissal .........................................9

   D. AA's International Law Arguments are Inapplicable ...................................................12

II.   TITLE III DOES NOT REQUIRE A PLAINTIFF TO HAVE BEEN A UNITED STATES
NATIONAL WHEN THE CLAIM WAS ACQUIRED, ONLY WHEN A TITLE III ACTION
IS FILED .............................................................................................................................14

CONCLUSION ..............................................................................................................................16

## TABLE OF AUTHORITIES

### Cases

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,

    789 F.3d 1206 (11th Cir. 2015) ........................................................................7

*De Fernandez v. Seabord Marine, Ltd.*,

    2021 WL 3173213 (S.D. Fla. 2021) ................................................................8

*Del Valle v. Trivago GMBH*,

    No. 20-12407 (11th Cir. argued Oct. 4, 2021) ...............................................11

*Exxon Mobil Corp. v. Corporacion Cimex S.A.*,

    2021 WL4709566 (D.D.C. 2021) ..................................................................13

*Fed. Republic of Germany v. Philipp*,

    141 S. Ct. 703 (2021) ....................................................................................12

*Frabutt v. New York, Chicago & St. Louis R.R. Co.*,

    84 F. Supp. 460 (W.D. Pa. 1949) ..................................................................15

*Friends of Everglades v. S. Fla. Water Mgmt. Dist.*,

    570 F.3d 1210 (11th Cir. 2009) .....................................................................14

*Garcia-Bengochea v. Carnival Corp.*,

    407 F. Supp. 3d 1281 (S.D. Fla. 2019) ...........................................................7

*Glen v. American Airlines Inc.*,

    2020 WL 4464665 (N.D. Tex. 2020) ..............................................................8

*Glen v. American Airlines Inc.*,

    7 F. 4th 331 (5th Cir. 2021) ...........................................................................12

*Glen v. Club Mediterranee, S.A.*,

    450 F.3d 1251 (11th Cir. 2006) ...............................................................3,8,9,12

*Glen v. Trip Advisor LLC*,

    529 F. Supp. 3d 316 (D. Del. 2021) ................................................................8

*Gonzalez v. Amazon.com, Inc.*,

    835 F. App'x. 1011, 1012 (11th Cir. 2021) ...................................................14

*Green v. Bock Laundry Mach. Co.*,

    490 U.S. 504 (1989)..............................................................................................................7

*Gretz v. Florida Unemployment Appeals Comm'n*,

    572 So.2d 1384 (Fla. 1991)..................................................................................................6

*Hanger v. Abbott*,

    73 U.S. 532 (1867)..........................................................................................................15,16

*Hollingsworth v. Zuchowski*,

    437 F. Supp. 3d 1231 (S.D. Fla. 2020) ...............................................................................7

*In re Coffman*,

    766 F.3d 1246 (11th Cir. 2014) ...........................................................................................7

*Machules v. Dep't of Admin.*,

    523 So. 2d 1132 (Fla. 1988)...............................................................................................15

*Montanile v. Bd. of Trustees of the Nat'l Elevator Indus. Health Benefit Plan*,

    577 U.S. 136 (2016)............................................................................................................9

*Osbourne v. U.S.*,

    164 F.2d 767 (2d Cir. 1947)..............................................................................................15

*Romano v. John Hancock Life Ins. Co. (USA)*,

    2021 WL 949939 (S.D. Fla. 2021) ..................................................................................3,9

*Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*,

    2021 WL 6065758  (S.D.N.Y. Dec. 22, 2021) ...............................................................8,13

*Unruh v. State*,

    669 So. 2d 242 (Fla. 1996)...............................................................................................6,7

**<u>Other Authorities</u>**

22 U.S.C. § 1643..................................................................................................................4,7,10

22 U.S.C. § 6081....................................................................................................................9,10

22 U.S.C. § 6082.........................................................................................................4,5,6,11,12,14

22 U.S.C. § 6083...................................................................................................................6, 11

## INTRODUCTION

The Report and Recommendation (the "R&R") on defendant's motion to dismiss erroneously relies on unfounded grounds for dismissal and contains fundamental errors of statutory construction. Its recommendation of dismissal with prejudice offends the law and logic on which it relies. The rationale of the R&R would render this cause of action a dead letter for virtually all of the persons that Congress intended to benefit from it.

Plaintiff José Ramón López Regueiro brought this action under Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, et seq. (the "Act"), to recover damages from defendant American Airlines, Inc. ("AA") for the airline's unlawful trafficking in the José Martí International Airport in Havana, Cuba (the "Airport"). In its Motion to Dismiss [ECF 123], defendant AA demanded dismissal of plaintiff's amended complaint [ECF 122] (the "complaint" or "Compl."), *inter alia*, on the theory that plaintiff lacked so-called "Article III standing." In addition to this ill-conceived argument, AA mystifyingly argued that the complaint failed to state a *prima facie* case for personal jurisdiction (over Miami's self-described "Hometown Airline"), and that even venue in this Court was improper. None of these arguments had merit.

But defendant didn't stop there. Plaintiff López Regueiro was assailed for supposedly having failed to satisfy imaginary "preconditions" to his Title III claim. Defendant argued that the Airport had to have been confiscated from a United States national, and that López Regueiro had to have been a United States national when he acquired the claim. The R&R erroneously endorsed these non-existent preconditions.[1]

---

[1] To be fair, the R&R correctly rejected most of AA's arguments, including its assertions that Article III standing and personal jurisdiction were lacking, and that López Regueiro had failed to allege that he acquired the claim before March 12, 1996 (which he did), that AA's trafficking was knowing and intentional (which he did), and that that AA's trafficking was not incident to

On May 20, 2022, Magistrate Judge Louis issued the R&R [ECF 174] on defendant's motion to dismiss. The R&R found that subject matter and personal jurisdiction exist, and that venue here is proper. The R&R also found that López Regueiro adequately alleged ownership of his claim and that AA's trafficking was knowing and intentional under the statute, which does not require any sort of "bad intent," only a trafficker's awareness that it is trafficking property that was confiscated by the communist Castro regime. Finally, the R&R agreed with all courts that have examined Title III's "incident to lawful travel" language, holding that this is an affirmative defense which cannot be resolved on a motion to dismiss.

Although the R&R rejected most of defendant's arguments, it recommended dismissal with prejudice on two grounds that cannot be found within the Act: (1) a purported requirement that trafficked property was confiscated from a United States national; and (2) a purported requirement that a claimant have been a United States national when the claim was acquired and before March 12, 1996 (which we call the "Record Date," because Title III's effective date was August 1, 1996). *See* R&R at 3.

None of these recommended grounds for dismissal can be found in the Act, and the R&R's erroneous interpretation of the Act is unsupported by law or logic. Plaintiff López Regueiro alleged a legally sufficient claim under Title III, and a proper reading of the Act compels sustaining his complaint.

lawful travel (which he did, even though this is quite obviously an affirmative defense, as other courts of this district have held).

2

<u>**ARGUMENT**</u>

**I.    TITLE III PROVIDES A CAUSE OF ACTION FOR CUBAN NATIONALS WHO LATER BECAME UNITED STATES CITIZENS**

The R&R correctly notes that Title III's subsection defining liability for trafficking is devoid of "any explicit condition that the confiscation have deprived a United States national of the property at issue." R&R at 12. However, the R&R resorts to Title III's "findings" section and *dicta* from a pre-Act decision in *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006), to reach a contradictory conclusion. If Congress intended for U.S. citizenship at the time of confiscation to be a requirement to suit, it certainly knew how to say so—and it didn't.

Moreover, if this requirement had existed it wouldn't have been hidden in the "findings" section of the Act. The R&R's reliance in *Glen*'s footnote is misplaced because the R&R's purported citizenship requirement was never litigated, challenged, or appealed in *Glen*, and couldn't have been, because that case did not arise under the Act. The Eleventh Circuit's footnote cannot fairly be read to resolve an issue it did not consider (and could not have considered), much less to apply as binding precedent in a Title III action. *Romano v. John Hancock Life Ins. Co. (USA)*, 2021 WL 949939, at *4 (S.D. Fla. 2021).

**A.    Certified v. Non-Certified Claims**

Title III does not require a plaintiff to have been a United States national when the Castro regime stole the plaintiff's property. Apart from the fact that few such persons are still living, Congress passed Title III so that persons who ***were not*** United States nationals when their property was stolen also could sue traffickers. Such claims are referred to herein as non-certified claims, and are distinct from the claims of those who were United States nationals at the time of confiscation. The latter were able to certify their claims with the Foreign Claims Settlement

3

Commission of the United States ("FCSC"). For good reason, Title III contains separate provisions for such claims, which are referred to herein as certifiable claims.

### *Certifiable Claims*

Title V of the International Claims Settlement Act of 1949 created a procedure for United States citizens who were the victims of confiscations by the Cuban regime to file and certify claims with the FCSC. 22 U.S.C. §1643 *et seq*. The FCSC "shall receive and determine . . . the amount and validity of claims *by nationals of the United States* against the Government of Cuba . . . for losses resulting from the nationalization, expropriation, intervention, or other taking of, or special measures directed against, property including any rights or interests therein owned wholly or partially, directly or indirectly *at the time by nationals of the United States* . . . ." 22 U.S.C. §1643(c) (emphasis added). A certifiable claim required that "the property on which the claim was based was owned wholly or partially, directly or indirectly by a ***national of the United States on the date of the loss***." *Id.* (emphasis added). The plain language of that statute required a certified claimant to have been a United States national at the time of confiscation. Congress expressly intended that requirement for certifiable claims, and Congress had no trouble writing language to make that requirement express and obvious.

Decades later, the Act expressly barred persons who were United States nationals when their property was confiscated, and thus had been able to file claims with the FCSC, from now suing under Title III if they failed to pursue a certifiable claim with the FCSC. "In the case of a United States national who was eligible to file a claim with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 but did not so file the claim, that United States national ***may not bring an action on that claim under this section***." 22 U.S.C. § 6082(a)(5)(A) (emphasis added). If, as the R&R proposes, only persons who were

United States nationals at the time of confiscation were allowed to bring claims under Title III, then Title III would cover only certified claims and bar all others. That is plainly not the case and would lead to absurd results that would offend the express language (and intent) of Title III.

### *Non-Certified Claims*

Persons who were not eligible to file a claim with the FCSC because they were not United States citizens at the time of confiscation may sue under Title III for their non-certified claims. The following provisions of Title III are specific to non-certified claims:

- Money damages are not determined by the FCSC but instead under § 6083(a)(2) of the Act. 22 U.S.C. § 6082(a)(1)(A)(i)(II).

- There is no presumption on the amount of damages for non-certified claims. 22 U.S.C. § 6082(a).

- Claimants "(*other than a United States national to whom subparagraph (A) applies*)[2] [who] provide[], after the end of the 3-month period described in paragraph (1) notice" may seek treble damages. 22 U.S.C. § 6082(a)(3)(B) (emphasis added).

- United States nationals who were not eligible to certify their claim with the FCSC "may not bring an action on a claim under this section before the end of the 2-year period beginning on March 12, 1996." 22 U.S.C. § 6082(a)(5)(C).

---

[2] Subparagraph (A) of this provision (22 U.S.C. § 6082(a)(3)(A)) provides that "any person that traffics in confiscated property for which liability is incurred under paragraph (1) shall, if a United States national owns a claim with respect to that property which was certified by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949, be liable for damages computed in accordance with subparagraph (C)." 22 U.S.C. § 6082(a)(3)(A).

- Non-certified claimants "shall have the burden of establishing for the court that the interest in property that is the subject of the claim is not the subject of a claim so certified." 22 U.S.C. § 6082(a)(5)(D).

- For non-certified claims "the court may appoint a special master, including the Foreign Claims Settlement Commission, to make determinations regarding the amount and ownership of the claim . . . ." 22 U.S.C.§ 6083(a)(2).

- 22 U.S.C. § 6083(c)(1) expressly provides that "Cuban nationals who became United States citizens after their property was confiscated"[3] are not required to certify their claims. *Id.* (emphasis added).

As demonstrated above, the Act contains different provisions that expressly apply to certified and non-certified claims. Persons who were United States nationals when their property was confiscated were required to file their claims with the FCSC, and may not now sue under 22 U.S.C. § 6082(a)(5)(A) if they failed to do so. If, as the R&R contends, only United States nationals at the time of confiscation were able to sue under the Act and were required to certify their claims with the FCSC or be barred from suit, then only the provisions in Title III regarding certified claims would have meaning, and all the above-cited provisions regarding non-certified claims would be surplusage. That cannot be, and is not, correct.

It is a fundamental rule of statutory construction that "courts should avoid readings that would render part of a statute meaningless." *Unruh v. State*, 669 So. 2d 242, 245 (Fla. 1996) (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 456 (Fla. 1992)). Moreover, "[s]tatutes should be construed to give each word effect." *Gretz v. Florida*

---

[3] The mere existence of this clause in the Act contradicts the R&R's conclusion that claimants had to be U.S. nationals when their property was confiscated.

*Unemployment Appeals Comm'n*, 572 So.2d 1384, 1386 (Fla. 1991). These self-evident principles ineluctably arise from the presumption that "the legislature does not intend 'to enact purposeless and therefore useless, legislation.'" *Unruh*, 669 So. 2d at 245 (quoting *Sharer v. Hotel Corp. of America*, 144 So. 2d 813, 817 (Fla. 1962)); *Hollingsworth v. Zuchowski*, 437 F. Supp. 3d 1231, 1236 (S.D. Fla. 2020) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme.")).

   The lack of a U.S. citizenship requirement at the time of confiscation for claims not certified by the FCSC is further evidenced by the absence of any express language in Title III that would require it. This stands in contrast to the express provisions of 22 U.S.C. §1643(c), in which Congress deliberately included language regarding the Act's requirements for certified claims. Related statutes must be read in *pari materia*, and must "be interpreted together, as though they were one law." *See In re Coffman*, 766 F.3d 1246, 1250 (11th Cir. 2014) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252–53 (2012)). Thus, the Court should look to the closely related International Claims Settlement Act of 1949 for additional guidance. *See Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1290 (S.D. Fla. 2019); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528 (1989) (Scalia, J., concurring) (A statute should be construed in the manner "most compatible with the surrounding body of law into which the provision must be integrated—a compatibility which, by a benign fiction, we assume Congress always has in mind."). Further, "[w]here Congress knows how to say something but chooses not to, its silence is controlling." *See, e.g.*, *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015).

**B.      The R&R's Reliance on *Glen* is Misplaced and Does Not Support Dismissal**

Although the R&R states that "the few courts to have considered this question have interpreted the Act as giving rise to a claim for property confiscated from United States nationals, only," it does not cite a "few courts," only *Glen*, 450 F.3d 1251, which did not (and could not have) concerned a claim under the Act and was filed and decided during Title III's suspension period. The R&R ignores Title III cases filed by Cuban nationals who later became United States citizens, in which no court discussed, or even acknowledged—let alone dismissed claims based on—the R&R's purported citizenship requirement. *See De Fernandez v. Seabord Marine, Ltd.*, 2021 WL 3173213 (S.D. Fla. 2021) (motion to dismiss denied in part); *Glen v. American Airlines Inc.*, 2020 WL 4464665 (N.D. Tex. 2020); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 329 (D. Del. 2021); *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 2021 WL 6065758, at *6 (S.D.N.Y. Dec. 22, 2021). Although some of these cases were dismissed on other grounds, none of these decisions addressed the R&R's purported citizenship requirement, because it is not a requirement for non-certified claims.

The *Glen* claim alleged three claims unrelated to the Act: trespass, unjust enrichment, and a violation of the Trading with the Enemy Act ("TWEA"). On appeal, the Eleventh Circuit considered only whether the common-law causes of action—trespass and unjust enrichment— were barred by the "act of state" doctrine. The court stated that "the Glens have not asserted a claim against Club Med based on the statutory cause of action created by Title III . . . [and] they are unable to do so because . . . the private right of action created therein has been suspended and is not available to litigants." *Glen*, 450 F.3d at 1254–55.

Moreover, neither the Act nor the R&R's purported citizenship requirement ever were litigated, challenged, or appealed in *Glen*, so the Eleventh Circuit's footnote citation cannot

fairly be read as resolving the issue. *Romano*, 2021 WL 949939, at *4. The footnote discussing

the Act is an "unnecessary comment, made without the benefit of legal briefing" and as such, "is

*dicta*, not a binding legal holding." *Id.*; *see generally Montanile v. Bd. of Trustees of the Nat'l*

*Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 148 n.3 (2016) (implicitly determining that a

discussion of a statutory subsection in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) was *dicta*

because it "was not essential to resolving that case"). Further, although the R&R states that the

Eleventh Circuit had "considered whether a claim [under the Act] would have been actionable

[by a Cuban national] and concluded that it *would not*" (R&R at 13 (emphasis added)), the *Glen*

court made no such determination and used discretionary language only in *dicta*. *See Glen*, 450

F.3d at 1255 n.3. No part of *Glen*, least of all *dicta* in a footnote, can have any bearing on the

proper interpretation of a statue it didn't (and couldn't have) considered.

## C.    Title III's "Findings" Section Does Not Support Dismissal

Nothing in the text of Title III requires that trafficked property have been confiscated

from a United States national. But the R&R winkles out this purported requirement from "a

series of findings relevant to the enactment of Title III." R&R at 12. Specifically, the R&R relies

on subsections 22 U.S.C. §§ 6081(2), (5), (6)(B), and (11)—which still do not support its

recommendation—while ignoring other, directly relevant subsections:

- Section 6081(2) states: "[t]he wrongful confiscation or taking of property

belonging to United States nationals by the Cuban Government, and the subsequent exploitation

of this property at the expense of the rightful owner, undermines the comity of nations, the free

flow of commerce, and economic development." This statement does not support the R&R's

conclusion that there is a citizenship requirement to bringing suit. Nor does it state that trafficked

property had to belong to a United States national when it was confiscated. *Cf.* 22 U.S.C.

§1643(c) (". . . owned . . . *at the time by nationals of the United States* . . . owned . . . *by a national of the United States on the date of the loss*." (emphasis added).

Next, the R&R picks and chooses from the findings section, blatantly ignoring the immediately preceding subsection 6081(3)(B)(i)-(iii) which states that "through [Fidel Castro's] personal despotism, he has confiscated the property of (i) millions of his own citizens; (ii) thousands of United States nationals; and (iii) thousands more *Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States*." (emphasis added). References to "confiscations" in later provisions of § 6081 must be read in *pari materia* with its previous definition of those who suffered that loss.

• Section 6081(5) states that the Cuban Government "is offering foreign investors the opportunity" to exploit and traffic properties, "*some of which* were confiscated from United States nationals." (emphasis added). This statement, far from supporting a purported citizenship requirement, expressly acknowledges that all confiscated properties *were not* confiscated from US nationals.

• Section 6081(6)(B) states that it is "[t]his trafficking" in confiscated property, that provides financial benefit to the current Cuban Government and "thus undermines the foreign policy of the United States . . . to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government." This statement plainly looks back to the prior provision acknowledging the theft of property from thousands of Cubans who claimed asylum as refugees "and later became naturalized citizens of the United States." *See* 22 U.S.C. § 6081(3)(B)(iii). It does not require claimants to have been United States nationals when their property was confiscated, and expressly protects the claims of refugees who later became naturalized U.S. citizens, including plaintiff López Regueiro.

- Section 6081(11) states that "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." This provision also must be read in tandem with the preceding subsection 6081(3)(B)(iii) which defined the types of confiscations to include confiscations from "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and *later became naturalized citizens of the United State*s."

The R&R also ignores Section 6083 of the Act, entitled "Proof of ownership of claims to confiscated property," which, in discussing determinations of ownership of non-certified claims by a special master, expressly provides that the FCSC may make such determinations "whether or not the United States national qualified as a national of the United States (as defined in section 502(1)) *at the time of action* by the Government of Cuba." 22 U.S.C. § 6083(B) (codified in 22 U.S.C. § 1643l) (emphasis added).

In sum, nothing in the Act's findings section supports the R&R's purported citizenship requirement. If Congress had intended to limit Title III claims to property stolen from then-U.S. citizens, it would not have left that requirement to be inferred from a "finding" that U.S. citizens, the Cuban people, and ***Cuban refugees who later because U. S. citizens***, all had their property stolen. Further, if such a requirement had been intended, Congress would have expressly stated it in Title III of the Act, as it did in Title V of the International Claims Settlement Act of 1949.

Indeed, the United States recently declined the opportunity to tease any such requirement out of the Act. In *Del Valle v. Trivago GMBH*, No. 20-12407 (11th Cir., argued Oct. 4, 2021), a Title III case currently on appeal, the Eleventh Circuit posed six questions to the United States, appearing as *amicus curiae*. The first question specifically addressed the citizenship requirement:

"Does the term 'United States National' in 22 U.S.C. §§ 6082(A)(4)(B) and 6082(A)(4)(C) refer to the plaintiff bringing the action, or the original claimant to the confiscated property, or both?" The United States declined the invitation to assert any purported requirement that the confiscated property have been confiscated from a U.S. citizen. In fact, the United States expressly concluded that "Section 6082(a)(4) *does not* limit the class of United States nationals who may rely on Title III's right of action to those were the direct victims of Cuba's confiscation or those with certified claims." U.S. Brief at 22 n.3. The Amicus Brief is attached as Exhibit A.

 **D. AA's International Law Arguments are Inapplicable**

 The R&R states that plaintiff failed to address AA's international law argument. This was not an oversight. AA's international law argument is irrelevant and inapplicable because the Act expressly says so. "No court of the United States shall decline, based upon the act of state doctrine, to make a determination on the merits in an action brought under [Title III]." 22 U.S.C. § 6082(a)(6). The Act expressly abrogates the act-of-state doctrine, which otherwise "prevents United States courts from determining the validity of the public acts of a foreign sovereign."[4] It is plain as day that this was done to foreclose any Title III defendant's attempt to justify the Castro regime's theft of the trafficked property.

 Although the R&R cites the 2006 *Glen* decision in support of other findings, it fails to cite the Eleventh Circuit's holding there that "the statute explicitly forecloses use of the act of state doctrine as a defense to causes of action for liability for trafficking, the statutory cause of action created by [Title III]." *Glen*, 450 F.3d at 1256. In the more recent *Glen* case, the Fifth Circuit likewise held that "the act-of-state doctrine requires us to assume the validity of the

---

[4] *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 711 (2021).

Cuban confiscation . . . . But the Act reverses that assumption by abrogating the act-of-state doctrine in cases such as this." *Glen v. American Airlines, Inc.,* 7 F.4th 331, 335 (5th Cir. 2021).

AA's inapplicable international law argument misapplies *Fed. Republic of Germany v. Philipp*, which concerned a takings claim under the Foreign Sovereign Immunities Act ("FSIA") that had nothing to do with trafficking in stolen property, let alone Title III. *See* 141 S. Ct. 703 (2021). The *Philipp* plaintiffs sued Germany for a taking by the Nazi regime, under an FSIA exception providing a claim for expropriations in violation of international law. This was not a suit against anyone for trafficking the property, unlike Title III, which expressly concerns trafficking, not takings by a sovereign state. Germany argued that it had sovereign immunity from suit. The Supreme Court held that the FSIA takes a "restrictive view" of sovereign immunity that "extends to a sovereign's public but not its private acts," which are subject to a commercial activity exception. *Id*. at 713-15 (holding that plaintiffs' cited international law human rights violations were not applicable).

The "foundation" of a Title III claim is a private commercial act—AA's trafficking of the Airport—and ***not*** the antecedent governmental act of confiscation (as to which the Act expressly abrogates the act of state doctrine). *Exxon Mobil Corp. v. Corporacion Cimex S.A.*, 2021 WL4709566 at *2 (D.D.C. 2021). The term "trafficking" in Title III is defined in purely commercial terms and concerns the use or disposition of confiscated property, not the prior act of confiscation by the sovereign. *Id.* "The definition of 'person' further underscores the fact that the 'foundation' of a Title III claim is a commercial act, and not a sovereign one." *Id.*

Defendant's sovereign immunity theory is both expressly negated by Title III's abrogation of the act of state doctrine, and expressly rejected in the Title III case of *Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 2021 WL 6065758, at *6

(S.D.N.Y. 2021) ("[U]nder international law, the law of sovereign immunity from adjudication does not establish causes of action or create or destroy legal obligations[.]") (citing Restatement (Fourth) of Foreign Relations Law § 451 cmt. f (2018)). "Any contention that international law legitimizes the confiscations by the Cuban regime has no basis in law." *Id*.

II.   **TITLE III DOES NOT REQUIRE A PLAINTIFF TO HAVE BEEN A UNITED STATES NATIONAL WHEN THE CLAIM WAS ACQUIRED, ONLY WHEN A TITLE III ACTION IS FILED**

The R&R additionally recommends dismissal of plaintiff's claim because plaintiff was not a United States national at the time he acquired the claim, which was prior to the Act's Record Date. R&R at 16. Nowhere in Title III is there any requirement for a plaintiff to have been a United States national at ***any time prior*** to filing the claim. It simply is not there.

The Act does say that a plaintiff must have acquired the property interest supporting a Title III claim before the Record Date, which plaintiff López Regueiro alleged, and in fact, did.[5] But Title III says nothing about when a plaintiff must have become a United States national, except to say a plaintiff must be a citizen ***when a claim is brought***: "In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B).

In its Amicus Brief, the United States noted that "[a]s a matter of grammar and statutory structure, the 'United States national' referred to in 22 U.S.C. § 6082(a)(4)(B) is the plaintiff bringing suit." Amicus Brief at 13-14. The United States explained that other provisions in the

---

[5] Plaintiffs in certain other pending cases acquired their interests through inheritance during the 23-year suspension period, when ***nobody*** could bring a Title III claim. Those plaintiffs have a right to equitable tolling of the Record Date based on governmental action that closed the courthouse to all claimants until the suspension period ended on May 2, 2019.

Act and references to United States nationals in other parts of the Act do not conflict with the grammar and structure of § 6082(a)(4). *Id.* at 20. In support, the United States cited 22 U.S.C. § 6082(a)(5)(A), which states that "[i]n the case of a United States national who was eligible to file a claim with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 but did not so file the claim, that United States national may not bring an action on that claim under this section." The fact that plaintiff López Regueiro became a United States national in 2015 is irrelevant, because he was a United States national when he commenced this action, as the complaint adequately alleges. Compl. ¶ 2.

The district court in *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, *2 (S.D. Fla. 2020), on which the R&R relies, misread the Act to require a Title III plaintiff to have both owned the claim and been a U.S. citizen on the Record Date. This misinterpretation incorrectly read words into Title III that are not there. *E.g.*, *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009) ("[W]e are not allowed to add or subtract words from a statute; we cannot rewrite it."). The Eleventh Circuit, in a *per curiam* affirmance, did not reach (and said nothing about) this supposed issue. *See Gonzalez v. Amazon.com, Inc.*, 835 F. App'x. 1011 (11th Cir. 2021). That court was unconcerned with when the plaintiff or his assignor (his mother) became citizens, and suggested that the plaintiff should have alleged equitable tolling of the Record Date as to when the claim was acquired. *See id.* at 1012, n.1. If and to the extent the Record Date has any relevance to the question when plaintiff López Regueiro became a United States national, the complaint expressly alleged equitable tolling based on 23 years of presidential suspension. Compl. ¶ 38, n.12.

Equitable tolling has been applied in cases where the plaintiff was misled or lulled into inaction, timely asserted her rights by mistake in the wrong forum, or was in some extraordinary

way prevented from asserting those rights. *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988) (Employee was misled or lulled into inaction by employer, and employee's appeal to state agency had raised issues before the court in a timely claim in the wrong forum).

Equitable tolling also applies when, as here, plaintiffs have been prevented from asserting their rights by government action that effectively barred the courthouse doors. *See, e.g.*, *Osbourne v. U.S.*, 164 F.2d 767, 769 (2d Cir. 1947) (U.S. merchant seaman's injury action was prevented by his internment as a prisoner during World War II.); *Frabutt v. New York, Chicago & St. Louis R.R. Co.*, 84 F. Supp. 460 (W.D. Pa. 1949) (Italian survivors of deceased U.S. citizen were prevented by World War II from bringing FELA claim against decedent's employer.); *Hanger v. Abbott*, 73 U.S. 532 (1867) (The Civil War prevented a contract action in Arkansas.).

*Osbourne* relied on the Supreme Court's *Hanger* decision, where the limitations period for a suit on a debt owed before the Civil War was equitably tolled in an action brought after the war, noting that the "plaintiff's rights and remedies had been suspended, as the courts had not then been open to the parties." *Osbourne*, 164 F.2d at 768. As or more extreme than *Osbourne* and *Hanger* are the cases arising under Title III, where plaintiffs' rights and remedies had "been suspended" and "the courts" had "not then been open to the parties" for nearly 23 years, because of presidential suspension from 1996 until 2019.

## CONCLUSION

For all the good and sufficient reasons set forth above, the R&R's recommendation of dismissal is erroneous, should not be adopted, and defendant's motion to dismiss should be denied. The complaint is legally sufficient and should be sustained.

Dated:  June 3, 2022                          Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000

Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: rkuntz@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:      /s/ *Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
ROBERT J. KUNTZ JR.
Florida Bar No. 094668
ANA C. MALAVE
Florida Bar No. 83839
SYLMARIE TRUJILLO
Florida Bar No. 112768

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By:      /s/ Manuel Vazquez
MANUEL VAZQUEZ
Florida Bar No. 132826

*Counsel for Plaintiff José Ramón López Regueiro*

## CERTIFICATE OF SERVICE

I certify that on June 3, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By:      /s/ *Andrés Rivero*
ANDRÉS RIVERO

17