IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 19-23965-CIV-MARTINEZ-LOUIS

JOSÉ RAMÓN LÓPEZ REGUEIRO,

    plaintiff,

v.

AMERICAN AIRLINES INC. et al.,

    defendants.

_____/

**PLAINTIFF JOSÉ RAMÓN LÓPEZ REGUEIRO'S RESPONSE TO AMERICAN AIRLINES, INC.'S OBJECTION TO THE REPORT AND RECOMMENDATION REGARDING ITS <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ............................................................................................................... ii

**TABLE OF AUTHORITIES** ........................................................................................................ iii

**INTRODUCTION** ........................................................................................................................... 1

**ARGUMENT** ................................................................................................................................... 1

   **I.     PLAINTIFF ADEQUATELY ALLEGED A CLAIM TO THE AIRPORT** ...................... 1

   **II.    THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT** .............. 4

   **III.   PLAINTIFF HAS ARTICLE III STANDING** .................................................................. 7

**REQUEST FOR ORAL ARGUMENT** ........................................................................................ 11

**CONCLUSION** ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

## **Cases**

*Barriere v. Juluca*,
   2014 WL 652831 (S.D. Fla. 2014) ...............................................................................4

*Bennett v. Spear*,
   520 U.S. 154 (1997) ...................................................................................................10

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) .................................................................................................4

*Cable/Home Commc'n Corp. v. Network Prod.*,
   902 F.2d 829 (11th Cir. 1990) .....................................................................................5

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ...................................................................................................4

*Garcia-Bengochea v. Carnival Corp.*,
   407 F. Supp. 3d 1281 (S.D. Fla. 2019) ............................................................... 2, 3, 7

*Glen v. American Airlines*,
   7 F.4th 331 (5th Cir. 2021) ............................................................................... 7, 8, 10

*Glen v. Club Mediterranee*,
   365 F. Supp. 2d 1269 (S.D. Fla. 2005) ........................................................................9

*Glen v. Trip Advisor LLC*,
   529 F. Supp. 3d 316 (D. Del. 2021) .................................................................... 7, 10

*Gretz v. Fla. Unemployment Appeals Comm'n*,
   572 So. 2d 1384 (Fla. 1991) .......................................................................................3

*Havana Docks Corp. v. Carnival Corp.*,
   2022 WL 831160 (S.D. Fla. Mar. 21, 2022) .................................................. 7, 9, 11

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
   484 F. Supp. 3d 1215 (S.D. Fla. 2020) ................................................................ 7, 10

*In re Coffman*,
    766 F.3d 1246 (11th Cir. 2014) .................................................................................3

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ..............................................................................5, 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................10

*New Lenox Indus., Inc. v. Fenton*,
    510 F. Supp. 2d 893 (M.D. Fla. 2007) ....................................................................5

*S.E.C. v. Big Apple Consulting USA, Inc.*,
    783 F.3d 786 (11th Cir. 2015) .................................................................................2

*Shanghai Power Co. v. U.S.*,
    4 Cl. Ct. 237 (1983) .................................................................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................6

### Statutes

22 U.S.C § 6082(a)(6)..........................................................................................................9

22 U.S.C. § 1643c(a)...........................................................................................................3

22 U.S.C. § 6021 ..................................................................................................................1

22 U.S.C. § 6023(12)(A)......................................................................................................4

22 U.S.C. § 6082(a)(1).........................................................................................................9

22 U.S.C. § 6082(a)(1)(A) ................................................................................................2, 9

Fla. Stat. § 48.193(1)(a)(1) ..................................................................................................5

Fla. Stat. § 48.193(1)(a)(2) ..................................................................................................6

**INTRODUCTION**

Defendant American Airlines, Inc.'s objections [ECF 177] ("Obj.") to the Report and Recommendation [ECF 174] ("R&R") do nothing more than rehash its motion to dismiss and reiterate arguments already rejected by every other court that has assessed Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, et seq. (the "Act").

The R&R correctly found: (1) José Ramón López Regueiro sufficiently alleged ownership of his claim to the José Martí International Airport in Havana, Cuba (the "Airport"); (2) the Court has personal jurisdiction over the defendant; and (3) López Regueiro has Article III standing. The R&R got all three issues right.[1]

**ARGUMENT**

**I.     PLAINTIFF ADEQUATELY ALLEGED A CLAIM TO THE AIRPORT**

The R&R correctly found that defendant's challenges to López Regueiro's ownership allegations "depend on the resolution of factual disputes, rendering them inappropriate for this motion to dismiss disposition." R&R at 16. In the complaint, López Regueiro alleges that his father "purchased the Airport in 1955 through his company, CAISA." Compl. ¶¶ 28, 43. López Regueiro further alleges that he acquired a claim to the Airport from his father before March 12, 1996 (the "Record Date") through intestate succession and physical possession of CAISA's bearer shares. Comp. ¶¶ 34, n.11. López Regueiro's allegations sufficiently establish his ownership of a claim under Title III.

---

[1] The R&R also found: (1) venue is proper in this district; (2) plaintiff sufficiently established that defendant's trafficking was knowing and intentional; and (3) the lawful travel exception is an affirmative defense not ripe for consideration on a motion to dismiss. Defendant did not object to these findings and the Court should adopt them in its order.

Defendant urges the Court to ignore Title III decisions from this district and to look outside the four corners of the complaint for factual determinations based on corporate formalities. According to defendant, López Regueiro at best acquired a claim to his father's CAISA shares, and not the Airport, so that CAISA owns a claim to the Airport and is the only potential plaintiff here. Obj. at 3. But as the R&R rightly points out, this argument already has been rejected by another court of this District. *See Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1288 (S.D. Fla. 2019). Ownership of stock in a corporation supports a Title III claim for trafficking property that was owned by the corporation.); R&R at 16–18. Thus, López Regueiro plausibly alleged a claim to the Airport based on his stock ownership in CAISA.

Title III does not require López Regueiro (or his father) individually to have owned the Airport. It only requires ownership of a *claim* to the Airport. The Act states that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national *who owns the claim to such property* for money damages . . . ." 22 U.S.C. § 6082(a)(1)(A) (emphasis added). Therefore, to state a *prima facie* case of trafficking under Title III, a plaintiff must allege ownership of a *claim*, not ownership of, or a current possessory interest in, the *property*.

Because the Act does not define the term "claim," courts must "construe it in accord with its ordinary or natural meaning." *S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 796–97 (11th Cir. 2015). Doing so, Judge King found that a *claim* to confiscated property is substantially broader than a *direct interest* in such property. *Garcia-Bengochea*, 407 F. Supp. 3d at 1289. It is irrelevant whether López Regueiro's shareholder ownership of the Airport can be characterized as "indirect," because claims under Title III may arise from direct *or* indirect property ownership.

2

Moreover, defendant's reading of the Act would "require the Court to delete the word 'claim' from the phrase 'owns the claim to such property,'" and rewrite the Act to cover only plaintiffs who "own such property," rendering the word "claim" entirely superfluous. This courts may not do. *See Gretz v. Fla. Unemployment Appeals Comm'n*, 572 So. 2d 1384, 1386 (Fla. 1991) (holding that statutes should be construed to give each word effect). Further, the closely related International Claims Settlement Act of 1949 ("ICSA") provides that "claims" against the government of Cuba may be based on property "owned wholly or partially, directly *or indirectly* by a national of the United States . . . ." 22 U.S.C. § 1643c(a) (emphasis added). Statutes *in pari materia* —such as the ICSA and the Act—"are to be interpreted together, as though they were one law." *In re Coffman*, 766 F.3d 1246, 1250 (11th Cir. 2014). This further indicates that claims under the Act include those indirectly owned as well. Here, López Regueiro plausibly alleged indirect ownership based on his claim to the CAISA shares. *See* Compl. ¶¶ 28, 33–35, 43.

Not only is a challenge predicated on corporate formalities outside the four corners of the complaint, but defendant didn't (because it couldn't, because there are none) cite any Title III decision where corporate formalities warranted dismissal. In rank contradiction of *Garcia-Bengochea*'s thorough analysis of Title III legislative intent, defendant argues that there is "ample evidence" showing that Congress *did* have corporate formalities in mind. But the mere mention of corporate entities in the definitions section or in Title IV hardly amounts to Congressional intent that corporate formalities should limit the reach of the Act, much less provide a basis for disposal of such claims on a motion to dismiss. *Garcia-Bengochea* and the R&R get it right: Congress did not "draft[] the [Act]" with corporate formalities in mind. *Garcia-Bengochea*, 407 F. Supp. 3d at 1289–90; R&R at 17.

In any event, as the R&R found, whether López Regueiro's ownership interest in the claim is derived from a present, future, contingent or other right[2] is best left to the discovery process and later stages of litigation.

## II. THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT

In an effort to slip out of personal jurisdiction, defendant takes aim at the R&R's single citation to *Barriere v. Juluca*, 2014 WL 652831, at *8 (S.D. Fla. 2014) and claims to distinguish it from *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017). But defendant ignores the main proposition in *Barriere,* on which the R&R relied: *Barriere*'s holding that jurisdictional "allegations, *which are unrebutted*, are sufficient for this court to find that Defendant has such minimum contacts with Florida to be considered 'at home.'" R&R at 9 (emphasis added). The R&R's finding that defendant is subject to general jurisdiction in Florida is not "based merely on Plaintiff's allegations of a substantial business activity in Florida." (Obj. at 6). Instead, it focuses on defendant's failure to rebut the complaint's allegations. *See* AA's Motion to Dismiss [D.E. 123] (failing to attach any affidavits timely rebutting the complaint's jurisdictional allegations); Plaintiff's Opposition to Motion to Dismiss [D.E. 126] at 1, 4–5 ("Defendant could not—and didn't attempt to— rebut the complaint's jurisdictional allegations.").

Defendant also argues that its unlawful trafficking "was directly and solely aimed at the Airport in Cuba, not at the Miami International Airport in Florida." Obj. at 7. That hardly makes sense. For defendant—an airline operating aircraft—to use the Airport to land aircraft full of passengers and cargo, it must first load those passengers and cargo s*omewhere else*. That

---

[2] The Act defines "property" as "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." 22 U.S.C. § 6023(12)(A).

4

somewhere else was nearly always Miami, and the complaint expressly predicated "doing business" specific jurisdiction under Fla. Stat. § 48.193(1)(a)(1) on defendant's regularly sending traffic to the Airport from Miami International Airport ("MIA") and vice versa. Compl. ¶¶ 6–8, 11, 13–15, 32, 40; Ex. A at ¶¶ 5–8. The complaint further alleged that these regular flights are part of defendant's massive Florida operations, which also feature sales to, and marketing efforts aimed at, Floridians in Florida. Compl. ¶¶ 6–8, 11, 17, 32; Ex. A at ¶¶ 6–8. Discovery has also confirmed that Miami is the principal hub from which defendant operates its flights to the Airport. In sum, defendant "carries on a business" in Florida from which this action arises, and defendant knowingly avails itself of this forum to traffic the Airport.

Defendant also turns a blind eye to the complaint's legally sufficient allegations of "tortious act" long-arm jurisdiction. Compl. ¶¶ 7, 8, 15, 32, 40. The complaint alleges a statutory tort committed in Florida when defendant sent traffic to the Airport from Miami and received traffic from the Airport in Miami. Defendant did the bulk of its trafficking in Florida when it loaded, unloaded, sent, and received planes carrying cargo and passengers between Miami International Airport ("MIA") and the Airport, and its activities at MIA were "essential to the success of the tort" of trafficking the Airport. *Cable/Home Commc'n Corp. v. Network Prod.*, 902 F.2d 829, 857 (11th Cir. 1990); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 903 (M.D. Fla. 2007).

Further, "a nonresident defendant commits a tortious act within Florida when he commits an act outside the state that causes injury within Florida." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (trademark infringement based on sale of counterfeit goods in Florida through a website accessible in Florida) (internal citations omitted). In *Mosseri*, the Eleventh Circuit found "a direct causal relationship" linking the defendant, Florida, and the

5

plaintiff's trademark claims that "easily satisfied" the relatedness requirement for tortious-act jurisdiction under Fla. Stat. § 48.193(1)(a)(2). *Mosseri*, 736 F.3d at 1355, 1356. Here, López Regueiro's Title III claims arise out of defendant's Florida contacts, particularly its use of MIA as the starting and ending point for its flights between the U.S. and the Airport. Thus, there is a "direct causal relationship" between defendant's use of MIA as the origin or destination for *almost all flights to and from* the Airport and defendant's trafficking the Airport, which "easily satisfies" the relatedness requirement for specific jurisdiction. *See id*. at 1356; *see also Walden v. Fiore*, 571 U.S. 277, 286–88 (2014).

Defendant's reliance on *Walden* is misplaced since *Walden* actually supports López Regueiro's position. In *Walden*, the Supreme Court held that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliations with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286. The R&R properly found that the complaint sufficiently alleges the following extensive affiliations between defendant and Florida that are anything but random, fortuitous, or attenuated:

> Defendant operates a commercial airline that regularly transports hundreds of passengers to and from Miami International Airport. The Amended Complaint alleges that Defendant has more than 13,000 employees in Miami alone, supporting payroll of over $1.8 billion annually, making it the third-largest private employer in Miami-Dade County (ECF No. 122 at ¶ 11). Defendant has an office in Miami-Dade County, Florida, and conducts business pursuant to a license issued by the Department of Transportation. Plaintiff alleges that Defendant is the most prominent airline at Miami International Airport, accounting for almost three-quarters of its total air traffic.
>
> Defendant's conduct in this case in fact has a connection to the state: Plaintiff alleges that at least five flights daily to the Airport originate from Miami International Airport and another five flights daily return from the Airport to Miami International Airport. Since 2018, Plaintiff alleges, Defendant has additionally offered cargo service to the Airport, that service again originating

>from Miami International Airport. While the trafficking alleged occurred in Cuba, the well plead allegations demonstrate a nexus to the forum . . .

R&R at 9. The R&R was right. The allegations here are more than sufficient for the Court to exercise personal jurisdiction over defendant.

### III. PLAINTIFF HAS ARTICLE III STANDING

As the R&R accurately points out, other courts have repeatedly rejected Article III standing challenges to Title III claims in the motion to dismiss context. *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1227–29 (S.D. Fla. 2020); *Glen v. American Airlines*, 7 F.4th 331, 334 (5th Cir. 2021); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 328 (D. Del. 2021). This consensus was recently reaffirmed by Judge Bloom in *Havana Docks Corp. v. Carnival Corp.*, 2022 WL 831160, at *79 (S.D. Fla. Mar. 21, 2022) (holding that "Title III claims satisfy the four elements of injury-in-fact: legally protected interest, concreteness, particularization, and imminence.").

Unable to cite a single Title III decision to support its argument—because there are none—defendant offers up irrelevant decisions about other causes of action while asking the Court to ignore relevant Title III precedent while considering issues well outside the four corners of the complaint.

*First*, defendant argues that López Regueiro has no property interest in the Airport, and there is no allegation that defendant ever held or injured the CAISA shares. Obj. at 8. As the owner of CAISA's shares, López Regueiro has a Title III claim to the Airport. *Garcia-Bengochea*, 407 F. Supp. 3d at 1289–90; Section I, *supra*.

Defendant relies on a single, inapposite case to argue that "a person whose property has been confiscated by a foreign government owns 'a claim for compensation,' as distinguished from ownership of the confiscated 'assets' themselves." Obj. at 8 (referencing *Shanghai Power*

7

*Co. v. U.S.*, 4 Cl. Ct. 237, 241 (1983)). But what the court in *Shanghai Power* assessed was "[t]he concept of property for purposes of the fifth amendment" in order to determine whether the plaintiff had stated a claim for just compensation for property that "was taken *by the United States* for a public purpose." *Shanghai Power Co.*, 4 Cl. Ct. at 239, 240 (emphasis added). Accordingly, *Shanghai Power Co.* is utterly inapposite and of no use to the Court. López Regueiro is not seeking compensation from Cuba for the confiscation of the Airport. This is a Title III claim seeking compensation for defendant's unlawful use of property that was confiscated from López Regueiro's father.

According to defendant, López Regueiro's "interests would remain exactly the same whether American flew a single plane to the Airport or not" so there is no cognizable Article III injury caused by the defendant. Obj. at 8. Nonsense. The Act isn't about preserving the claimant's interest the seized property—the Cuban government's confiscation already prejudiced that. Rather, the Act is meant to compensate claimants whose seized property has been trafficked by parties like the defendant. López Regueiro's Title III claim, as the complaint expressly alleges, is based on a pocketbook injury from defendant's *trafficking* the Airport without plaintiff's permission and without compensating him. *E.g.*, Compl. ¶ 48 ("The defendants have never paid—and the Vilaboy Family has never received—any compensation or indemnification whatsoever for defendants' trafficking of the Airport."). This is precisely the cognizable and concrete injury for which Article III was drafted. *See Glen*, 7 F.4th at 334.

*Second*, defendant mystifyingly argues that plaintiff's interest in CAISA and the Airport was extinguished at the time of confiscation, and—blatantly ignoring the very purpose of Title III—states that "Plaintiff can point to no source of law—U.S. law or international law—that bestowed upon Plaintiff or his Cuban father ownership of a claim to compensation or other

property interest in the Airport or the CAISA shares after the property was appropriated in 1959." Clearly defendant conflates alleging an ownership interest in the confiscated property with ownership of a Title III claim to such property. Defendant's interpretation of Title III would render it unenforceable, and lead to an absurd result. According to defendant, Title III would be unenforceable unless the Cuban Government first returned title to the confiscated property to the victim of confiscation. In *Glen v. Club Mediterranee S.A.*, the court noted that Title III "do[es] not provide that those whose property was taken by the Cuban government retain legal title to that property, but rather permits any U.S. national 'who owns a claim to such [confiscated] property for money damages' to sue those who traffic in such property." 365 F. Supp. 2d 1263, 1269 (S.D. Fla. 2005) (quoting 22 U.S.C. § 6082(a)(1)(A)).

Defendant then unsuccessfully appeals to inapplicable international law and the irrelevant "domestic takings rule." Obj. at 9. But this argument also has been serially rejected by other courts, including the Eleventh Circuit. This case is not about Cuba's "alleged appropriation of the Airport," or whether it "was valid and effective insofar as international law is concerned" as defendant contends. Obj. at 9. The Act explicitly forecloses use of the act of state doctrine as a defense to claims for liability for trafficking, the statutory cause of action created by 22 U.S.C. § 6082(a)(1). *Havana Docks Corp.*, 2022 WL 831160, at *82 (citing *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1256 (11th Cir. 2006)); *see also* 22 U.S.C § 6082(a)(6) ("No court of the United States shall decline, based upon the act of state doctrine, to make a determination on the merits in an action brought under paragraph (1).")

*Third*, defendant grossly mischaracterizes plaintiff's Title III claim, arguing that plaintiff's only possible injury flows from the 1959 Cuban appropriation of the Airport. Obj. at 9. The complaint adequately alleged a monetary injury traceable to defendant's regular flights

9

between Miami and the Airport, which is separate from the Cuban Government's confiscation of the Airport. Compl. ¶ 49 ("López Regueiro has been injured by defendants' trafficking in the Airport without his permission, and without paying any compensation to him. Defendants have been unjustly enriched from their trafficking in the Airport."). As another court in this District found in a similar case, there is a direct "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Havana Docks*, 484 F. Supp. 3d at 1230.

The causation element of Article III standing only requires that the injury be "fairly traceable to the challenged action of the defendant . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Additionally, the burden of alleging an injury that is fairly traceable to the defendant's conduct is "relatively modest" at the motion-to-dismiss stage of litigation. *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

*Finally*, as an argument of last resort, and even though it's been rejected by every court in related Title III cases,[3] defendant argues that Title III lacks a close relationship to historical and common-law analogues and therefore the Act cannot confer Article III standing to plaintiff. Obj. at 10. According to defendant, other courts that have found unjust enrichment to be a close analogue have gotten it wrong because unjust enrichment depends on a plaintiff's ownership of the property, which is absent in Title III cases. Obj. at n.1. But this *close relationship* to an analogue does not require that a statutory claim have *identical elements* to claims rooted in such a traditional harm. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (emphasis added); *see also*

---

[3] *See Havana Docks Corp. v. Norwegian Cruise Line Holdings*, Ltd., 484 F. Supp. 3d 1215, 1227–29 (S.D. Fla. 2020); *Glen v. American Airlines*, 7 F.4th 331, 334 (5th Cir. 2021); *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 328 (D. Del. 2021) (rejecting standing challenge to a Title III claim).

10

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021) ("In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate."). This argument also fails.

As the R&R states, and as every other court has found, "Title III claims satisfy the four elements of injury-in-fact: legally protected interest, concreteness, particularization, and imminence." *Havana Docks Corp.*, 2022 WL 831160, at *79.

## REQUEST FOR ORAL ARGUMENT

López Regueiro respectfully requests oral argument on the parties' Objections to the R&R and their respective Responses and submits that the R&R contained various legal errors in recommending dismissal of the complaint with prejudice. Oral argument will assist the Court in framing, clarifying, and deciding the issues on the motion to dismiss, some of which are issues of first impression.

## CONCLUSION

For all the good and sufficient reasons set forth above, defendant's objections fail, as does its motion to dismiss. The complaint is legally sufficient and should be sustained.

Dated:  June 17, 2022                    Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: rkuntz@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:     /s/ *Andrés Rivero*
ANDRÉS RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
ROBERT J. KUNTZ JR.
Florida Bar No. 094668
ANA C. MALAVE
Florida Bar No. 83839
SYLMARIE TRUJILLO
Florida Bar No. 112768

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By:     /s/ Manuel Vazquez
MANUEL VAZQUEZ
Florida Bar No. 132826

*Counsel for Plaintiff José Ramón López Regueiro*

## CERTIFICATE OF SERVICE

I certify that on June 17, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By:     /s/ *Andrés Rivero*
ANDRÉS RIVERO