UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23965-JEM

JOSÉ RAMÓN LÓPEZ REGUEIRO,

        Plaintiff,

v.

AMERICAN AIRLINES, INC., *et al.*,

        Defendants.

_____ /

**DEFENDANT AMERICAN AIRLINES, INC.'S
RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... i

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

I.      Plaintiff Was Not A United States National As Of March 12, 1996, As The
        Helms-Burton Act Requires.................................................................................... 1

II.     The Airport Was Not Confiscated From A United States National, As The Helms-
        Burton Act Requires ............................................................................................... 4

        A.      Congress's Stated Purpose And Findings Focus On Property Confiscated
                From U.S. Nationals ..................................................................................... 5

        B.      Cuban Nationals Do Not Own A "Claim To" Property Appropriated By
                The Cuban Government.................................................................................. 8

        C.      American's Interpretation Does Not Render Portions Of The Statute
                Meaningless ................................................................................................. 12

CONCLUSION........................................................................................................................... 15

## TABLE OF AUTHORITIES

CASES                                                                                              PAGE

*Carr v. United States*,
    560 U.S. 438 (2010)...................................................................................................2

*Castillo v. Fla. Sec'y of DOC*,
    722 F.3d 1281 (11th Cir. 2013) ...............................................................................6

*Delmas v. Gonzales*,
    422 F. Supp. 2d 1299 (S.D. Fla. 2005) ..................................................................11

*Fed. Republic of Germany v. Philipp*,
    141 S. Ct. 703 (2021)...................................................................................9, 10, 11

*Fogade v. ENB Revocable Tr.*,
    263 F.3d 1274 (11th Cir. 2001) .........................................................................10, 11

*Glen v. Club Méditerranée, S.A.*,
    450 F.3d 1251 (11th Cir. 2006) .......................................................................6, 8, 10

*Gonzalez v. Amazon.com, Inc.*,
    No. 19-23988, 2020 WL 2323032 (S.D. Fla. May 11, 2020)...................................3

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013).................................................................................................15

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994).................................................................................................15

*Mezerhane v. República Bolivariana de Venezuela*,
    785 F.3d 545 (11th Cir. 2015) ........................................................................9, 10, 11

*Steed v. Head*,
    219 F.3d 1298 (11th Cir. 2000) ...............................................................................4

*Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v.*
    *Société Générale, S.A.*,
    No. 20-851, 2021 WL 6065758 (S.D.N.Y. Dec. 22, 2021)....................................11

*United States v. Wilson*,
    503 U.S. 329 (1992).................................................................................................2

**STATUTES**

22 U.S.C. § 6022(3) ...................................................................................................................7

22 U.S.C. § 6023(12)(B) ...........................................................................................................2

22 U.S.C. § 6023(15) ...........................................................................................................1, 14

22 U.S.C. § 6033(a) ..............................................................................................................2, 3

22 U.S.C. § 6081 ...................................................................................................................7, 8

22 U.S.C. § 6082(a) .......................................................................................................*Passim*

22 U.S.C. § 6083(a)(6) ...........................................................................................................11

22 U.S.C. § 1643a(1) ..............................................................................................................13

22 U.S.C. § 1643c ............................................................................................................12, 13

## INTRODUCTION

Magistrate Judge Louis correctly recommends dismissing Plaintiff's Second Amended Complaint (Complaint or SAC).  ECF No. 174 (R&R).  *First*, Plaintiff "was not a United States national at the time he allegedly acquired the claim [to confiscated property], or prior to the Act's passing in 1996," as the Helms-Burton Act (HBA) requires.  *Id.* at 16.  *Second*, the property Plaintiff alleges his father owned—the José Martí International Airport—was not "confiscated from a United States National," as the HBA requires.  *Id.* at 14.  Both defects independently warrant dismissal, and nothing in Plaintiff's objections alters this conclusion.

## ARGUMENT

I. **PLAINTIFF WAS NOT A UNITED STATES NATIONAL AS OF MARCH 12, 1996, AS THE HELMS-BURTON ACT REQUIRES**

As Judge Louis correctly concluded, Plaintiff's Complaint must be dismissed for the clear reason that "Plaintiff was not a United States national at the time he allegedly acquired the claim [to the Airport], or prior to the Act's passing in 1996."  R&R at 16.  This requirement flows from the statute's text, structure, and history, to which Plaintiff offers no response.

**A.**  The HBA provides that, "[i]n the case of property confiscated before March 12, 1996, *a United States national* may not bring an action under this section on a claim to the confiscated property unless *such national acquires* ownership of the claim before March 12, 1996."  22 U.S.C. § 6082(a)(4)(B) (emphasis added).  And the statute defines a human United States national as a "United States citizen."  § 6023(15).  As both Judge Louis and Judge Scola recognize, this provision means the statute "only applies to claim owners who [were] already United States citizens at the time the Act was passed on March 12, 1996."  R&R at 16 (quoting *Gonzalez v. Amazon.com, Inc.*, No. 19-23988, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020), *aff'd*, 835 F. App'x 1011 (11th Cir. 2021)).

Two features of the statute's text compel that conclusion: the phrase "such national," and the present-tense verb "acquires." *First*, "such national" refers back to the "United States national" bringing the claim. *See* Black's Law Dictionary 1473 (11th ed. 2019) (defining "such" as "having just been mentioned"); *see also* ECF No. 178-1 ("U.S. Br.") at 18–19.  Thus, a U.S. national may bring an HBA suit regarding property confiscated before March 12, 1996, only if that U.S. national—*i.e.*, *such national*—acquires the claim before March 12, 1996. *Second*, Congress used the present tense "acquires" in the phrase "such national acquires ownership."  That verb tense creates a temporal relationship: the person must presently be a U.S. national when "such national *acquires* ownership" of the claim; it is not enough that a non-U.S. national *acquired* ownership of the claim and then later became a U.S. national. *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("[W]e have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes").  Other HBA provisions clearly confirm Congress's meaning with similar language. *See* § 6033(a) (referring to "confiscated property the claim to which *is owned by a United States national as of March 12, 1996*") (emphasis added).[1]

The Act's structure reinforces Congress's decision to limit the cause of action to plaintiffs who were U.S. nationals as of March 12, 1996.  For one thing, the HBA focuses intensely on U.S. nationals (*see* Section II, *infra*), which explains Congress's similar focus in § 6082(a)(4)(B) on U.S. citizenship as of the date the HBA was passed.  For another, Congress repeatedly used a plaintiff's U.S. citizenship as of that date to set limits in the Act.  In defining "property," Congress included residential property if "as of March 12, 1996 . . . the claim to the property is held by a United States national."  § 6023(12)(B).  Similarly, Congress prohibited financing of transactions

---

[1] Unless otherwise indicated, all statutory citations refer to Title 22 of the U.S. Code.

"involving any confiscated property the claim to which is owned by a United States national as of March 12, 1996." § 6033(a).  It was thus natural for Congress similarly to tie the cause of action for property confiscated before March 12, 1996, to U.S. citizenship as of March 12, 1996.

The HBA's history confirms the point.  Congress explained the reason for § 6082(a)(4) as follows: "It is not the [conference] committee's intent that the right of action be available to persons or entities that would relocate to the United States for the purpose of using this remedy." H.R. Rep. No. 104-468, at 59 (1996) (Conf. Rep.).  As Judge Scola recounted, "Congress intended that this requirement"—ownership by a U.S. national as of March 12, 1996—"prevent foreigners from 'relocat[ing] to the United States'" to become U.S. nationals and then sue under the HBA. *Gonzalez*, 2020 WL 2323032, at *2 (quoting Conf. Rep. at 59).  Thus, Congress expressly stated its intent, both in the text and the legislative history, not to allow a foreign national to relocate to the United States after March 12, 1996, become a U.S. national, and then bring suit under the HBA.

But that is what Plaintiff has done here.  He admits he was a Cuban national when the HBA was enacted, and then he "became a United States national in 2015," nearly twenty years later. ECF No. 178 ("Pl's. Obj.") at 15.  This is precisely what Congress sought to exclude by requiring a U.S. national to own the claim as of March 12, 1996.  The only way to give effect to Congress's intent, therefore, is to enforce the plain text according to its terms and dismiss Plaintiff's suit.

**B.**  In response, Plaintiff says virtually nothing about this issue, tucking this obvious basis for dismissal away at the back of his brief.  He complains that Judge Scola, Judge Louis, and American have all "read words into Title III that are not there."  *Id.*  But he never confronts the textual evidence highlighted above that forecloses his own view that his citizenship status in 1996 "is irrelevant."  *Id.*  And he ignores the HBA's structure and history, which confirm that Judge Scola and Judge Louis are correct.

3

Rather than seriously dispute the U.S. national requirement, Plaintiff oddly suggests the Court should apply equitable tolling in light of "23 years of presidential suspension" of the HBA's cause of action. *See id.* at 15–16. Equitable tolling is irrelevant here because March 12, 1996, does not mark a "limitations period" for filing suit. *See Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). That date instead is part of the HBA's "[a]pplicability" provisions that determine *which plaintiffs* can bring various types of claims. § 6082(a)(4). Plaintiff cites not a single case applying equitable tolling to this type of provision. *See* Pl.'s Obj. at 16 (citing limitations-period cases).

Nor does tolling make any sense in this context. Regardless of whether the HBA's cause of action was ever suspended *after* March 12, 1996, Plaintiff's inability to bring suit remains exactly the same—because he was not a U.S. citizen *before* March 12, 1996. Equally senseless and devoid of precedent is the notion that equitable tolling would apply based on presidential suspensions that Congress *expressly* authorized in the HBA. § 6085. Thus, Judge Louis correctly determined that Plaintiff's Complaint must be dismissed for the independent reason that he was not a U.S. national by March 12, 1996.

## II.   THE AIRPORT WAS NOT CONFISCATED FROM A UNITED STATES NATIONAL, AS THE HELMS-BURTON ACT REQUIRES

Judge Louis also rightly concluded that Plaintiff's Complaint must be dismissed for a second reason—namely, the Airport was not "confiscated from a United States National," as the HBA requires. R&R at 14. The Airport was instead allegedly confiscated from "a Cuban company, which in turn was owned by a Cuban National, Plaintiff's father." *Id.* at 11. This conclusion, too, follows from text of the statute, together with Congress's stated purpose and findings, and background principles of property law. As explained below, Plaintiff's efforts to paint Judge Louis's interpretation as nullifying the HBA are baseless.

A.      **Congress's Stated Purpose And Findings Focus On Property Confiscated From U.S. Nationals**

The HBA's purpose and findings show that the cause of action for "traffic[king] in property which was confiscated by the Cuban Government" extends only to property that was confiscated from U.S. nationals.  § 6082(a)(1)(A).

**1.**  Start with Congress's stated purpose—"to 'protect *United States nationals* against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime,'" and to address "'threats from the Cuban government of … theft of property *from United States nationals*.'"  R&R at 12 (quoting § 6022(6), (3) (emphasis added)).

That purpose coincides with Congress's findings, including "most significantly that '[t]he wrongful confiscation or taking of property *belonging to United States nationals* by the Cuban Government, and the subsequent exploitation of *this property* at the expense of the rightful owner, undermines the comity of nations, the free flow of commerce, and economic development.'"  *Id.* (quoting § 6081(2)).[2]  Congress similarly found that the Cuban government "'is offering foreign investors the opportunity' to exploit property, 'some of which were *confiscated from United States nationals*.'"  *Id.* (quoting § 6081(5)).  And "critically," Congress found that it was "'*[t]his trafficking*' in confiscated property[] that provides financial benefit to the current Cuban Government and 'thus undermines the foreign policy of the United States . . . to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban government."  *Id.* at 12–13 (quoting § 6081(6)(B)).  For that reason, Congress provided a remedy in the HBA for "'the victims of *these confiscations*.'"  *Id.* at 13 (quoting § 6081(11)).

---

[2] Indeed, "[t]he uncompensated expropriation of US nationals' assets in Cuba was one of the leading causes of . . . the imposition of the U.S. embargo on trade with Cuba."  *See* Matias F. Travieso Diaz, Resolving U.S. Expropriation Claims Against Cuba: A Very Modest Proposal, 22 Law & Bus. Rev. Am. 3, 5 (2016).

As Judge Louis recognized, Congress's stated purpose and findings "[c]ollectively" reveal that the HBA's cause of action is limited to property confiscated from U.S. nationals. *Id.* That is because Congress (1) sought "to discourage exploitation of '*this property*,' defined in the preceding phrase as that 'belonging to United States nationals,'" and (2) "create[d] a judicial remedy for United States nationals 'who were the victims of *these confiscations*,' that is, as immediately defined above, property confiscated from United States nationals." *Id.* Thus, "[t]he plain language of the statute affords no broader construction." *Id.*

The Eleventh Circuit, moreover, has agreed with Judge Louis: Property "owned by Cuban nationals at the time of its expropriation . . . may not be the proper subject of a trafficking claim under the [HBA]." *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 n.3 (11th Cir. 2006). And the Eleventh Circuit reached its conclusion relying on many of the same HBA provisions as did Judge Louis. *See id.* (citing 22 U.S.C. § 6081(5), (6), and (11)).

**2.** Plaintiff has no persuasive responses. To start, he does not—and cannot—dispute that the Eleventh Circuit's statement in *Glen* squarely contradicts his argument that the HBA applies to property confiscated from Cuban nationals. Pl.'s Obj. at 8–9. Instead, he disparages the statement as dicta because (as Judge Louis acknowledged, R&R at 13) *Glen* did not involve an HBA claim. Pl.'s Obj. at 8. And he insists that the Eleventh Circuit's clear statement "can[not] have any bearing" on this Court's decision. *Id.* at 9. He is wrong because, "dicta can be considered for whatever persuasive value it may have." *Castillo v. Fla. Sec'y of DOC*, 722 F.3d 1281, 1291 (11th Cir. 2013). And *Glen* is exceptionally persuasive here because it speaks to the exact problem Plaintiff faces and is directly in line with Congress's purpose and findings in the HBA.

Plaintiff criticizes Judge Louis for "ignor[ing]" other HBA cases that never "discussed" "or even acknowledged" the "purported citizenship requirement." Pl.'s Obj. at 8. But cases that

do not speak at all to this issue are, by definition, unhelpful here.  Nor can American be faulted if defendants in other cases failed to make, or waived, arguments available to them.

Plaintiff also has no answer to Congress's stated purpose and findings that Judge Louis highlighted.  He never so much as mentions the key provisions in § 6022 as recounted above, including—perhaps most importantly—Congress's intent to address the "theft of property *from United States nationals* by the Castro government."  *See* § 6022(3) (emphasis added).  He does acknowledge Congress's finding regarding "'[t]he wrongful confiscation or taking of property *belonging to United States nationals* by the Cuban government,'" but he then blindly claims there is no suggestion that the "trafficked property had to belong to a United States national when it was confiscated."  Pl.'s Obj. at 9 (quoting § 6081(2) (emphasis added)).  The text—"confiscation or taking of property *belonging to United States nationals*"—speaks for itself.  It flatly contradicts Plaintiff's reading.

Finally, Plaintiff offers an implausible reading of the other relevant findings—that when Congress referred to "*[t]his* 'trafficking'" in § 6081(6), Congress was referring back to § 6081(3)(B), which refers to the "confiscat[ion]" of property from "millions of [Castro's] own citizens; . . .thousands of United States nationals; and . . .thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States."  Pl.'s Obj. at 10–11.

Plaintiff's error, however, is that Congress's findings never refer to the *trafficking* of Cuban nationals' property; they refer only to the *confiscation* of Cuban nationals' property.  By contrast, before referring to "[t]his 'trafficking' in confiscated property" in § 6081(6), Congress twice expressly mentioned both the confiscation *and* trafficking of U.S. nationals' property.  *See* § 6081(2) ("The wrongful confiscation or taking of property belonging to United States nationals

by the Cuban Government, and the subsequent exploitation of this property at the expense of the rightful owner . . . ."); § 6081(5) ("The Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals."). That Congress expressly mentioned the trafficking of only *U.S. nationals'* property is clear evidence that "[t]his 'trafficking' in confiscated property" in § 6081(6) means trafficking of U.S. nationals' property. And that explains why § 6081(6)(B) goes on to say that the trafficking "undermines the foreign policy of the United States . . . to protect the claims of United States nationals who had property wrongfully confiscated by the Cuban Government."

In short, Plaintiff has no way around Congress's clear focus—as recognized in *Glen*—on the trafficking of property that was confiscated from U.S. nationals, not from Cuban nationals who may later become naturalized U.S. citizens.[3]

**B.      Cuban Nationals Do Not Own A "Claim To" Property Appropriated By The Cuban Government**

The text of the cause of action, read in light of the well-settled "domestic takings" rule, confirms that Congress limited the HBA to property confiscated from U.S. nationals.

**1.**   As the HBA expressly states, a plaintiff who brings an action for trafficking in confiscated property must "own[] the claim to such property." § 6082(a)(1)(A). Yet the HBA itself does not purport to create "claim[s] to such property," nor does it establish who "owns [a] claim to such property." *Id.* As the Department of Justice recently put it, the HBA "does not

---

[3] Plaintiff tries to glean support from the Department of Justice's statement that § 6082(a)(4) "does not limit the class of United States nationals who may rely on Title III's right of action to those who were the direct victims of Cuba's confiscation or those with certified claims." U.S. Br. at 22 n.3; *see* Pl.'s Obj. at 12. But that statement does not move the needle for Plaintiff. As explained below, certain U.S. nationals who were not the original owners of confiscated property (and thus, not "direct victims") can bring HBA suits on uncertified claims. *See* Section II.C, *infra*.

address how one comes to acquire an interest in such property, nor is there any generally applicable federal law governing such matters." U.S. Br. 27. Instead, the statute merely provides a trafficking cause of action—a remedy—for a plaintiff who *already* "owns the claim to [confiscated] property." § 6082(a)(1)(A). As a result (and as the Department of Justice emphasized), courts must "look to state law (or foreign law, when applicable) to determine when a plaintiff acquired, by inheritance or otherwise, a claim to property at issue in an action under Title III." U.S. Br. 27.

Here, Plaintiff never alleges what source of law gave his father or his father's company—both Cuban nationals—a claim to confiscated property after the Cuban government appropriated that property in 1959 or 1960. That's because there was no such source of law. There was certainly no U.S. federal law or state law that purported to say anything about vesting Cuban nationals with claims to property appropriated by the Cuban government in Cuba. As noted above, moreover, the HBA itself (enacted decades later) does not purport to create claims to confiscated property. And Plaintiff does not purport to rely on any source of foreign law.

Nor does any principle of international law give Plaintiff any claim to the confiscated property. Indeed, under the "domestic takings rule," "what a country does to property belonging to its own citizens within its own borders is not the subject of international law." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021); *see also Mezerhane v. República Bolivariana de Venezuela*, 785 F.3d 545, 550 (11th Cir. 2015) ("[I]nternational law prohibits expropriation of alien property without compensation, but does not prohibit governments from expropriating property from their own nationals without compensation."). This means Cuba's alleged appropriation of the Airport in Cuba from "a Cuban company, which in turn was owned by a Cuban National" (R&R at 11) was not illegal insofar as international law is concerned. International law therefore does not provide Plaintiff, his father, or his father's company with a claim to confiscated

property.  And this underscores why the Eleventh Circuit has already stated that property "owned by Cuban nationals at the time of its expropriation . . . may not be the proper subject of a trafficking claim" under the HBA.  *Glen*, 450 F.3d at 1255 n.3.

**2.**  Plaintiff again has no persuasive response.  For one thing, he concededly waived before Judge Louis any response to the application of the domestic takings rule.  *See* Pl.'s Obj. at 12 (admitting that Plaintiff's failure to respond to this international law argument "was not an oversight").  In any event, his new response is misguided.  He asserts that the HBA "expressly abrogates the act-of-state doctrine, which otherwise 'prevents United States courts from determining the validity of the public acts of a foreign sovereign.'"  *Id.*  This is a red herring.

The act-of-state doctrine (which American does not invoke) is different from and independent of the domestic takings rule (which American invokes).  The act-of-state doctrine is an abstention doctrine that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory."  *Mezerhane*, 785 F.3d at 552 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)).  Under this doctrine, the substance of international law is irrelevant: courts will abstain "even if . . . the taking violates customary international law."  *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1293 (11th Cir. 2001) (quoting *Sabbatino*, 376 U.S. at 428).

The domestic takings rule, by contrast, reflects a substantive rule of international law that applies when courts reach the merits of an international law question.  On the merits, a "purely domestic [taking] . . . does not violate international law."  *Id.* at 1296; *see also Philipp*, 141 S. Ct. at 709 (same); *Mezerhane*, 785 F.3d at 549–50 (same).  When a court applies the domestic takings rule, therefore, the court does not abstain from deciding the merits (as it would under the act-of-state doctrine); instead, the court applies a substantive international law rule and holds that, as a

matter of international law, there is no illegal taking when a foreign sovereign appropriates property from its own nationals on its own soil.

Plaintiff therefore misses the mark by focusing on the act-of-state doctrine.  American relies on the domestic takings rule, which is different.  Moreover, the HBA provision preempting the act-of-state doctrine cuts *against* Plaintiff, not in his favor.  § 6083(a)(6).  This provision demonstrates Congress's awareness of fundamental international law doctrines—yet it expressly overrode only the act-of-state doctrine, not the domestic takings rule.  Under ordinary principles of statutory interpretation, therefore, Congress is presumed to have preserved the domestic takings rule.  *See, e.g.*, *Delmas v. Gonzales*, 422 F. Supp. 2d 1299, 1302 (S.D. Fla. 2005) ("[T]he mention of one thing implies the exclusion of another." (quoting *United States v. Castro*, 837 F.2d 441, 422 (11th Cir. 1988))).[4]

---

[4] Plaintiff relies in passing on *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société Générale, S.A.*, No. 20-851, 2021 WL 6065758, at *6 (S.D.N.Y. Dec. 22, 2021).  That case rejected an irrelevant argument that the domestic takings rule "affirmatively legitim[izes] domestic takings." *Id.*  American makes no such argument; it instead argues that (1) the domestic takings rule is different from the act-of-state doctrine and (2) international law does not render Cuba's domestic appropriations illegal or invalid and therefore cannot provide Cuban nationals with ownership of a claim to property appropriated by the Cuban government in Cuba.

*Sucesores* also incorrectly asserted that the domestic takings rule does not determine "substantive rights" because it is "rooted in the jurisdictional principle of sovereign immunity." *Id.* That reasoning directly contradicts the Supreme Court's holding and reasoning in *Phillip*. 141 S. Ct. at 715 (holding that the domestic takings rule reflects a substantive rule of "the international law of expropriation" ); *id.* at 711 (contrasting "the act of state doctrine, which prevents United States courts from determining the validity of the public acts of a foreign sovereign," with "the domestic takings rule," which is a "rule of international law"); *id.* ("confiscations by a state of the property of its own nationals . . . do not constitute violations of international law"); *see also Mezerhane*, 785 F.3d at 552 (distinguishing between act-of-state abstention doctrine and substantive domestic-taking rule); *Fogade*, 263 F.3d at 1293 (same).

### C.   American's Interpretation Does Not Render Portions Of The Statute Meaningless

Unable to seriously contest American's arguments on the merits, Plaintiff's leading argument is that, if Judge Louis and American are correct that the HBA covers only property confiscated from U.S. nationals, then it would nullify subsidiary provisions in the HBA that refer to claims that are not certified by the Foreign Claims Settlement Commission.  Pl's. Obj. at 3–5.

Plaintiff is wrong.  He is wrong that "certified claims" and "non-certified claims" under the HBA correspond to "U.S. nationals" and "Cuban nationals."  If Congress wanted to create categories of claims corresponding with those two citizenship groups, it would have said so. Particularly in the sensitive context of foreign affairs, and particularly when claims brought by Cuban nationals would have no basis in history, precedent, or international law, Congress would have said expressly if it wanted to authorize suits by plaintiffs who were Cuban nationals at the time of confiscation.

Plaintiff is also wrong that any provisions of the HBA regarding non-certified claims provide a reason not to adopt Judge Louis's interpretation.  Plaintiff's reasoning appears to be as follows: (1) under the International Claims Settlement Act of 1949, only claimants who were U.S. nationals at the time their property was confiscated could seek certification of their claims before the Commission, *see* § 1643c(a); (2) under the HBA, if a U.S. national "was eligible to file a claim" with the Commission but did not so, that U.S. national cannot bring an HBA suit, *see* § 6082(a)(5)(A); therefore (3) if (as Judge Louis concluded) the HBA only gives a cause of action to plaintiffs who were U.S. nationals at the time of confiscation, then the only viable HBA

plaintiffs are those holding claims certified by the Commission, and any provision in the HBA referring to *non*-certified claims is meaningless.  *See* Pl.'s Obj. at 4–7 (citing supposed examples).[5]

Plaintiff's reasoning suffers from at least one critical flaw: It wrongly assumes that all potential HBA plaintiffs who were U.S. nationals when their property was confiscated were necessarily eligible to seek certification of their claims from the Commission.  That is not correct, and Judge Louis's interpretation of the HBA gives full effect to all provisions regarding both certified and uncertified claims.

Take two clear examples.  *First*, a U.S. national can only bring a claim to the Commission if that claim "has been held by one or more nationals of the United States continuously [after confiscation] until the date of filing with the Commission."  § 1643c(a).  But there is no analogous provision in the HBA.  Thus, if a U.S. national had his property confiscated, then transferred his claim to the confiscated property to a foreign national, who then transferred the claim to a second U.S. national before March 12, 1996, the second U.S. national could not obtain certification from the Commission, but could still sue under the HBA based on that non-certified claim.

*Second*, the International Claims Settlement Act's definition of "United States national" for legal entities is far narrower than the HBA's definition of "national of the United States" for legal entities.  *Compare* § 1643a(1) ("a corporation or other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or the Commonwealth of Puerto Rico, if natural persons who are citizens of the United States own, directly or indirectly, 50

---

[5] Plaintiff incorrectly characterizes § 6083(c)(1), which he says "expressly provides that 'Cuban nationals who became United States citizens after their property was confiscated' are not required to certify their claims."  Pl.'s Obj. at 6.  As explained above, Cuban nationals whose property was confiscated *cannot* certify their claims with the Commission.  Rather than creating some sort of new rule for Cuban nationals as Plaintiff suggests, therefore, § 6083(c) reiterates what has always been the law, ostensibly to avoid the very misinterpretations of the HBA's references to Cuban nationals that Plaintiff now offers.

per centum or more of the outstanding capital stock or other beneficial interest of such corporation or entity"), *with* § 6023(15) ("any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States").[6]  As a result, a corporation that had few or no U.S. citizen stockholders but at least had its principal place of business in the United States could not obtain certification from the Commission.  The same would apply to a company organized under the laws of the Virgin Islands (or any other territory that is not Puerto Rico).  But these entities could still sue under the HBA based on their uncertified claims.

These examples and others like them well illustrate that there is a universe of potential HBA plaintiffs who were (under the HBA's definition) U.S. nationals when their property was confiscated but who nonetheless were ineligible to seek certification of their claims from the Commission.  For that universe of potential plaintiffs, every HBA provision mentioning uncertified claims has work to do.  As a result, interpreting the HBA to cover only property confiscated from U.S. nationals—as Judge Louis did—does not render whole provisions of the HBA meaningless as Plaintiff says.

In all events, at the very most the statute is ambiguous as to whether it allows claims based on property confiscated from Cuban nationals in 1959–1960.  And ambiguity is insufficient for this Court to adopt Plaintiff's reading.  Doing so would violate well-established presumptions

---

[6] This naturally explains why, as Plaintiff notes, Congress saw fit to clarify that the Commission may determine "questions of the amount and ownership of a claim by a United States national (as defined in [the HBA]) . . . whether or not the United States national qualified as a national of the United States (as defined in [the International Claims Settlement Act]) at the time of the action by the Government of Cuba." § 1643*l*; *see* Pl.'s Obj. at 11.  The two definitions of a U.S. national are significantly different, and Congress's clarification—through the use of careful parentheticals—resolves *those* differences.  Congress was not saying (as Plaintiff suggests) that a U.S. national's status at the time of confiscation matters for the International Claims Settlement Act but not for the HBA.

against retroactivity and extraterritorial legislation. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (presumption against retroactivity); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 112, 115–16 (2013) (applying "presumption against extraterritorial application" to interpret the Alien Tort Statute as inapplicable to "foreign cubed" lawsuits because statute contained "no clear indication"). *First*, Plaintiff's interpretation would mean the HBA retroactively changes property rights that took effect in 1959 or 1960, by granting Plaintiff a claim to confiscated property that did not exist under any positive law then in effect. *Second*, Plaintiff's interpretation would mean the HBA alters the effect of a "foreign cubed" appropriation—real property in Cuba, appropriated by the Cuban government, from a Cuban national. Thus, to read the statute in Plaintiff's favor, this Court would need a crystal-clear statement from Congress. Nothing in the statute comes close. To the contrary, the Congressional findings and the text of the cause of action itself demonstrate that the statute provides a remedy for trafficking in property confiscated from U.S. nationals, not Cuban nationals.

## CONCLUSION

The Court should grant American's motion to dismiss the Complaint both for the reasons stated in Judge Louis's Report and for the alternative reasons in American's objections.

Date: June 17, 2022                              Respectfully submitted,

                                                 */s/ Ricardo H. Puente*
                                                 Ricardo H. Puente (Florida Bar No. 121533)
                                                 Email:  rpuente@jonesday.com
                                                 **JONES DAY**
                                                 600 Brickell Avenue
                                                 Suite 3300
                                                 Miami, Florida  33131
                                                 Telephone: (305) 714-9700
                                                 Facsimile: (305) 714-9799

                                                 Christopher R. J. Pace (Florida Bar No. 72116)
                                                 Email: CRJPace@winston.com
                                                 WINSTON & STRAWN LLP
                                                 2121 N. Pearl St.
                                                 Dallas, TX 75201
                                                 Telephone: (214) 453-6565

                                                 *Attorneys for Defendant American Airlines, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 17, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Ricardo H. Puente*
Ricardo H. Puente